**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SCRUB ISLAND DEVELOPMENT GROUP LIMITED,** | **Case No. 8:13-bk-15285-MGW** |
| | **Jointly Administered with** |
| **SCRUB ISLAND CONSTRUCTION LIMITED,** | **Case No. 8:13-bk-15286-MGW** |
| Debtors. | |
| _____/ | |
| **SCRUB ISLAND DEVELOPMENT GROUP LIMITED,** | **Case No. 8:13-bk-15285-MGW** |
| Applicable Debtor. | |
| _____/ | *Emergency Relief Requested* |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF**
**INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH**
**COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO**
**11 U.S.C. §§ 105(a), 361, 363, 541 AND 552 AND BANKRUPTCY RULE 4001**

**STATEMENT OF RELIEF REQUESTED**

The Debtor seeks approval for its use of cash collateral that is on hand or that may be received to fund its operating expenses and costs of administration in these Chapter 11 cases in accordance with a proposed budget attached hereto and to provide replacement liens as described below as adequate protection for any interests of third parties in the cash collateral. The Debtor believes that FirstBank (defined hereinbelow) may assert liens as to cash collateral. As adequate protection, the Debtor proposes granting to FirstBank a replacement lien equal in extent, validity, and priority as the liens held by FirstBank as of the Petition Date (defined hereinbelow).

SCRUB ISLAND DEVELOPMENT GROUP LIMITED, as debtor and debtor in

possession ("**SIDG**" or the "**Debtor**"), by and through its undersigned attorneys, hereby

files its Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001 (the "**Motion**"). In support of this Motion, the Debtor respectfully represents as follows:

<u>**Jurisdiction and Venue**</u>

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C §§ 1408 and 1409.

<u>**Background**</u>

2.      On November 19, 2013 (the "**Petition Date**"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

3.      Since the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, although certain property of the Debtor and of its estate is presently in the custody of a temporary operating receiver.

4.      On November 20, 2013, this Court entered its Order Granting Debtor's Emergency Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b) in the Debtor's Chapter 11 case [Doc. No. 9] (the "**Joint Administration Order**"). Pursuant to the Joint Administration Order, the Debtor's Chapter 11 case is being jointly administered for procedural purposes only with

In re: Scrub Island Construction Limited, Case No. 8:13-bk-15286-MGW, under the lead

case In re: Scrub Island Development Group Limited, Case No. 8:13-bk-15285-MGW.

5.      SIDG, a company incorporated under the laws of the British Virgin

Islands ("**BVI**"), has its principal place of business and corporate headquarters in Tampa,

Florida.  SIDG owns Scrub Island, which is a 230-acre island located in the BVI

consisting of Little Scrub Island and Big Scrub Island, which are connected by an

isthmus between the islands.  SIDG also owns the Scrub Island Resort, Spa & Marina

(the "**Scrub Island Resort**"), which is an award-winning boutique luxury resort located

on Little Scrub Island that opened in February 2010 and features, among other things, (i)

26 ocean view guest rooms, (ii) 26 ocean view one bedroom suites, (iii) two, three, four

and five bedroom hillside and ocean view villas, (iv) a 55-slip deep water marina

designed to handle yachts up to 160 feet, (v) a multi-level lagoon-style swimming pool

with a waterfall, (vi) three restaurants, (vii) the Ixora Spa, (viii) a 25,000 square foot

pavilion building which includes a lobby, administrative offices, a business center,

restaurants, meeting rooms, and a private dining room, (ix) commercial space, including a

retail boutique gift shop, a 3,000 square foot gourmet market, and a real estate sales

office, and (x) a fitness center.  The Scrub Island Resort is part of the Marriott Autograph

Collection Hotel system pursuant to a Franchise Agreement, dated as of July 28, 2011, by

and between Marriott International, Inc. ("**Marriott**") and SIDG.  The operation of the

Scrub Island Resort results in cash receipts, which receipts are deposited into bank

accounts in Tampa, Florida or in the BVI.  The sole and exclusive operator of the Scrub

Island Resort and the sole and exclusive developer for Scrub Island is Mainsail Lodging & Development, a United States company which is headquartered in Tampa, Florida.

6.      More detailed information regarding the Debtor's business and operations as well as the Scrub Island Resort can be found on SIDG's website at www.scrubisland.com and in the Debtors' Joint Chapter 11 Case Management Summary filed with the Court [Doc. No. 5] (the "**Case Management Summary**").

7.      No previous application for the relief sought herein has been made by the Debtor to this Court or any other court.

### Prepetition Secured Indebtedness and Temporary Receivership

8.      The Debtor believes that FirstBank Puerto Rico, a commercial banking institution incorporated under the laws of the Commonwealth of Puerto Rico ("**FirstBank**"), may assert a lien on all or a portion of the Debtor's assets which may constitute cash collateral as defined in 11 U.S.C. § 363(a) ("**Cash Collateral**").

9.      Since August 2005, SIDG and Scrub Island Construction Limited (collectively, the "**Debtors**") and FirstBank have entered into several loan agreements which set forth the terms for several loans from FirstBank to the Debtors with respect to the construction and development of the Scrub Island Resort (collectively, the "**Loans**"). The Loans are evidenced by numerous promissory notes executed by one or both of the Debtors in favor of FirstBank (collectively, the "**Notes**"). Upon information and belief, the outstanding principal balance under the Notes as of the Petition Date is approximately $108 million.

10.    The Debtor believes that FirstBank will assert that (i) the Notes are secured by certain assignments and land charges recorded with the Land Registry in the BVI (collectively, the "**Charges**"), and (ii) the Charges encumber the Scrub Island Resort and certain assets of the Debtors. It is unclear as to whether the Notes are secured by the Debtor's Cash Collateral or any assets of the Debtors located in the United States.

11.    Prior to the filing of the Debtor's Chapter 11 case, FirstBank, in an *ex parte* manner and without prior notice to SIDG or its counsel (despite numerous daily contacts between FirstBank representatives and SIDG representatives and their respective counsel during the time period in question), sought the appointment of a temporary operating receiver (the "**Temporary Receiver**") of the assets of SIDG. The Temporary Receiver was appointed pursuant to an Order entered November 1, 2013 in the Eastern Caribbean Supreme Court In the High Court of Justice in the proceeding styled: In the Matter of a Mortgagee's Claim by FirstBank Puerto Rico (the "Bank") pursuant the CPR Part 66(1)(c)(d) and (g) for the Payment of Monies Secured by Mortgage, for Possession and the Sale of Mortgaged Property by FirstBank Puerto Rico and (1) Scrub Island Construction Limited, (2) Scrub Island Development Group Limited, (3) Joe Collier, (4) CIH Loft LLC (the "**BVI Action**"). The term of the temporary receivership expires on November 27, 2013 and a hearing is scheduled for November 28, 2013 to consider extending the term of the receivership.

12.    Upon information and belief, the Temporary Receiver has possession and control of the SIDG prepetition bank accounts in the BVI (the "**BVI Bank Accounts**").

SIDG believes that, as of the Petition Date, the amount of funds in the BVI Bank Accounts totaled approximately $56,000.

13.    With respect to the Temporary Receiver, upon the filing of these Chapter 11 cases, counsel to the Debtor provided written notice to counsel to FirstBank and the Temporary Receiver notifying them of their obligations under Sections 362, 541 and 542 of the Bankruptcy Code and demanding the return of all property of SIDG's estate. Should FirstBank disregard the automatic stay and indicate that it intends to proceed with the November 28, 2013 hearing in the British Virgin Islands, the Debtor will seek appropriate relief from this Court.

### Relief Requested and Grounds for Relief

14.    By this Motion, the Debtor seeks the entry of an order authorizing the use of Cash Collateral within its control generally in accordance with the budget attached hereto as Exhibit A (the "**Budget**") and for purposes which include the following:[1]

(a)    care, maintenance and preservation of the Debtor's assets;

(b)    payment of necessary payroll, rent, suppliers, utilities, and other business expenses;

(c)    other payments necessary to sustain continued business operations; and

(d)    costs of administration in these Chapter 11 cases.

15.    The Debtor's Cash Collateral primarily consists of cash in the Debtor's bank accounts as of the Petition Date and receipts from the operation of various aspects

---

[1]    At the time of the filing of this Motion, the Debtor has incomplete information regarding the immediate payments to be made with respect to its business operations as the specific information is in the possession of the Temporary Receiver. The relief requested herein is intended to address the payment of all of the listed items with respect to the Debtor's operations in Tampa, Florida and the BVI.

of the Scrub Island Resort including hotel operations as well as the retail facilities located at the Scrub Island Resort.  As of the Petition Date, the amount of cash in the Debtor's bank accounts in Tampa, Florida was approximately $145,000.

16.     The Debtor requests authority to use Cash Collateral immediately to pay operating expenses necessary to continue the operation of the Debtor's business and to maintain its estate, to maximize the return on its assets, and to otherwise avoid irreparable harm and injury to its business and its estate.  The amount of Cash Collateral to be used by the Debtor on a weekly basis until a final evidentiary hearing on this Motion is set forth in the Budget.

17.     The Budget assumes that the Debtor will be restored to possession of the cash in the BVI Bank Accounts and is able to collect receipts from ongoing operations. Should the Temporary Receiver refuse to turn over possession of the BVI assets, the Debtor seeks authority to use assets in the United States to fund U.S. payroll and sales and marketing costs incurred in the United States.

18.     There is insufficient time for a final evidentiary hearing pursuant to Bankruptcy Rule 4001(b)(2) to be held before the Debtor must use Cash Collateral.  If this Motion is not considered on an expedited basis and if the Debtor is denied the ability to immediately use Cash Collateral, there may be direct and immediate harm to the continuing operation of the Debtor's business and to the value of its assets.  The discontinuance of normal operations will result in irreparable injury to the Debtor, its creditors, its customers at the Scrub Island Resort, Marriott, and other parties in interest. Any such discontinuation would also adversely impact upon the value of the Debtor's

assets and FirstBank's collateral.  Indeed, it is in the best interests of FirstBank and the Debtor that the Debtor use Cash Collateral since such usage will preserve the value of FirstBank's collateral.  Rule 4001(b)(2) authorizes this Court to hold an immediate preliminary hearing on this Motion.

19.     In exchange for the Debtor's ability to use Cash Collateral in the operation of its business, as adequate protection, the Debtor proposes to grant to FirstBank replacement security interests equal in extent, validity, and priority as the security interests FirstBank held as of the Petition Date.  In addition, the Debtor will provide to FirstBank weekly reports on the operations of the Scrub Island Resort.

20.     The Debtor asserts that any interests of FirstBank will be adequately protected and that FirstBank's collateral will not diminish or depreciate in value. Consequently, no further provision for adequate protection is required.  The Debtor further alleges that all conditions precedent to the use of Cash Collateral have been performed or have occurred.

21.     No determination shall be made by the Court at this time as to the extent, priority, or validity of any security interest held by or the obligations owed to FirstBank prior to the Petition Date, and the Debtors reserve all rights, defenses and claims with respect to the foregoing.  Notwithstanding anything to the contrary contained in this Motion or any order entered by the Court in these cases granting this Motion, the Debtors shall be deemed not to have waived any right to challenge the extent, validity or priority of the liens of FirstBank.  As stated in the Case Management Summary, the Debtors will shortly be filing an adversary proceeding against FirstBank.

22.     If allowed to use Cash Collateral, the Debtor believes that it can stabilize its business operations and maintain going concern values.   Otherwise, the Debtor's business operations will cease and its assets will have only liquidation value.

### Notice

23.     No trustee or examiner has been appointed in these cases and no official committees have yet been appointed pursuant to Section 1102 of the Bankruptcy Code. Notice of this Motion has been given by (i) the Court's CM/ECF Transmission or electronic mail transmission to the Office of the United States Trustee for the Middle District of Florida, counsel to FirstBank Puerto Rico, and counsel to Marriott, and (ii) United States first class mail to FirstBank and the twenty (20) largest unsecured creditors of each of the Debtors (as listed on Exhibit B attached hereto).   The Debtor requests that the Court enter an order finding that such notice of this Motion is adequate and sufficient and complies with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.

### Basis for Emergency Relief

24.     The facts previously set out herein clearly justify an immediate preliminary hearing on this Motion.   If the Debtor cannot utilize Cash Collateral, the Debtor will be unable to pay operating expenses necessary to continue the operation of the Debtor's business and will be irreparably harmed.   The Debtor has narrowly tailored the relief requested on an emergency basis in order to allow the Debtor to survive pending a final cash collateral hearing under Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Debtor respectfully requests that the Court (a) enter an order in the form of <u>Exhibit C</u> attached hereto granting this Motion and authorizing the interim use of Cash Collateral in substantial conformity with the Budget, and granting replacement liens to FirstBank as adequate protection; (b) schedule a preliminary hearing on this Motion at the earliest possible time; (c) schedule a final hearing on this Motion in accordance with Bankruptcy Rule 4001(b)(2); and (d) grant such other and further relief as the Court deems fair and just under the circumstances.

Dated: November 20, 2013

*/s/ Charles A. Postler*
Harley E. Riedel (Florida Bar No. 183628)
Charles A. Postler (Florida Bar No. 455318)
Stichter, Riedel, Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email:        hriedel@srbp.com
              cpostler@srbp.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct of the foregoing **Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Rule Bankruptcy 4001** with all attached Exhibits has been furnished on this 20th day of November, 2013, by (i) either the Court's CM/ECF Transmission or electronic mail transmission to:

Office of the United States Trustee

Josias N. Dewey, Esq.
Holland & Knight LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
joe.dewey@hklaw.com
Counsel to FirstBank Puerto Rico

Carren B. Shulman, Esq.
Sheppard, Mullin, Richter & Hampton
 LLP
30 Rockefeller Plaza
New York, New York 10112
cshulman@sheppardmullin.com
Counsel to Marriott International, Inc.

(ii) facsimile transmission to FirstBank Puerto Rico, Attn: Calixto Garcia-Velez, President, and Samuel Pastrana, Senior Vice President, 1519 Ponce de Leon Avenue, Stop 23, PO Box 9146, San Juan, Puerto Rico 00908-0146 (Facsimile Number 787-729-8153), and (iii) United States First Class Mail to the parties listed on Exhibit B attached hereto.

/s/ Charles A. Postler
Charles A. Postler

# EXHIBIT A

**Scrub Island Resort**
**Cash Flow Budget**

| | 56,000 | BVI |
|---|---|---|
| | 125,000 | BOT |
| | 181,000 | Beginning Cash Balance |

| | Nov 24 - 30 Thanksgiving | Dec 1 - 7 | Dec 8 - 14 | Dec 15 - 21 | Dec 22 - 28 | Dec 29 - Jan 4 |
|---|---|---|---|---|---|---|
| **Cash Inflows - Revenues** | | | | | | |
| Rooms | 100,000 | 80,000 | 60,000 | 110,000 | 225,000 | 260,000 |
| Food & Beverage | 80,000 | 60,000 | 50,000 | 60,000 | 70,000 | 110,000 |
| Marina | 6,000 | 6,000 | 6,500 | 7,500 | 20,000 | 20,000 |
| SPA | 6,000 | 4,000 | 5,800 | 5,000 | 10,000 | 10,000 |
| Grocery | 9,500 | 7,500 | 6,000 | 7,800 | 15,000 | 23,000 |
| Boutique | 4,000 | 4,000 | 3,000 | 3,500 | 4,000 | 4,000 |
| Other | 20,550 | 16,150 | 13,130 | 19,380 | 34,400 | 42,700 |
| **Total Cash Inflows** | 226,050 | 177,650 | 144,430 | 213,180 | 378,400 | 469,700 |
| | | | | | | |
| **Cash Outflows** | | | | | | |
| Royalty and Franchise Fees | 14,000 | | | | 14,000 | 14,000 |
| Marriott Expenses | | 14,000 | 10,000 | | 6,000 | 6,000 |
| Boat Charter Payments | 3,000 | 3,000 | 3,000 | 4,000 | 6,000 | 6,000 |
| Dive BVI Payments | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Guest Transportation | | | | | | |
| Guest Supplies / Linen | 5,000 | 3,000 | 3,000 | 5,000 | 300 | 3,000 |
| Outside Cleaners | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| Cleaning Supplies | 2,000 | | 3,000 | 2,000 | | |
| 50% Food & Beverage Costs | 40,000 | 30,000 | 25,000 | 30,000 | 35,000 | 55,000 |
| Kitchen Fuel | 8,000 | | | 8,000 | 12,000 | 4,000 |
| Spa Building Rental | | 12,000 | | | | |
| 50% Retail Costs | 6,750 | 5,750 | 4,500 | 5,650 | 9,500 | 13,500 |
| Telecommunications | 1,500 | | 900 | 5,300 | 1,500 | 1,500 |
| Credit Card Fees | 6,782 | 5,330 | 4,333 | 6,395 | 11,352 | 14,091 |
| Technology | | | | 2,500 | | |
| Utilities (Elec, Gas, Water) | 100,000 | 23,000 | | 4,000 | | 123,000 |
| Waste Removal | 4,000 | | | | 4,000 | |
| Repairs and Maintenance | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Housing | | 2,000 | | | | |
| Sales and Marketing | 2,800 | 4,000 | | 2,800 | 4,000 | |
| Payroll - US | 20,000 | | 24,000 | | 16,000 | |
| Payroll - BVI | | 110,000 | 41,000 | 118,000 | | 138,000 |
| Taxes - Payroll and Room Sales | | | | 24,500 | | |
| Employee Medical | 3,000 | | | | 3,000 | |
| Payroll Processing Fees | | | | | | |
| Bank Charges | | | | | | |
| Office/Operating Supplies | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Corporate Office Reimbursables | 5,000 | 5,000 | 15,000 | 15,000 | 15,000 | 3,500 |
| Security | 3,600 | 3,600 | 3,600 | - | 3,600 | 3,600 |
| Pool | 3,500 | | 3,500 | | 3,500 | |
| Landscape Contract | 1,000 | | | | 1,000 | |
| Pest Control | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Live Entertainment | 2,000 | 1,500 | 1,500 | 1,500 | 1,500 | 2,000 |
| Boat Fuel[2] | 500 | 500 | 500 | 500 | 2,000 | 500 |
| Boat Maintenance | 1,400 | | | | 500 | |
| Dock Fee | 300 | | | 300 | 500 | 300 |
| Vehicle gas | 1,000 | 300 | 300 | 1,000 | 300 | |
| Insurance - Liability / Tvl / Zenith | 1,000 | 1,000 | 1,000 | 1,000 | 30,000 | 1,000 |
| Travel | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | | | | | | |
| **Total Cash Outflows** | 248,132 | 241,480 | 161,633 | 238,945 | 191,952 | 398,491 |
| **Net Inflow/(Outflow)** | (22,082) | (63,830) | (17,203) | (25,765) | 186,448 | 71,209 |
| Cumulative balance | 158,919 | 95,089 | 77,886 | 52,121 | 238,569 | 309,778 |

# EXHIBIT B

Atlantic Southern
P.O. Box 469
Roadtown, Tortola VG1110

,

BVI Electricity
PO Box 268
Roadtown, Tortola VG1110

Delta Petroleum
PO Box 3318
Pasea, Tortola VG1110,

Digicel
P.O. Box 4168
Roadtown, Tortola VG1110

Enjoy Life
PMB 370
1353 St 19
Guaynabo, PR 00966-2700

Frett, Joseph
c/o Orion Law
Jayla Place, PO Box 216
Road Town, Tortola, VG1110,

ICT Management Serviced Ltd
PO Box 2221
Roadtown, Tortola VG1110,

K Mark's Foods Ltd
PO Box 830
Roadtown, Tortola VG1110,

L'Occitane, Inc.
1430 Broadway
2nd Floor
New York, NY 10018

Mainsail B.V.I. Limited
4602 Eisenhower Blvd
Tampa, FL 33634

Mainsail BVI Property Management, LLC
4602 Eisenhower Blvd.
Tampa, FL 33634

Mainsail Central, LLC
4602 Eisenhower Blvd
Tampa, FL 33634

Mainsail Development International
4602 Eisenhower Blvd.
Tampa, FL 33634

Mainsail Management Group
4602 Eisenhower Blvd
Tampa, FL 33634

Mainsail Suites Hotel
4602 Eisenhower Blvd
Tampa, FL 33634

Marriott Execustay
4602 Eisenhower Blvd
Tampa, FL 33634

Marriott International, Inc.
c/o Lisa Greenlees, Esquire
10400 Fernwood Rd.
Bethesda, MD 20817

O'Neal & Mundy Shipping Co
PO Box 61
Pasea Estate, Tortola VG1110

Supa Valu Ltd
PO Box 820
Roadtown, Tortola VG1110,

Withers Worldwide
10890 NW 29th St.
Miami, FL 33172

SIDG 20 Largest

Art Linares and David Foster
242 Toby Hill Rd
Westbrook, CT 06498

Blue Water Traders
c/o Oscar Juelle
PMB 302 Suite 9A, B-5 Calle Tabonuco
Guaynabo, PR 00968

MHLSC Management
c/o Michael McCann
3004 Georgetown
Houston, TX 77005

Oscar Rivera
664 Calle Concordia
San Juan, PR 00907

Pablo Dardet
MCS Plaza, Suite 809
255 Ponce de Leon Ave
Hato Rey, PR 00917

Thomas Frederick
10705 Lake Alice Cove
Odessa, FL 33556

SICL 20 Largest

## **EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                Chapter 11

**SCRUB ISLAND DEVELOPMENT
GROUP LIMITED,**                                      Case No. 8:13-bk-15285-MGW

                                                      Jointly Administered with

**SCRUB ISLAND CONSTRUCTION
LIMITED,**                                            Case No. 8:13-bk-15286-MGW

    Debtors.
_____/

**SCRUB ISLAND DEVELOPMENT
GROUP LIMITED,**                                      Case No. 8:13-bk-15285-MGW

    Applicable Debtor.
_____/


INTERIM ORDER GRANTING
DEBTOR'S EMERGENCY MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO
11 U.S.C. §§ 105(a), 361, 363, 541 AND 552 AND BANKRUPTCY RULE 4001


       THIS CASE came on for hearing before the Court on November ____, 2013, at

_____.m. (the "**Hearing**"), upon the Debtor's Emergency Motion for Entry of Interim

and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens

Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001 [Doc.

No. _____] (the "**Motion**").[1]   Pursuant to the Motion, the Debtor seeks the entry of

---

[1]   Unless otherwise indicated, capitalized terms used in this Order shall have the meaning ascribed to such
terms in the Motion.

interim and final orders authorizing the Debtor to use Cash Collateral in which FirstBank Puerto Rico ("**FirstBank**") may assert a lien and security interest.

The Court finds that due and sufficient notice of the Motion was provided to: (i) the Office of the United States Trustee for the Middle District of Florida, (ii) FirstBank and its counsel, (iii) all other known secured creditors of the Debtor, (iv) counsel to Marriott International, Inc., and (v) the twenty (20) largest unsecured creditors of each of the Debtors and that no other or further notice is necessary. The Court considered the Motion, together with the record and the arguments of counsel at the Hearing, and it appearing that the use of Cash Collateral is in the best interests of the Debtor and its creditors and essential for the operation of the Debtor's business on an interim basis, and being otherwise duly advised in the premises, and for the reasons announced on the record at the Hearing, it is **ORDERED**:

1.      This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §1334 and this is a "core" proceeding pursuant to 28 U.S.C. §157. Venue is proper in this Court pursuant to 28 U.S.C. §1408. Notice of the Hearing on the Motion was adequate and appropriate in the current circumstances of these jointly administered Chapter 11 cases as contemplated by 11 U.S.C. §102(a) and Fed. R. Bankr. P. 4001(b)(2).

2.      The Motion is granted to the extent set forth hereinbelow.

3.      It is the intent of the Court, by this Order, to reserve unto all parties, all legal and equitable rights and duties, and to preserve the status quo pending further proceedings. As a result, any right, objection, factual assertion or legal argument not

specifically addressed and ruled upon herein shall remain as it was prior to the entry of this Order.

4.      Subject to the terms of this Order, the Debtor is authorized to use Cash Collateral on an interim basis effective as of November 19, 2013 and continuing through and including December ____, 2013 (the "**Expiration Date**") (November 19, 2013 to December ____, 2013 is hereafter referred to as the "**Cash Collateral Period**"), only for the purposes and in the amounts set forth in the budget attached hereto as <u>Schedule 1</u> (the "**Budget**"), to pay ordinary, necessary and reasonable operating expenses incurred by the Debtor in connection with the operation of its business, subject to the terms and conditions set forth herein. Notwithstanding anything herein to the contrary, the Debtor shall not use Cash Collateral in an amount exceeding the expenses set forth in the Budget, except that particular expense items may exceed the amount in the Budget by ten percent (10%), so long as the aggregate expenses do not exceed the amounts listed in the Budget for the applicable Cash Collateral Period. At the Final Hearing (as defined below), the Court will consider the Debtor's request to use Cash Collateral after the Expiration Date.

5.      This Order shall continue in effect through the Expiration Date pending any other subsequent order of this Court directed specifically to this Order. The date and time of the final hearing on the use of Cash Collateral (the "**Final Hearing**") shall be **December     , 2013 at          .m.**

6.      All persons and entities owing monies to the Debtor are authorized and directed to pay such monies to the Debtor, without setoff, which sums shall upon collection by the Debtor constitute Cash Collateral.

3

7.      During the Cash Collateral Period, the Debtor will furnish to FirstBank by no later than Wednesday of each week an operating report showing all funds received and all cash expenses incurred during the prior post-petition week (such weekly period to cover Sunday to Saturday).  All such reports provided by the Debtor to FirstBank shall be kept confidential by all recipients unless publicly filed with the Court.

8.      In addition to any existing rights and interests of FirstBank in the Cash Collateral and for the purpose of attempting to provide FirstBank partial adequate protection for its interests, FirstBank is hereby granted (retroactive to November19, 2013) and regranted, as security, a replacement lien of equal extent, validity, priority, and dignity to its pre-petition lien that attaches to post-petition collateral of the same description as that subject to FirstBank's pre-petition lien.  The Court makes no determination at this time as to the extent, priority, or validity of any security interest held by or the obligations owed to FirstBank prior to the Petition Date.

9.      The security interests and liens herein granted and regranted: (i) are and shall be in addition to all security interests, and liens existing in favor of FirstBank on the Petition Date; (ii) shall secure the payment of indebtedness to FirstBank in an amount equal to the aggregate Cash Collateral used or consumed by the Debtor; and (iii) shall be deemed to be perfected without the necessity of any further action by FirstBank or the Debtor.  FirstBank need not file any financing statements or other papers in order to perfect the security interests and liens granted hereby.

10.     The Debtor shall maintain all necessary insurance, including, without limitation, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect.

11.     Nothing contained herein shall preclude or restrict the Debtor, any creditors' committee or subsequently appointed trustee from challenging the validity, extent or priority of any claims, liens or obligations asserted or claimed by FirstBank and nothing herein set forth shall waive any claims, rights, or demands which the Debtors, any creditors' committee or subsequently appointed trustee possess or may assert against FirstBank.

12.     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed by subsequent order of this Court or by any obligations of the Debtor to FirstBank that are or were incurred by the Debtor pursuant to this Order and that are or were incurred prior to the effective date of such reversal, modification, vacatur or stay, then, notwithstanding such reversal, modification, vacatur or stay, any obligations of the Debtor under this Order arising prior to the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the provisions of this Order.

13.     In accordance with Rule 4001 of the Bankruptcy Rules, the Court finds the Debtor's authorization to use Cash Collateral, if any, pursuant to this Order is necessary to avoid immediate and irreparable harm to the Debtor's estate.

14.     The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of FirstBank and

5

the Debtor.  If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, priority or benefit, or application of payment authorized hereby with respect to any indebtedness of the Debtor to FirstBank.

      **DONE** AND **ORDERED** at Tampa, Florida, on _____.


_____
MICHAEL G. WILLIAMSON
United States Bankruptcy Judge


Attorney Charles A. Postler is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.