UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SCRUB ISLAND DEVELOPMENT GROUP LIMITED, | Case No. 8:13-bk-15285-MGW |
| | Jointly Administered with |
| SCRUB ISLAND CONSTRUCTION LIMITED, | Case No. 8:13-bk-15286-MGW |
| Debtors. _____/ | |
| SCRUB ISLAND DEVELOPMENT GROUP LIMITED, | Case No. 8:13-bk-15285-MGW |
| Applicable Debtor. _____/ | |

**MOTION OF FIRSTBANK PUERTO RICO FOR ENTRY OF AN ORDER DISMISSING WITH PREJUDICE THE DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTIONS 105(a), 349, AND/OR 1112(b) OF THE BANKRUPTCY CODE**

FirstBank Puerto Rico ("***FirstBank***"), in its capacity as a secured creditor of the Debtors[1] in the above-captioned chapter 11 cases (collectively, the "***Chapter 11 Cases***"), respectfully submits this motion (the "***Motion***") for entry of an order dismissing the Chapter 11 Cases with prejudice pursuant to 11 U.S.C. § 1112(b), based on, among other things: (i) the Debtors' efforts to manufacture jurisdiction notwithstanding this Court's lack jurisdiction over these Chapter 11 Cases; (ii) the Debtors filed the petitions in bad faith in an effort to derail an already pending BVI Receivership despite having no realistic hope of confirming a plan of reorganization; and (iii) dismissal of the Chapter 11 Cases is in the best interests of both the creditors and the estates.

---

[1] The Debtors are Scrub Island Development Group Limited and Scrub Island Construction Limited (collectively, the "***Debtors***").

**Factual Background**

1.      The Debtors are companies formed and existing under the laws of the British Virgin Islands ("***BVI***").  The Debtors own a hotel, residential and marina project (the "***Scrub Island Resort***") located on Scrub Island in the BVI, which, prior to November 1, 2013, the Debtors had operated as a Marriott Autograph Collection property.  Upon information and belief, the Scrub Island Resort was the Debtors' principal, if not only, asset and source of revenue.

2.       FirstBank is a secured creditor of the Debtors by virtue of certain obligations secured by liens on substantially all of the Debtors' assets and the products and proceeds thereof.

3.      The Debtors' relationship with FirstBank dates back to November 28, 2007, when FirstBank, the Debtors, and the Debtors' principal, Joe C. Collier III, serving as guarantor ("***Collier***"), entered into the first of a series of loan agreements, as periodically amended, under which FirstBank extended secured credit to the Debtors to finance the construction and development of Scrub Island Resort (collectively, the "***Loans***"). The Loans were further supported and evidenced by a series of promissory notes executed in favor of FirstBank (the "***Notes***"), and loan documents granting FirstBank security interests in the Debtors' property and improvements.

4.      The Loans and Notes, secured by assignments and land charges recorded with the Land Registry in the BVI, executed by the Debtors, both incorporated under the laws of the BVI, and relating to the Scrub Island Resort and other assets of the Debtors, all or substantially all of which is located in the BVI, are governed by the laws of the BVI.

5.      After experiencing financial difficulty, the Debtors and FirstBank entered into a forbearance agreement (the "***Workout Agreement***") dated as of June 10, 2011.  [*See Workout Agreement, attached as Exhibit A*]. In that Workout Agreement, the Debtors acknowledged the

then-outstanding principal balance of their obligations to First Bank to be $100,519,966. No reduction in the principal obligations due FirstBank has occurred since that time.

6. Despite then-existing outstanding defaults and a Debtor-acknowledged right to exercise post-default remedies, including foreclosure, under the Workout Agreement, FirstBank agreed, subject to certain covenants and financial milestones, to fund the Debtors' operating deficit during the period which it sought to attain Marriott Autograph Collection designation, which Collier[2] had represented to FirstBank would greatly enhance the Debtors' revenue stream.

7. Although the Debtors ultimately obtained the Marriott Autograph Collection designation, the Debtors failed to meet every financial benchmark and milestone set forth under the Workout Agreement.

8. In accordance with BVI law, FirstBank sent the Debtors formal statutory notices of their defaults to begin the process of enforcing its rights under the loan documents and free itself of funding the Debtors' ongoing deficit operation. The Debtors made a series of attempts to convince FirstBank to fund the Debtors' operational shortfalls, including presenting a prospective buyer for FirstBank's Notes.

9. The Debtors' financial condition, however, continued to deteriorate, and the Debtors were incapable of satisfying even such critical obligations as payroll and major utilities. As a last ditch effort to save a sinking ship, the Debtors requested that FirstBank agree to fund the Debtors' shortfalls through June 2014, at which point if the Debtors were unable to refinance or sell the Scrub Island Resort, they would voluntarily transfer ownership to FirstBank.

10. The Debtors and FirstBank were unable to reach an agreement, and in light of the Debtors' serial and ongoing defaults, FirstBank again initiated the process of protecting its

---

[2] The Workout Agreement furthermore provided that Collier would be released from his obligations as guarantor, contingent upon his cooperation with FirstBank.

interests and enforcing its rights in the collateral under BVI law, in accordance with the designation of BVI law in the Loans and Notes.  On November 1, 2013, the Eastern Caribbean Supreme Court in the High Court of Justice entered an Order (the "***Receivership Order***") duly appointing Meade Malone of MWM Corporate Services Limited as the receiver (the "***Receiver***") of the assets and undertakings of Scrub Island Development Group Limited (the "***BVI Receivership***").  [*See Receivership Order, attached as Exhibit B*].  In accordance with the Receivership Order, "the Receiver shall have power to replace the operator(s) and of manager(s) of Scrub Islands' Hotel/Resort, and assume management and control of the day to day operations of the same . . . ."  *Receivership Order* ¶4(4).

11.     On November 19, 2013 (the "***Petition Date***"), eighteen days after the BVI Receivership was commenced and in contravention of the Receivership Order, the Debtors sought to derail FirstBank's efforts to enforce its rights under BVI law and filed voluntary petitions in this Court for relief under chapter 11 of the United States Bankruptcy Code ("***Bankruptcy Code***").  As of the Petition Date, the outstanding principal balance due to FirstBank was $108,025,428.45.  The balance due inclusive of interest was in excess of $120 million.  Although no formal appraisal has recently been undertaken by FirstBank, FirstBank believes the fair market value of its collateral to be less than $50 million.

### Argument

**I.    The Court Lacks Jurisdiction**

12.     Section 109 provides that: "only a person that resides or has a domicile, a place of business, or property within the United States, or a municipality, may be a debtor" under chapter 11.  11 U.S.C. § 109(a).

13. While it may be true that the statutorily stated bases for jurisdiction are minimal and may be invoked "solely on the basis of having a dollar, a dime or a peppercorn located in the United States … [t]hat conclusion does not end the inquiry." *In re McTague*, 198 B.R. 428, 432 (Bankr. W.D. N.Y., 1996). *See In re Head*, 223 B.R. 648, 652 (Bankr. W.D.N.Y. 1998) (noting that craftsmanship in establishing jurisdiction is disfavored in the bankruptcy courts, "[t]o make the record clear, if these Debtors were to continue to assert eligibility by virtue of having acquired U.S. mailing addresses and opening small bank accounts in the U.S., then this Court would directly hold that one cannot so manufacture eligibility").

14. The inescapable reality in these Chapter 11 cases is that the Debtors' business, operations, assets, liabilities, and employees are overwhelmingly, if not purely, foreign in identity and nature. The Debtors are incorporated under the laws of the BVI, their primary asset, Scrub Island Resort, is located in the BVI, and their primary liabilities, the outstanding loans owed to FirstBank, were created and secured under documents governed by the laws of the BVI.

## II.   The Chapter 11 Cases Should be Dismissed for Cause Under Section 1112(b)(1)

15. Under Section 1112(b)(1) of the Bankruptcy Code, "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). While Section 1112 sets forth a non-exclusive list of what may constitute "cause" for dismissal, the court is granted broad discretion and "[i]n determining what constitutes 'cause' under the Code, [and] 'the court may consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases.'" *Singer Furniture Acquisition Corp. v. SSMC Inc. N.V.*, 254 B.R. 46, 51 (M.D. Fla. 2000) (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)).

16. Ample cause exists to dismiss the Debtors' Chapter 11 Cases, on the bases that: (i) the Debtors do not have any reasonable likelihood of achieving a successful reorganization under chapter 11 and are unable to propose a confirmable plan; (ii) the Debtors improperly manufactured jurisdiction in the U.S. Bankruptcy Court to file the Chapter 11 Cases; (iii) the Debtors filed the petitions in bad faith in an effort to derail FirstBank's efforts to enforce its rights in the BVI Receivership; and (iv) dismissal of the Chapter 11 Cases is in the best interests of the creditors and the Debtors' estates.

### A. The Debtors Have No Reasonable Likelihood of Reorganization

17. Although the determination of cause for dismissal rests within the sound discretion of the court, Section 1112(b) provides several examples of cause for dismissal, including the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).

18. The Debtors have operated at a deficiency and have been funded by FirstBank dating at least back to August of 2010.  [*Scrub Island Hotel Operations Deficiency Payments*, *attached hereto as Exhibit C*].  The Debtors' outstanding obligations to FirstBank are in excess of $100 million, yet the Scrub Island Resort and its associated assets that constitute FirstBank's collateral have a value of less than fifty percent of that obligation.  The Debtors have no equity in the Scrub Island Resort, their sole source of revenue.  Instead, Scrub Island Resort is fully encumbered by FirstBank's liens, and is in fact vastly over leveraged.  Even the Debtors' most optimistic cash flow projections, showing at best that the Debtors expect to generate positive cash flow operating their Caribbean resort during the tourist-laden holiday season, fail to establish that the Debtors will be able to "stop the bleeding within a reasonable time" as

necessary to prevent further harm to FirstBank's collateral.  *See* 7 COLLIER ON BANKRUPTCY ¶1112.04[6][a].

19.     Furthermore, the Debtors' inability to propose a feasible, confirmable plan constitutes independent cause for dismissal, as "[d]ismissal under Section 1112(b)(2) is appropriate when a court determines that it is unreasonable to expect that a plan can be confirmed within a reasonable amount of time . . . A creditor need not wait until the debtor proposes a plan or until expiration of the exclusivity period to move for dismissal." *In re Lezdey*, 332 B.R. 217, 222 (Bankr. M.D. Fla. 2005); *In re Oliver*, 142 B.R. 485, 488 (Bankr. M.D. Fla. 1992).

20.     The Debtors are utterly unable to proffer a feasible, confirmable plan without the consent of FirstBank.  Under Section 1129, confirmation of a plan of reorganization is contingent upon obtaining the consent of at least one class of impaired creditors.  11 U.S.C. § 1129(a)(8).[3] The Chapter 11 Cases are nothing more than a futile effort, at FirstBank's expense while the value of its collateral continues to deteriorate, to delay FirstBank's exercise of its rights under BVI law and should therefore be dismissed for cause.

### B. The Debtors' Bad Faith Filing of the Chapter 11 Constitutes "Cause" for Dismissal

#### *i.     The Debtors improperly manufactured jurisdiction before this Court*

21.     Although pre-petition craftsmanship may establish the minimum presence in the United States required for eligibility to be a debtor under the Bankruptcy Code,[4] creating jurisdiction in the U.S. Bankruptcy Court through the debtor's pre-petition craftsmanship will not

---

[3] Additionally, confirmation under Section 1129 is impermissible where the plan has not been advanced in good faith by the debtor, which, as will be discussed below, is the case with the Debtors' Chapter 11 Cases here.  11 U.S.C. § 1129(a)(3).

[4] Section 109 provides that: "only a person that resides or has a domicile, a place of business, or property within the United States, or a municipality, may be a debtor" under chapter 11.  11 U.S.C. § 109(a).

be tolerated and constitutes cause for dismissal. *See, e.g., In re Head*, 223 B.R. 648, 652 (Bankr. W.D.N.Y. 1998); *In re McTague*, 198 B.R. 428, 432 (Bankr. W.D.N.Y. 1996); *In re Yukos Oil Co.*, 321 B.R. 396, 409 (Bankr. S.D. Tex. 2005).

22. The Debtors' presence in the United States is limited to employing three to four employees in the United States, a Tampa bank account, and a Tampa office where Collier conducts his other business operations. This compares to the BVI situs of the Debtor's sole source of revenue - the Scrub Island Resort - along with a BVI operating account and more than 120 employees based out of BVI.

### ii. *The Debtors Did not File the Chapter 11 Cases in Good Faith*

23. Section 1112 does not define "cause," but it is well settled that a debtor's lack of good faith constitutes cause for dismissal. *In re The Bal Harbour Club, Inc.*, 316 F.3d 1192, 1193-94 (11th Cir. 2003) (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)); *In re Schultz*, 436 B.R. 170, 175 (Bankr. M.D. Fla. 2010). In determining bad faith, "the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, *in particular, factors which evidence that the petition was filed to 'delay or frustrate the legitimate efforts of secured creditors to enforce their rights.*'" *Singer Furniture Acquisition Corp. v. SSMC Inc. N.V.*, 254 B.R. 46, 51 (M.D. Fla. 2000) (emphasis supplied) (quoting *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988)).

24. Courts in this jurisdiction consider bad faith on a case-by-case basis in the context of the totality of the circumstances. *In re Schultz*, 436 B.R. 170, 176 (Bankr. M.D.Fla. 2010). This analysis is guided by the evaluation of a set of factors, which although "non-exhaustive and not to be rigidly applied," includes:

(1) the debtor has only one asset, the property at issue;

(2) the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors;
(3) the debtor has few employees;
(4) the property itself is subject to a foreclosures action as a result of the arrearages on the debt;
(5) the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and
(6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re State Street Houses, Inc.*, 356 F.3d 1345, 1347-48 (11th Cir. 2004) (quoting *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988)).

25. Here, the Debtors' primary asset and sole source of revenue is the Scrub Island Resort, encumbered by FirstBank's liens, which vastly outweigh the claims of any other creditor. The Debtors' filing is nothing more than a direct reaction and attempt to hinder FirstBank's attempt to assert its rights under BVI law by initiating the BVI Receivership.

26. A review of the factors can lead to no other conclusion than that the Debtors' filing the Chapter 11 Cases in the United States Bankruptcy Court was nothing more than a bad faith maneuver to frustrate FirstBank's ability to exercise its legal and contractual rights over its vastly undersecured collateral under the governance of BVI laws, as jointly-designated in the loan documents. Accordingly, the Chapter 11 Cases must be dismissed for cause under Section 1112(b).

### C. Dismissal is in the Best Interests of Creditors and the Debtors' Estates

27. Where cause is established under Section 1112(b)(1), the court "shall" dismiss or convert the case, unless the debtor shows that such unusual circumstances exist that dismissal or conversion is not in the best interests of the creditors and the estate. 11 U.S.C. §§ 1112(b)(1); 1112(b)(2). The debtor bears the burden to establish that extraordinary circumstances excuse the "mandatory dismissal or conversion." *In re Schultz*, 436 B.R. 170, 174-75 (Bankr. M.D. Fla. 2010).

28.    The Debtors can point to no such extraordinary circumstances here.  In fact, the attendant circumstances in this case lend further support to the need for dismissal.  Dismissal would be in the best interests of the creditors, so that the Eastern Caribbean Supreme Court may proceed with the pending BVI Receivership without further hindrance or delay and issue binding decrees regarding the Debtors and the Debtors' assets, substantially all of which are located in the BVI.

29.    This Court has previously acknowledged the practical obstacles presented where, as here, property of the debtor's estate is located in a foreign country and subject to claims by parties over which the court does not have personal jurisdiction.  *See, e.g., In re Mak Petroleum, Inc.*, 424 B.R. 904, 905 (Bankr. M.D. Fla. 2010) (noting that "even though the court may have *in rem* jurisdiction over the debtor's property, *in personam* jurisdiction is required before the court may restrain a defendant from interfering with that property"); *In re Int'l Admin. Svcs.*, 211 B.R. 88, 93 (Bankr. M.D. Fla. 1997) (stating the same and noting that "although an American bankruptcy court may have the authority under the law of the United States to exercise *in rem* jurisdiction over property of a debtor's estate located in a foreign country, the bankruptcy court practically lacks the power to enforce such jurisdiction without the recognition and assistance of the courts in the foreign country.  Accordingly, when property is beyond the jurisdictional reach of the court…the bankruptcy court has no practical control directly over the property.").

30.    Furthermore, comity must be at least one factor in the analysis weighing in favor of dismissal under Section 1112.  *See, e.g., In re Yukos Oil Co.*, 321 B.R. 396, 409 (Bankr. S.D.Tex. 2005).  The Eleventh Circuit has succinctly stated: "[i]n matters concerning bankruptcy the extension of comity enables the assets of a debtor to be dispersed in an equitable, orderly,

and systematic manner, rather than in a haphazard, erratic or piecemeal fashion." *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1258 (11th Cir. 2006) (internal citation omitted).

31.     Principles of judicial economy and comity for a foreign courts exercising jurisdiction unquestionably within its boundaries compel the conclusion that the Chapter 11 Cases should be dismissed.

WHEREFORE, for the foregoing reasons, FirstBank respectfully requests that this Court grant this Motion, and enter an order dismissing the Debtors' Chapter 11 Cases with prejudice under Section 1112(b) of the Bankruptcy Code, and direct such other and further relief as is just and proper.

Dated: November 29, 2013.

/s/  W. Keith Fendrick
W. Keith Fendrick, Esq.
Florida Bar No. 0612154
keith.fendrick@hklaw.com
HOLLAND & KNIGHT LLP
100 N. Tampa St., Suite 4100
Tampa, FL 33602
Phone: 813-227-8500;
Fax: 813-229-0134

*Attorneys for FirstBank Puerto Rico*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 29, 2013 a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to the following:

Charles A. Postler, Esq. and Harley E. Riedel, Esq., Attorneys for the Debtors
Stichter, Riedel, Blain & Prosser, P.A.
110 Madison Street – Suite 200
Tampa, FL 33602

United States Trustee
Timberlake Annex, Suite 1200
501 E. Polk Street
Tampa, FL 33602

and all other CM/ECF participants. I further certify that on December 2, 2013, a true and correct copy of the foregoing instrument will be furnished via electronic mail or U.S. Mail to all parties listed on the attached Local Rule 1007-2 Parties In Interest matrix.

/s/ W. Keith Fendrick
Attorney