UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                              Chapter 11

**SCRUB ISLAND DEVELOPMENT
GROUP LIMITED,**                                    Case No. 8:13-bk-15285-MGW

                                                    Jointly Administered with

**SCRUB ISLAND CONSTRUCTION
LIMITED,**                                          Case No. 8:13-bk-15286-MGW

   Debtors.

_____/

**SCRUB ISLAND DEVELOPMENT
GROUP LIMITED,**                                    Case No. 8:13-bk-15285-MGW

   Applicable Debtor.

_____/      *Expedited Relief Requested*

## DEBTOR'S MOTION FOR AUTHORITY TO OBTAIN POSTPETITION FINANCING AND GRANT SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. § 364(c) AND F.R.B.P. 4001

---

### STATEMENT OF RELIEF REQUESTED

The Debtor seeks authority in this Motion to borrow money, pursuant to a revolving credit facility from the DIP Lender (as hereinafter defined), in order to fund operating expenses and the costs of administration in these Chapter 11 cases in accordance with the proposed budget attached to this Motion as Exhibit B. The liens proposed to be granted to the DIP Lender would be first priority liens on all property of the Debtor located in the United States. The principal terms of the revolving credit facility are set forth in the Loan Commitment Agreement attached to this Motion as Exhibit A.

---

### Introduction

Scrub Island Development Group Limited, as debtor and debtor in possession ("**SIDG**" or the

"**Debtor**"), by and through its undersigned counsel, hereby files its Motion for Authority to Obtain

Postpetition Financing and Grant Senior Liens and Superpriority Administrative Expense Status

Pursuant to 11 U.S.C. § 364(c) and F.R.B.P. 4001 (the "**Motion**"), and respectfully requests that this Court enter an order, <u>inter</u> <u>alia</u>:

(A)   authorizing the Debtor to borrow, from time to time, on a senior secured and superpriority basis from CIH Loft LLC, Gary Eng and VK Investments Limited or an entity to be formed by them (the "**DIP Lender**") the principal amount of up to $250,000.00 (the "**DIP Facility**"),[1] substantially in accordance with the terms of this Motion and the Loan Commitment Agreement attached hereto as <u>Exhibit A</u> (the "**DIP Loan Agreement**");[2]

(B)   authorizing the Debtor to execute the DIP Loan Agreement and such other documents, instruments and agreements requested by the DIP Lender, which shall be consistent with the provisions of this Motion and the DIP Loan Agreement (collectively, the "**DIP Loan Documents**"), and perform all such other and further acts as may be necessary or appropriate in connection with the DIP Loan Documents;

(C)   authorizing the Debtor, under Section 364 of the Bankruptcy Code, to obtain postpetition financing and incur postpetition indebtedness under the DIP Facility, which financing and indebtedness due and owing by the Debtor to the DIP Lender shall be secured by a first priority lien on and security interest in all property of the Debtor located in the United States pursuant to Section 364(c)(2) of the Bankruptcy Code;[3]

---

1    At the initial hearing on this Motion, the Debtor will seek to borrow such amount as is necessary to avoid immediate and irreparable harm on an interim basis pending entry of a final order on this Motion.

2    Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed thereto in the DIP Loan Agreement.  A fully executed copy of the DIP Loan Agreement will be filed by supplement with the Court.

3    At this time, the Debtor is not seeking a priming or other lien with respect to any of its assets located in the British Virgin Islands, but reserves all rights to do so at a later date.

(D)    authorizing the Debtor to grant to the DIP Lender, in accordance with Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim having priority over any and all administrative expenses of and priority claims against the Debtor, as further described in this Motion and the DIP Loan Agreement;

(E)    modifying and, to the extent necessary, lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the DIP Lender and the Debtor to implement the terms of this Motion, the DIP Loan Documents, and the Financing Orders;

(F)    scheduling a final hearing (the "**Final Hearing**") pursuant to Bankruptcy Rule 4001 with respect to the relief requested herein for this Court to consider the entry of the Final Financing Order; and

(G)    granting the Debtor such other and further relief as the Court deems necessary, appropriate, equitable, proper, and consistent with the terms of this Motion.

### Jurisdiction and Venue

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief requested herein include Sections 105, 361, 362, 363, 364, 507 and 545 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### Background

2.    On November 19, 2013 (the "**Petition Date**"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

3.      Since the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On November 20, 2013, this Court entered its Order Granting Debtor's Emergency Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b) in the Debtor's Chapter 11 case [Doc. No. 9] (the "**Joint Administration Order**"). Pursuant to the Joint Administration Order, the Debtor's Chapter 11 case is being jointly administered for procedural purposes only with In re: Scrub Island Construction Limited, Case No. 8:13-bk-15286-MGW, under the lead case In re: Scrub Island Development Group Limited, Case No. 8:13-bk-15285-MGW.

5.      Detailed information regarding the Debtor's business and operations as well as the Scrub Island Resort (as that term is defined in the Case Management Summary) can be found on SIDG's website at www.scrubisland.com and in the Debtors' Joint Chapter 11 Case Management Summary filed with the Court [Doc. No. 5] (the "**Case Management Summary**").

## Prepetition Secured Indebtedness

6.      Since August 2005, SIDG and Scrub Island Construction Limited (collectively, the "**Debtors**") and FirstBank Puerto Rico, a commercial banking institution incorporated under the laws of the Commonwealth of Puerto Rico ("**FirstBank**"), have entered into several loan agreements which set forth the terms for several loans from FirstBank to the Debtors with respect to the construction and development of the Scrub Island Resort (collectively, the "**Loans**"). The Loans are evidenced by numerous promissory notes executed by one or both of the Debtors in favor of FirstBank (collectively, the "**Notes**").  Upon information and belief, the outstanding principal

4

balance under the Notes as of the Petition Date is approximately $108 million, although the Debtors dispute the amount of FirstBank's claim and assert they have claims against FirstBank for lender liability and similar misconduct.

7.    The Notes are not secured by any assets of the Debtors located in the United States. Additionally, the Debtor believes that the Notes may not be secured by receipts and revenues generated from the operation of the Scrub Island Resort.

<u>**Temporary Receivership Proceeding**</u>

8.    Prior to the filing of the Debtor's Chapter 11 case, FirstBank, in an *ex parte* manner and without prior notice to SIDG or its counsel, sought the appointment of a temporary operating receiver (the "**Temporary Receiver**") of the assets of SIDG.  The Temporary Receiver was appointed pursuant to an Order entered November 1, 2013 in the Eastern Caribbean Supreme Court In the High Court of Justice in the proceeding styled: In the Matter of a Mortgagee's Claim by FirstBank Puerto Rico (the "Bank") pursuant the CPR Part 66(1)(c)(d) and (g) for the Payment of Monies Secured by Mortgage, for Possession and the Sale of Mortgaged Property by FirstBank Puerto Rico and (1) Scrub Island Construction Limited, (2) Scrub Island Development Group Limited, (3) Joe Collier, (4) CIH Loft LLC (the "**BVI Receivership Proceeding**").

9.    On December 9, 2013, this Court entered its Order Granting Debtors' Motion for Preliminary Injunction [Adv. Doc. No. 13] (the "**Preliminary Injunction Order**") in the adversary proceeding styled Scrub Island Development Group Limited and Scrub Island Construction Limited, Plaintiffs vs. FirstBank Puerto Rico, Defendant, Adversary Case No. 8:13-ap-01071-MGW. Pursuant to the Preliminary Injunction Order, FirstBank has been enjoined from further prosecuting the BVI Receivership Proceeding.

### Proposed Use of Funds from the DIP Facility

10.     The Debtor has filed with this Court its Motion to Modify Preliminary Injunction to (A) Require FirstBank Puerto Rico to Immediately Terminate Receivership Proceeding and (B) Require Temporary Receiver to Turn Over Funds [Adv. Doc. No. 18] (the "**Turnover Motion**"). As stated in the Turnover Motion, the Debtor is filing this Motion in order to provide additional financing to manage the operation of the Scrub Island Resort due to certain actions by FirstBank following hearings held by this Court on December 6, 2013. The financing sought herein is subject to the condition precedent that the BVI Receivership Proceeding is terminated.

11.     The Debtor has prepared a thirteen (13) week budget (the "**Budget**") for the period of December 8, 2013 through March 8, 2014 (the "**Budget Period**"). A copy of the Budget is attached hereto as Exhibit B. As indicated by the Budget, during the Budget Period, the Debtor will need, in addition to the funds collected from its operations, funds in order to continue its business operations and successfully restructure its obligations and reorganize its business for the benefit of its creditors and employees.

12.     The Debtor believes that it will need to borrow funds under the DIP Facility for, among other things, the following items: (a) payroll and related payroll expenses; (b) operational costs, including utilities; (c) the purchase of necessary supplies and other inventory; and (d) administrative costs for these Chapter 11 cases.

13.     The proposed DIP Facility will enable the Debtor to pay ongoing operating expenses and take the required actions set forth above which are necessary to maintain and improve the value of the Debtor's ongoing concern and its collateral. The Debtor cannot take the actions described above without the DIP Facility.

### Terms of the DIP Facility

14.    The DIP Lender has agreed to provide a revolving credit facility to the Debtor in the amount of up to $250,000.00 pursuant to the DIP Loan Documents and the Financing Orders. The principal features of the DIP Facility are set forth in the DIP Loan Agreement, all of which are incorporated herein. Each creditor of the Debtor and party in interest should read, consider and carefully analyze the terms and provisions of the DIP Loan Agreement.

15.    The DIP Lender is comprised of CIH Loft LLC, Gary Eng and VK Investments Limited, all of whom are shareholders of the Debtor. CIH Loft LLC and Vance Kershner (the principal of VK Investments Limited) are also directors of the Debtor.

### Relief Requested and Grounds for Relief

16.    The Debtor submits that approval of the DIP Facility is in the best interests of the Debtor, its estate and creditors in that it provides the Debtor with additional assurance that the Debtor can continue to advance its business activities.

17.    The Debtor hereby requests authority, pursuant to Sections 364(c)(1) and 364(c)(2) of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, to obtain postpetition loans, advances and other financial accommodations from the DIP Lender in an amount of up to $250,000.00, including approximately $110,000.00 on an interim basis, secured by a security interest in and lien on all assets and properties of the Debtor located in the United States. The Debtor further requests authority to enter into the DIP Loan Documents with the DIP Lender.

18.    As additional assurance that the DIP Facility will be repaid, the DIP Lender will be granted and allowed a superpriority administrative expense claim in accordance with Section 364(c)(1) of the Bankruptcy Code having priority and right of payment over any and all other

obligations, liabilities and indebtedness of the Debtor, now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever.

19.     The Debtor believes that the financing described herein is in its best interest and the best interest of its creditors and its estate. The Debtor's access to the financing described herein will provide the Debtor's key constituents, including vendors, suppliers, employees, and customers, with the confidence that the Debtor will have sufficient cash to allow such parties to continue to deal with the Debtor in the ordinary course of business regardless of these cases. To the extent additional liquidity is required to operate its business, the Debtor must obtain the ability to utilize the DIP Facility.

20.     Due to the exigent circumstances, the Debtor is unable to obtain financing from other parties. The Debtor is presently unable to obtain, in the ordinary course of business or otherwise:

(a)     pursuant to Section 364(a) or 364(b) of the Bankruptcy Code, unsecured credit (including, without limitation, unsecured trade credit) allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense;

(b)     pursuant to Section 364(c)(1) of the Bankruptcy Code, unsecured credit (including, without limitation, unsecured trade credit) with priority over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code;

(c)     pursuant to Section 364(c)(2) of the Bankruptcy Code, credit secured by a lien on property of the estate that is not otherwise subject to a lien;

(d)     pursuant to Section 364(c)(3) of the Bankruptcy Code, credit secured by a junior lien on property of the estate that is subject to a lien; or

(e)     credit on any basis other than that described in the DIP Loan Agreement.

21.     After considering all of the alternatives, the Debtor has concluded, in the exercise of its business judgment, that the financing to be provided under the terms of the DIP Loan Agreement and this Motion represents the best financing available to the Debtor and is in the best interests of the Debtor, its creditors and other parties in interest.

22.     Good cause has been shown for the entry of an order granting this Motion pursuant to Bankruptcy Rule 4001(c).

23.     The DIP Lender and the Debtor have negotiated the terms and conditions of the DIP Facility in good faith and at arm's-length, and the terms and conditions of the DIP Loan Documents are fair and reasonable and are supported by reasonably equivalent value.  The Debtor requests that this Court find that any credit extended by the DIP Lender pursuant to the terms of the DIP Loan Documents will have been extended in "good faith" (as that term is used in Section 364(e) of the Bankruptcy Code).

### Interim Approval and Irreparable Harm

24.     Bankruptcy Rule 4001 provides that a final hearing on a motion to obtain postpetition financing may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary, expedited hearing on the motion and to authorize the proposed debtor in possession financing to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  Accordingly, the Debtor requests that the Court conduct a preliminary hearing on the Motion and authorize the Debtor, from the entry of the Interim Financing Order until the Final Hearing, to obtain credit pursuant to the DIP Facility to the extent necessary to avoid immediate and irreparable harm to its estate.  The proposed form of Interim Financing Order is attached as Exhibit C to this Motion.

25.     The Debtor further requests that the Court schedule the Final Hearing and authorize the Debtor to mail a copy of the Interim Financing Order when entered by the Court, which fixes the time and date of the Final Hearing and the deadline for the filing of objections to the Motion and the entry of the Final Financing Order.  The Debtor requests that the Court find that such notice of the Final Hearing is sufficient notice under Bankruptcy Rules 2002 and 4001.

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Financing Order in the form of Exhibit C attached hereto authorizing the Debtor to obtain financing and grant liens pursuant to 11 U.S.C. § 364(c) in accordance with the terms and conditions of the DIP Loan Documents, authorizing the Debtor's borrowing pursuant to the terms of the Interim Financing Order and pending a final hearing pursuant to Bankruptcy Rule 4001, and granting such other and further relief as may be just and proper.

Dated:  December 13, 2013

/s/ Charles A. Postler
Harley E. Riedel (Florida Bar No. 183628)
Charles A. Postler (Florida Bar No. 455318)
Stichter, Riedel, Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email:        hriedel@srbp.com
              cpostler@srbp.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the **Debtor's Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens and Superpriority Administrative**

**Expense Status Pursuant to 11 U.S.C. §364(c) and F.R.B.P. 4001** together with attached <u>Exhibits</u> <u>A</u>, <u>B</u> and <u>C</u> has been furnished on this 13th day of December, 2013, by (i) either the Court's CM/ECF Transmission or electronic mail transmission to Office of the United States Trustee and all other parties receiving electronic noticing and (ii) United States First Class Mail (unless receiving CM/ECF Transmission) to all parties set forth on the Local Rule 1007(d) Parties in Interest lists for these cases attached hereto.

*/s/ Charles A. Postler*
Charles A. Postler

Label Matrix for local noticing
113A-8
Case 8:13-bk-15285-MGW
Middle District of Florida
Tampa
Fri Dec 13 17:07:30 EST 2013

Scrub Island Development Group Limited
4602 Eisenhower Blvd.
Tampa, FL 33634-6359

Atlantic Southern
P.O. Box 469
Roadtown, Tortola
British Virgin Islands VG1110

BVI Electricity
PO Box 268
Roadtown, Tortola
British Virgin Islands VG1110

Delta Petroleum
PO Box 3318
Pasea, Tortola
British Virgin Islands VG1110

Digicel
P.O. Box 4168
Roadtown, Tortola
British Virgin Islands VG1110

Enjoy Life
PMB 370
1353 St 19
Guaynabo, PR 00966-2700

FirstBank Puerto Rico
c/o W. Keith Fendrick, Esq.
Holland & Knight LLP
100 N. Tampa St., Ste. 4100
Tampa, FL 33602-3644

ICT Management Serviced Ltd
PO Box 2221
Roadtown, Tortola
British Virgin Islands VG1110

Joseph Frett
c/o Orion Law
Jayla Place, PO Box 216
Road Town, Tortola
British Virgin Islands VG1110

K Mark's Foods Ltd
PO Box 830
Roadtown, Tortola
British Virgin Islands VG1110

L'Occitane, Inc.
1430 Broadway
2nd Floor
New York, NY 10018-9227

Luis A. Linares, David Foster,
and Scrub Island, LLC
c/o Michael D. Sirota, Esq.
Cole, Schotz, Meisel, Forman & Leonard
25 Main Street
Hackensack, NJ 07601-7085

Mainsail B.V.I. Limited
4602 Eisenhower Blvd
Tampa, FL 33634-6359

Mainsail BVI Property Management, LLC
4602 Eisenhower Blvd.
Tampa, FL 33634-6359

Mainsail Central, LLC
4602 Eisenhower Blvd
Tampa, FL 33634-6359

Mainsail Management Group
4602 Eisenhower Blvd
Tampa, FL 33634-6359

Mainsail Suites Hotel
4602 Eisenhower Blvd
Tampa, FL 33634-6359

Marriott Execustay
4602 Eisenhower Blvd
Tampa, FL 33634-6359

Marriott International, Inc.
c/o Lisa Greenlees, Esquire
10400 Fernwood Rd.
Bethesda, MD 20817-1102

Marriott International, Inc.
c/o Lori V. Vaughan, Esq.
Trenam Kemker
P.O. Box 1102
Tampa, FL 33601-1102

O'Neal & Mundy Shipping Co
PO Box 61
Pasea Estate, Tortola
British Virgin Islands VG1110

Supa Valu Ltd
PO Box 820
Roadtown, Tortola
British Virgin Islands VG1110

Withers Worldwide
10890 NW 29th St.
Miami, FL 33172-2149

End of Label Matrix
Mailable recipients    23
Bypassed recipients     0
Total                  23

```
Label Matrix for local noticing          Scrub Island Construction Limited        Art Linares and David Foster
113A-8                                    4602 Eisenhower Blvd.                    242 Toby Hill Rd
Case 8:13-bk-15286-MGW                    Tampa, FL 33634-6359                     Westbrook, CT 06498-3521
Middle District of Florida
Tampa
Fri Dec 13 17:08:29 EST 2013

Blue Water Traders                        MHLSC Management                        Oscar Rivera
c/o Oscar Juelle                          c/o Michael McCann                      664 Calle Concordia
PMB 302 Suite 9A, B-5 Calle Tabonuco      3004 Georgetown                         San Juan, PR 00907-3509
Guaynabo, PR 00968                        Houston, TX 77005-3030


Pablo Dardet                              Thomas Frederick                        United States Trustee
MCS Plaza, Suite 809                      10705 Lake Alice Cove                   C/O Denise E Barnett, Esq
255 Ponce de Leon Ave                     Odessa, FL 33556-4947                   501 East Polk St Ste 1200
Hato Rey, PR 00917-1955                                                           Tampa, FL 33602-3945


End of Label Matrix
Mailable recipients      8
Bypassed recipients      0
Total                    8
```

**EXHIBIT A**

## LOAN COMMITMENT AGREEMENT

December 13, 2013

Scrub Island Development Group Limited
ATTN: Joe C. Collier, III
4602 Eisenhower Boulevard
Tampa, Florida 33634

Dear Mr. Collier:

CIH Loft, LLC, Gary Eng and VK Investments Limited or an entity to be formed for which these parties are the sole members (the "DIP Lender") are pleased to present this loan commitment agreement (the "Commitment") to provide debtor-in-possession financing (the "DIP Facility") to Scrub Island Development Group Limited (the "Borrower"), in the amount and under the terms and conditions outlined below.

## GENERAL TERMS

**DIP Facility:** A revolving line of credit in the maximum principal amount of up to $250,000.00.

**Borrower:** Scrub Island Development Group Limited, as a debtor in possession in Case No. 8:13-bk-15285-MGW (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Bankruptcy Court").

**Closing Date:** The date on which an interim order approving the DIP Facility acceptable to the DIP Lender (the "Interim Financing Order") is entered by the Bankruptcy Court, and fulfillment of all of the other Conditions Precedent set forth below to the satisfaction of the DIP Lender (the "Closing Date").

**Maturity Date:** This Commitment of the DIP Lender will terminate, and all amounts then owing under the DIP Facility will be due and payable, on the earlier to occur of: (i) the effective date of a plan of reorganization, which shall be in form and substance acceptable to the DIP Lender, or (ii) the occurrence of an Event of Default (as defined below) under this Commitment or any DIP Facility loan documents as requested by the DIP Lender (the "DIP Loan Documents") and a determination by the DIP Lender to terminate its commitment.

| | |
|---|---|
| **Available Amount:** | Advances under the DIP Facility shall be subject to the discretion of the DIP Lender based on a budget to be provided by the Borrower acceptable to the DIP Lender (the "<u>Budget</u>"). |
| **Use of Proceeds:** | Proceeds of all advances under the DIP Facility shall be used to fund general corporate and working capital requirements of the Borrower and identified as projected disbursements in the Budget. It is expected that some or all of the advances under the DIP Facility will be used to maintain and preserve collateral of FirstBank Puerto Rico, as to which the Borrower has or may assert surcharge rights under 11 U.S.C. §506(c). |
| **Revolving Facility and Prepayment:** | The DIP Facility may be paid, from time to time, by the Borrower from receipts and profits of the Borrower received in the ordinary course of its business. The DIP Facility may be prepaid, in whole or in part, at any time at the option of the Borrower, without penalty or premium. |

## CONDITIONS

| | |
|---|---|
| **Conditions Precedent:** | Conditions precedent to the closing of the DIP Facility and other conditions deemed by the DIP Lender to be appropriate to this transaction, include, without limitation, the following: |

- The Bankruptcy Court shall have entered the Interim Financing Order consistent with the terms of this Commitment and such other terms as required by the DIP Lender.

- Entry of findings of fact and conclusions of law in support of the Interim Financing Order, in form and substance acceptable to the DIP Lender.

- All documentation relating to the DIP Facility, including a promissory note and UCC-1 financing statement, shall be in form and substance satisfactory to the DIP Lender.

- Granting of the Debtors' Motion to Modify Preliminary Injunction to (A) Require FirstBank Puerto Rico to Immediately Terminate Receivership Proceeding and (B) Require Temporary Receiver to Turn Over Funds [Doc. No. 18] filed in Adversary Proceeding No. 8:13-ap-1071-MGW and termination of the receivership proceeding instituted by FirstBank Puerto Rico in the British Virgin Islands.

| | |
|---|---|
| **Condition Subsequent:** | • The Bankruptcy Court shall have entered a final order approving the DIP Facility (the "Final Financing Order" and, together with the Interim Financing Order, the "Financing Orders"), on terms and conditions acceptable to the DIP Lender in its sole and absolute discretion. |

## COLLATERAL AND PRIORITY

| | |
|---|---|
| **Collateral:** | The collateral securing the DIP Facility shall be all right, title and interest of the Borrower in and to any assets of the Debtor located in the United States (the "Collateral"). |
| **Cash Dominion:** | All advances under the DIP Facility will be deposited in a debtor in possession account maintained by Bank of Tampa. |
| **Security and Priority:** | The DIP Facility will be secured by first priority liens and security interests, in accordance with Section 364(c)(2) of the Bankruptcy Code, in the Collateral.  Such liens and security interests will be deemed perfected without the need for any further filings by the DIP Lender. |
| **Payment from Revenues:** | The DIP Lender shall be entitled to all net revenues from operation of the Scrub Island Resort after payment of operating expenses, before such revenues are used to pay any prepetition obligations of the Borrower, whether secured or unsecured; provided, however, that the DIP Lender shall also be paid from any surcharge award. |
| **Superpriority Administrative Expense Claim:** | The obligations of the Borrower arising under this Commitment after the Closing Date shall constitute, in accordance with Section 364(c) of the Bankruptcy Code, a superpriority administrative claim having priority over any and all administrative expenses of and unsecured claims against the Borrower now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code. The DIP Lender shall have a superpriority administrative expense claim against the Borrower's estate pursuant to Section 364(c) of the Bankruptcy Code for the obligations, which shall be prior, senior and superior to any other Claim, including any other superpriority administrative expense claim of any kind or nature. |

## FEES AND EXPENSES

| | |
|---|---|
| **Interest Rate:** | An amount equal to five percent (5%) per annum floating, payable monthly in arrears calculated on the basis of actual days elapsed in a year of 360 days.  Default rate of interest may be up to one percent (1%) higher than the rate otherwise payable. |
| **Fees:** | There are no closing costs or expenses in connection with the DIP Facility that the Borrower will be responsible for paying. |

## EVENTS OF DEFAULT

**Events of Default:**

| | |
|---|---|
| **Dismissal:** | Dismissal of the Bankruptcy Case. |
| **Conversion:** | Conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. |
| **Appointment of Trustee** | Appointment of a chapter 11 trustee or a responsible officer or examiner with enlarged powers. |
| **Confirmation of Plan:** | Failure to confirm a plan satisfactory to the DIP Lender. |
| **Third Party Relief from Stay:** | Entry of an order granting relief from the automatic stay to permit exercise of rights on behalf of any party with respect to a significant asset or assets. |
| **Financing Order Modification:** | Entry of an order amending, supplementing, modifying, reversing, or vacating of, or filing by Borrower of a motion seeking the amendment, supplement, modification, reversing, or vacating of any Financing Orders. |

If you are in agreement with the foregoing please sign and return the original of this Commitment.

[Signature Page Follows]

**DIP LENDER**:

**CIH LOFT, LLC**

By: _____
     Joe E. Collier, III
     Managing Member


_____

**GARY ENG**, Individually


**VK INVESTMENTS LIMITED**


By: _____

Name: _____

Title: _____


AGREED AND ACCEPTED TO ON THIS
13TH DAY OF DECEMBER, 2013:

**SCRUB ISLAND DEVELOPMENT
  GROUP LIMITED**

By:    CIH LOFT, LLC
       Its Director


     By: _____
        Joe E. Collier, III
        Managing Member

# EXHIBIT B

Scrub Island Cash Flow Budget 12.13.13

| | 12/1/2013 | 12/8/2013 | 12/15/2013 | 12/22/2013 | 12/29/2013 | 1/5/2014 | 1/12/2014 | 1/19/2014 | 1/26/2014 | 2/2/2014 | 2/9/2014 | 2/16/2014 | 2/23/2014 | 3/2/2014 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Inflow - Rooms | - | 55,000 | 112,000 | 200,000 | 125,000 | 125,000 | 85,573 | 75,000 | 75,000 | 75,000 | 125,000 | 125,000 | 100,000 | 50,000 | 1,327,573 |
| Inflow - Rooms (Marriott Rewards)/Advance Dep | - | - | - | (85,000) | (85,000) | (45,000) | 200,000 | - | - | - | 175,000 | - | - | 148,295 | 308,295 |
| Inflow - Food and Beverage | - | 51,919 | 63,332 | 113,237 | 67,979 | 67,991 | 67,991 | 54,392 | 40,794 | 40,865 | 95,678 | 95,678 | 54,673 | 13,668 | 828,196 |
| Inflow - Telecommunications Revenue | - | 22 | 22 | 22 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 253 |
| Inflow - Other Operated Departments | - | 23,395 | 28,538 | 51,026 | 33,593 | 45,441 | 45,441 | 36,352 | 27,264 | 27,577 | 65,803 | 65,803 | 37,602 | 9,400 | 497,236 |
| Inflow - Rentals and Other Income | - | 19,172 | 23,387 | 41,815 | 25,673 | 27,957 | 27,957 | 22,366 | 16,774 | 16,966 | 40,485 | 40,485 | 23,134 | 5,784 | 331,956 |
| Total Cash Inflow | - | 149,508 | 227,279 | 321,100 | 167,263 | 221,407 | 426,980 | 188,129 | 159,852 | 160,426 | 501,985 | 326,985 | 215,428 | 227,166 | 3,293,508 |
| | | | | | | | | | | | | | | | |
| Commission | - | 8,191 | 8,191 | 8,191 | 8,191 | 10,003 | 10,728 | 10,728 | 10,728 | 22,648 | 11,097 | 11,097 | 11,097 | 14,818 | 145,708 |
| Credit Card Fee | - | 6,328 | 6,328 | 6,328 | 6,328 | 7,133 | 7,455 | 7,455 | 7,455 | 7,437 | 7,392 | 7,392 | 7,392 | 5,280 | 89,701 |
| FFE Escrow | - | | | | | | | | | | | | 22,009 | 21,823 | 43,832 |
| Food & Beverage Cost | - | 22,274 | 25,523 | 45,634 | 27,395 | 21,009 | 21,009 | 17,199 | 12,605 | 12,627 | 29,564 | 29,564 | 17,295 | 4,223 | 285,924 |
| Food & Beverage Operating | - | 4,212 | 4,212 | 4,212 | 8,114 | 8,114 | 8,295 | 2,526 | 2,526 | 4,488 | 8,317 | 2,536 | 2,536 | 1,811 | 65,061 |
| Insurance | - | 30,000 | | | | 30,000 | | | | | 30,000 | | | | 90,000 |
| Interest | - | | | | | | | | | | | | | | - |
| Landscaping | - | 3,295 | 3,295 | | | 4,038 | 4,038 | | | | 3,900 | 3,900 | | | 22,467 |
| Maintenance | - | 3,253 | 4,553 | 3,253 | 3,253 | 5,938 | 10,185 | 8,973 | 7,055 | 7,051 | 10,064 | 5,384 | 8,894 | 7,596 | 87,695 |
| Management Fee | - | | | | | | | | | | | | | | - |
| Marketing & Sales | - | 24,104 | | | | 21,352 | 27,502 | 5,495 | 14,495 | 9,214 | 30,266 | 5,452 | 14,076 | 8,972 | 175,566 |
| Marriott Expense | - | | | | | 3,774 | 4,243 | 3,487 | 7,473 | 3,505 | 4,311 | 3,551 | 7,584 | 2,537 | 107,630 |
| Operating Supplies | - | 9,338 | 11,275 | | | 8,114 | 8,295 | | | | 8,317 | | | | 75,024 |
| Payroll - BVI | - | 110,665 | | 129,474 | 129,474 | | | | 175,323 | | 172,415 | 172,415 | 171,915 | | 938,022 |
| Payroll - US | - | 13,828 | | 13,828 | | 13,028 | 13,028 | 8,219 | | | 8,432 | 2,674 | 5,174 | 1,232 | 65,765 |
| Phone / Internet | - | 993 | 993 | 993 | 2,993 | 2,263 | 2,671 | 2,671 | 2,671 | 509 | 2,674 | 509 | 509 | 274 | 33,674 |
| Recruiting | - | 415 | 415 | 415 | 415 | 518 | 518 | 509 | 509 | 509 | 509 | 509 | 509 | - | 10,072 |
| Rent | - | 5,500 | | | | 5,500 | | | | | 5,500 | | | | 16,500 |
| Retail Cost | - | 6,137 | 6,137 | 6,137 | 6,137 | 7,324 | 7,800 | 7,800 | 7,800 | 7,876 | 8,068 | 8,068 | 8,068 | 5,763 | 93,112 |
| Rooms | - | 12,673 | 13,102 | 15,712 | 3,714 | 7,081 | 2,542 | 11,023 | 7,384 | 6,841 | 11,311 | 2,607 | 7,564 | 1,862 | 103,415 |
| Security | - | | | | | | | | | 7,500 | | | | 7,500 | 21,600 |
| Spa Cost | - | | 12,000 | | 12,000 | 6,600 | | 10,000 | | | | | | 36 | 22,368 |
| Tax | - | | | | 23,000 | 5,000 | | | | | | | | 50,000 | 93,000 |
| Transportation | - | 70,000 | | | | | | | | | | | | | 9,370 |
| Legal | - | 267 | 267 | 1,767 | 267 | 157 | 157 | 113 | 113 | 113 | 113 | 113 | 113 | 81 | 20,000 |
| Utilities | - | 65,000 | 10,000 | 1,500 | 1,527 | 130,000 | 1,500 | 1,484 | 1,500 | 1,500 | 130,000 | 50,000 | 1,532 | 130,000 | 565,543 |
| Total Cash Outflow | - | 285,808 | 214,170 | 144,747 | 233,178 | 286,368 | 357,122 | 104,794 | 260,488 | 162,498 | 433,401 | 186,622 | 262,257 | 249,337 | 3,180,789 |
| | | | | | | | | | | | | | | | |
| Net Cash - Inflow / (Outflow) | 75,000 | (136,299) | 13,109 | 176,353 | (65,915) | (64,961) | 69,858 | 83,335 | (100,637) | (2,072) | 68,584 | 140,363 | (46,829) | (23,171) | 112,719 |
| Accumulative Cash | 75,000 | (61,299) | (48,191) | 128,162 | 62,247 | (2,713) | 67,145 | 150,480 | 49,843 | 47,771 | 116,356 | 256,719 | 209,890 | 187,719 | 112,719 |

# **EXHIBIT C**

[TO BE FILED BY SUPPLEMENT]