# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

**SCRUB ISLAND DEVELOPMENT GROUP LIMITED,**

**SCRUB ISLAND CONSTRUCTION LIMITED,**

Debtors.

_____/

Chapter 11

Case No. 8:13-bk-15285-MGW

Jointly Administered with

Case No. 8:13-bk-15286-MGW

---

### JOINT PLAN OF REORGANIZATION OF
### SCRUB ISLAND DEVELOPMENT GROUP LIMITED AND
### SCRUB ISLAND CONSTRUCTION LIMITED
### UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE

STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
Harley E. Riedel (Florida Bar No. 183628)
Charles A. Postler (Florida Bar No. 455318)
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:   (813) 229-0144
Facsimile:    (813) 229-1811
Email:        hriedel@srbp.com
              cpostler@srbp.com
Counsel for Debtors and Debtors in Possession

Tampa, Florida
Dated as of March 19, 2014

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS JOINT PLAN OF REORGANIZATION OF SCRUB ISLAND DEVELOPMENT GROUP LIMITED AND SCRUB ISLAND CONSTRUCTION LIMITED UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE (THE "PLAN") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTORS' DISCLOSURE STATEMENT (AS HEREINAFTER DEFINED) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND DISTRIBUTED, WITH BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE PLAN. THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER.   REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTORS' HISTORY, BUSINESSES, PROPERTIES, AND OPERATIONS, THE PROJECTIONS FOR THE DEBTORS' FUTURE OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASES, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN.  ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE PLAN ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE 1 | INTRODUCTION | 1 |
| | | |
| ARTICLE 2 | DEFINED TERMS; RULES OF CONSTRUCTION | 2 |
| 2.1 | Defined Terms. | 2 |
| 2.2 | Rules of Construction. | 21 |
| | | |
| ARTICLE 3 | TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS | 22 |
| 3.1 | Administrative Expense Claims. | 22 |
| 3.2 | Priority Tax Claims. | 22 |
| | | |
| ARTICLE 4 | DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS | 23 |
| 4.1 | Class 1: Priority Claims. | 23 |
| 4.2 | Class 2: Secured Claims and Other Claims of FirstBank. | 23 |
| 4.3 | Class 3: Secured Tax Claims of Governmental Units. | 23 |
| 4.4 | Class 4: Other Secured Claims. | 23 |
| 4.5 | Class 5: Unsecured Claims of the SIU Entities. | 23 |
| 4.6 | Class 6: Unsecured Claims of Blue Water Traders Ltd. | 23 |
| 4.7 | Class 7: Unsecured Claims of Pablo L. Dardet. | 24 |
| 4.8 | Class 8: Unsecured Claims of Thomas Frederick. | 24 |
| 4.9 | Class 9: Unsecured Claims of Linares/Foster. | 24 |
| 4.10 | Class 10: Unsecured Claims of Oscar Rivera. | 24 |
| 4.11 | Class 11: Unsecured Claims (Unsecured Claims Not Otherwise Classified). | 24 |
| 4.12 | Class 12: Intercompany Claims. | 24 |
| 4.13 | Class 13: SIDG Equity Interests. | 24 |
| 4.14 | Class 14: SICL Equity Interests. | 24 |
| | | |
| ARTICLE 5 | TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS | 24 |
| 5.1 | Unclassified Claims. | 25 |
| 5.2 | Class 1: Priority Claims. | 25 |
| 5.3 | Class 2: Secured Claims and Other Claims of FirstBank. | 25 |
| 5.4 | Class 3: Secured Tax Claims of Governmental Units. | 29 |
| 5.5 | Class 4: Other Secured Claims. | 29 |
| 5.6 | Class 5: Unsecured Claims of the SIU Entities. | 30 |
| 5.7 | Class 6: Unsecured Claims of Blue Water Traders Ltd. | 31 |
| 5.8 | Class 7: Unsecured Claims of Pablo L. Dardet. | 31 |
| 5.9 | Class 8: Unsecured Claims of Thomas Frederick. | 31 |
| 5.10 | Class 9: Unsecured Claims of Linares/Foster. | 32 |
| 5.11 | Class 10: Unsecured Claims of Oscar Rivera. | 32 |
| 5.12 | Class 11: Unsecured Claims (Unsecured Claims Not Otherwise Classified). | 32 |
| 5.13 | Class 12: Intercompany Claims. | 32 |
| 5.14 | Class 13: SIDG Equity Interests. | 32 |
| 5.15 | Class 14: SICL Equity Interests. | 33 |
| | | |
| ARTICLE 6 | ACCEPTANCE OR REJECTION OF THE PLAN | 33 |
| 6.1 | Each Impaired Class Entitled to Vote Separately. | 33 |
| 6.2 | Acceptance by Impaired Classes. | 33 |
| 6.3 | Presumed Acceptance of Plan by Unimpaired Classes. | 33 |

| | | |
|---|---|---|
| 6.4 | Deemed Non-Acceptance of Plan. | 34 |
| 6.5 | Impairment Controversies. | 34 |
| | | |
| ARTICLE 7 | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 34 |
| 7.1 | Assumption or Rejection of Executory Contracts and Unexpired Leases. | 34 |
| 7.2 | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. | 35 |
| 7.3 | Inclusiveness. | 35 |
| 7.4 | Cure of Defaults. | 35 |
| 7.5 | Claims under Rejected Executory Contracts and Unexpired Leases. | 36 |
| 7.6 | Insurance Policies. | 36 |
| | | |
| ARTICLE 8 | MEANS OF IMPLEMENTATION OF THE PLAN | 36 |
| 8.1 | General Overview of the Plan. | 36 |
| 8.2 | Effective Date Actions. | 37 |
| 8.3 | Vesting of Property of the Estates in the Reorganized Debtors. | 38 |
| 8.4 | Continued Corporate Existence; Dissolution of Reorganized SICL. | 38 |
| 8.5 | Corporate Action. | 38 |
| 8.6 | Boards of Directors and Executive Officers of the Reorganized Debtors. | 39 |
| 8.7 | Section 1146 Exemption. | 39 |
| 8.8 | Pursuit of Causes of Action. | 39 |
| 8.9 | Prosecution and Settlement of Claims and Causes of Action. | 41 |
| 8.10 | Effectuating Documents; Further Transactions. | 41 |
| 8.11 | Cancellation of Existing Loan Documents and Agreements. | 42 |
| 8.12 | Exclusivity Period. | 42 |
| 8.13 | Dissolution of the Creditors Committee. | 42 |
| | | |
| ARTICLE 9 | PROVISIONS GOVERNING DISTRIBUTIONS | 42 |
| 9.1 | Initial Distribution. | 42 |
| 9.2 | Determination of Claims. | 43 |
| 9.3 | Distributions as to Allowed Unsecured Claims in Class 11. | 44 |
| 9.4 | Unclaimed Distributions. | 44 |
| 9.5 | Transfer of Claim. | 45 |
| 9.6 | One Distribution Per Holder. | 45 |
| 9.7 | Effect of Pre-Confirmation Distributions. | 45 |
| 9.8 | No Interest on Claims. | 45 |
| 9.9 | Compliance with Tax Requirements. | 45 |
| | | |
| ARTICLE 10 | CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE | 46 |
| 10.1 | Conditions Precedent to Confirmation of the Plan. | 46 |
| 10.2 | Conditions Precedent to the Effective Date. | 46 |
| 10.3 | Notice of the Effective Date. | 46 |
| | | |
| ARTICLE 11 | DISCHARGE, EXCULPATION FROM LIABILITY, RELEASE, AND GENERAL INJUNCTION | 47 |
| 11.1 | Discharge of Claims. | 47 |
| 11.2 | Exculpation from Liability. | 48 |
| 11.3 | Release. | 48 |
| 11.4 | General Injunction. | 49 |
| 11.5 | Term of Certain Injunctions and Automatic Stay. | 49 |
| 11.6 | No Liability for Tax Claims. | 50 |

ARTICLE 12    RETENTION OF JURISDICTION ................................................................ 50
    12.1    General Retention.................................................................................. 50
    12.2    Specific Purposes.................................................................................. 50
    12.3    Closing of the Bankruptcy Cases.......................................................... 53

ARTICLE 13    MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS............ 53
    13.1    Modification of Plan.............................................................................. 53
    13.2    Confirmation Over Objections. ............................................................. 54

ARTICLE 14    MISCELLANEOUS PROVISIONS ............................................................. 54
    14.1    No Admissions. ...................................................................................... 54
    14.2    Revocation or Withdrawal of the Plan................................................... 54
    14.3    Standard for Approval of the Bankruptcy Court..................................... 55
    14.4    Further Assurances. ............................................................................... 55
    14.5    Headings................................................................................................ 55
    14.6    Notices................................................................................................... 55
    14.7    Governing Law. ..................................................................................... 55
    14.8    Limitation on Allowance. ...................................................................... 56
    14.9    Estimated Claims................................................................................... 56
    14.10   Consent to Jurisdiction.......................................................................... 56
    14.11   Setoffs................................................................................................... 56
    14.12   Successors and Assigns. ........................................................................ 57
    14.13   Modification of Payment Terms. ........................................................... 57
    14.14   Entire Agreement................................................................................... 57
    14.15   Severability of Plan Provisions............................................................. 57
    14.16   Controlling Document. .......................................................................... 57
    14.17   Plan Supplement.................................................................................... 58
    14.18   Computation of Time............................................................................. 58
    14.19   Substantial Consummation. ................................................................... 58
    14.20   No Liability for Solicitation................................................................... 58

## INDEX TO EXHIBITS TO PLAN

Exhibit A    –    Assumed Contracts

Exhibit B    –    Mainsail Claims

Exhibit C    –    Rejected Contracts

Exhibit D    –    SIDG Shareholder Claims

**ARTICLE 1**
**INTRODUCTION**

Scrub Island Development Group Limited ("SIDG") and Scrub Island Construction Limited ("SICL"), as Debtors and Debtors in Possession in the Bankruptcy Cases, hereby propose the following Plan for the reorganization of the Debtors and the resolution of the outstanding Claims against and Equity Interests in the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and request Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 2.1 of the Plan. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

In summary, but subject to more specific details provided herein, the Plan provides for the reorganization of the Debtors, the settlement and payment of the Allowed Secured Claims of FirstBank Puerto Rico ("FirstBank"), and the payment in full of all of the other Allowed Claims against the Debtors except as otherwise described in the Plan. On the Closing Date, (i) $9,075,000.00 will be invested in Reorganized SIDG by one or more new investors in exchange for a majority percentage ownership of the issued and outstanding shares in Reorganized SIDG, which funds will be used to make certain required payments under the Plan to FirstBank, and (ii) $6,000,000.00 will be contributed to Reorganized SIDG by the existing shareholders of SIDG in exchange for a minority percentage ownership of the issued and outstanding shares in Reorganized SIDG, which funds will be placed into escrow with FirstBank and used to pay certain capital expenditures relating to Scrub Island.

Although the Debtors' Estates are presently being jointly administered for procedural purposes, the Debtors and their Estates have not yet been substantively consolidated. Accordingly, the Plan is really two distinct plans, one for each of the Debtors. The Articles of the Plan generally apply to both of the Debtors, except where otherwise indicated.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Debtors' Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests entitled to vote on the Plan. The Debtors' Disclosure Statement was approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and the Disclosure Statement has been distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtors' history, businesses, properties, and operations, (b) the Projections for the Debtors' future operations, (c) a summary of significant events which have occurred to date in the Bankruptcy Cases, (d) a summary of the means of implementing and funding the Plan, and (e) the procedures for voting on the Plan. Unless otherwise ordered by the Bankruptcy Court, no materials, other than the Plan and the accompanying Disclosure Statement, Disclosure Statement Approval Order, and Ballot, have been approved by the Debtors or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN

1

AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 13 of the Plan, the Debtors expressly reserve the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN HAS BEEN APPROVED BY ALL OF THE DIRECTORS OF EACH OF THE DEBTORS. IN THE OPINION OF THE DEBTORS, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS. ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND THE DEBTORS RECOMMEND THAT CREDITORS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' BUSINESSES, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, THE PROJECTIONS FOR THE FUTURE OPERATIONS OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES OF THE DEBTORS SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE 2
## DEFINED TERMS; RULES OF CONSTRUCTION

2.1    **Defined Terms**.

2.1.1    As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

"**Administrative Expense**" means (a) any cost or expense of administration of the Bankruptcy Cases under Section 503(b) or Section 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy

Court-approved pleading seeking such expense in the Bankruptcy Cases on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estates or operating the businesses of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in Possession in the ordinary course of their businesses, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Superpriority Claim; (c) all fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Bankruptcy Cases that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Cure Claim, any Environmental Claim, any Disallowed Claim, any Claims of the BVI Receiver (including, without limitation, for any fees and costs of any attorneys, accountants, advisors or other professionals engaged by the BVI Receiver), or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 12. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period).

"**Administrative Expense Claim**" means any Claim for the payment of an Administrative Expense.

"**Administrative Expense Claim Bar Date**" means the date(s) established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest (including any Professional) of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim, including as established in the Disclosure Statement Approval Order. Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtors, the Reorganized Debtors, or any of their respective Properties or Estates, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.

"**Affiliate**" means, with respect to any Person (other than the Debtors), (a) any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with such Person, (b) any other Person that, directly or indirectly, owns or controls, whether beneficially, or as trustee, guardian or other fiduciary, twenty-five percent (25%) or more of the equity interests having ordinary voting power in the election of directors of such Person, or (c) any other Person who is a director, officer, joint venturer or partner (i) of such Person, (ii) of any subsidiary of such Person, or (iii) of any Person described in clause (a) above. For the purposes of

this definition, control of a Person shall mean the power (direct or indirect) to direct or cause the direction of the management and policies of such Person whether by contract or otherwise. When used in the Plan as relating to the Debtors, the term "Affiliate" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

"**Allowed Amount**" means the dollar amount in which a Claim is allowed.

"**Allowed Claim**" means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed", when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

"**Allowed Class ... Claim**" means an Allowed Claim in the particular Class described.

"**Assumed Contracts**" has the meaning ascribed to such term in Article 7.1 of the Plan. A list of the Assumed Contracts is set forth in Exhibit A attached to the Plan.

"**Avoidance Actions**" means any and all actions to avoid or recover a transfer of Property of the Debtors' Estates or an interest of the Debtors in Property, which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Debtors' Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Section 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date.

"**Ballot**" means the Ballot, accompanying the Disclosure Statement and the Plan, on which Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

"**Bankruptcy Cases**" means, collectively, the jointly administered cases of the Debtors currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which cases were commenced by the Debtors on the Petition Date and presently bear Case Nos. 8:13-bk-15285-MGW (Scrub Island Development Group Limited) and 8:13-bk-15286-MGW (Scrub Island Construction Limited).

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

**"Bankruptcy Counsel"** means Stichter, Riedel, Blain & Prosser, P. A.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated under Section 2075 of title 28 of the United States Code, and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

**"Bar Date"** means February 3, 2014, the date set by the Bankruptcy Court in the Notice of Commencement as the last day for filing a Proof of Claim against the Debtors in the Bankruptcy Cases, excluding (a) a Prepetition Claim of a Governmental Unit, for which a Proof of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (b) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (c) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (d) a Claim with respect to an executory contract or unexpired lease that is assumed or rejected pursuant to the Plan (as to which the bar date shall be as set forth in Article 7.4 or Article 7.5, respectively, of the Plan) or a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

**"Blue Water Traders Prepetition Claims"** means any and all Claims of Blue Water Traders Ltd. represented by, relating to, or arising under or in connection with the Blue Water Traders Prepetition Contracts and Site LV4.

**"Blue Water Traders Prepetition Contracts"** means, collectively, (i) that certain Site Purchase and Sale Agreement, effective as of August 12, 2006, between Blue Water Traders Ltd. and SIDG, and (ii) that certain Construction Contract – Longview Residences between Blue Water Traders Ltd. and SICL, in each case with respect to Site LV4.

**"Business Day"** means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in Tampa, Florida are required or authorized to close by law.

**"BVI Receiver"** means Meade Malone and/or MWM Corporate Services Limited.

**"BVI Receivership Proceeding"** means the proceeding pending in The Eastern Caribbean Supreme Court In the High Court of Justice Virgin Islands, Claim No. BVIHC (Com)

2013/0139, styled: *In the Matter of a Mortgagee's Claim by FirstBank Puerto Rico (the "Bank") pursuant the CPR Part 66(1)(c)(d) and (g) for the Payment of Monies Secured by Mortgage, for Possession and the Sale of Mortgaged Property by FirstBank Puerto Rico, Claimant, and Scrub Island Construction Limited, Scrub Island Development Group Limited, Joe Collier, CIH Loft LLC, Defendants/Respondents.*

**"Cash"** means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from Reorganized SIDG drawn on a domestic bank.

**"Causes of Action"** means any and all of the Debtors' or the Estates' actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including (a) the Avoidance Actions, and (b) any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, turnover actions and claims of the type referred to in the Disclosure Statement or in Article 8.8 of the Plan. The Causes of Action shall vest in the Reorganized Debtors (as applicable) on the Effective Date. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities expressly released or waived by the Debtors pursuant to the Plan or a Final Order of the Bankruptcy Court.

**"Causes of Action Recoveries"** means the proceeds, benefits and other recoveries of any Causes of Action received by the Reorganized Debtors.

**"Claim"** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise, including Administrative Expense Claims, Environmental Claims, and claims based upon or arising under the laws of the British Virgin Islands.

**"Claims Objection Deadline"** means the date that is thirty (30) days following the date of the entry of the Confirmation Order on the Docket, unless such date is extended by motion of the Debtors or the Reorganized Debtors.

**"Class"** means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan.

**"Clerk"** means the Clerk of the Bankruptcy Court.

6

**"Clerk's Office"** means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, 5th Floor, Tampa, Florida 33602.

**"Closing"** means the closing under the FirstBank New Loan Documents and under the Longview Villa Owner Settlement Agreements and on the issuance of the Reorganized SIDG Shares, and the other transactions contemplated in the Plan in connection with the foregoing, all of which shall occur on the Closing Date.

**"Closing Date"** means the date of the Closing.

**"Collateral"** means Property in which any of the Estates has (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

**"Confirmation"** or **"Confirmation of the Plan"** means the confirmation of the Plan by the Bankruptcy Court.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).

**"Confirmation Hearing"** means the hearing at which the Bankruptcy Court considers Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the order of the Bankruptcy Court in the Bankruptcy Cases confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented, which order shall be in form and substance acceptable to the Debtors and FirstBank.

**"Creditor"** means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Cure Claims, and Environmental Claims, and Creditors with Claims based upon or arising under the laws of the British Virgin Islands.

**"Creditors Committee"** means the Committee of the Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Cases pursuant to Section 1102 of the Bankruptcy Code on December 12, 2013 (Doc. No. 64), as such appointment was amended by the United States Trustee on February 27, 2014 (Doc. No. 162), and as the membership of the Creditors Committee may hereafter be further amended or modified by the United States Trustee.

**"Cure Claim"** means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtors pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non-

monetary), arising from, relating to or in connection with the assumption by the Debtors of any Assumed Contract under the Plan (provided such Claim is filed with the Bankruptcy Court by the Cure Claim Submission Deadline). In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim.

**"Cure Claim Submission Deadline"** means, and shall occur on the same day as, the Voting Deadline.

**"Dardet Prepetition Claims"** means any and all Claims of Pablo L. Dardet represented by, relating to, or arising under or in connection with the Dardet Prepetition Contracts and Site LV9.

**"Dardet Prepetition Contracts"** means, collectively, (i) that certain Site Purchase and Sale Agreement, effective as of May 15, 2006, between Pablo L. Dardet and SIDG, and (ii) that certain Construction Contract – Longview Residences, effective as of July 5, 2006, between Pablo L. Dardet and SICL, in each case with respect to Site LV9.

**"Debt"** has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**"Debtors"** means, collectively, SIDG and SICL.

**"Debtors in Possession"** means, collectively, SIDG and SICL, as debtors in possession in the Bankruptcy Cases.

**"Determination Date"** means the later of (i) the Effective Date and (ii) the date the order of the Bankruptcy Court allowing a Claim becomes a Final Order (if applicable).

**"Disallowed Claim"** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

**"Disclosure Statement"** means the Joint Disclosure Statement for Joint Plan of Reorganization of Scrub Island Development Group Limited and Scrub Island Construction Limited Under Chapter 11 of Title 11, United States Code dated as of March 19, 2014, including all Exhibits attached thereto, as submitted and filed by the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Bankruptcy Cases and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

**"Disclosure Statement Approval Order"** means the Order Approving Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing dated April _____, 2014 and entered in the Bankruptcy Cases (Doc. No. ____).

**"Disputed Claim"** means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection. "Disputed", when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

**"Distribution"** means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

**"Distribution Date"** means, when used with respect to an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals), an Allowed Claim in Class 1, or an Allowed Secured Tax Claim in Class 3, the date which is as soon as reasonably practicable (as determined by Reorganized SIDG) after the Determination Date, but in no event more than ten (10) days after the Determination Date. "Distribution Date," when used with respect to an Allowed Priority Tax Claim or Allowed Claims in Classes 4 through 11, means the date or dates for any Distribution to Holders of Allowed Priority Tax Claims or Allowed Claims in Classes 4 through 11 as provided in the Plan or any Plan Document, unless such date or dates have been otherwise established by a Final Order of the Bankruptcy Court.

**"Doc. No."** means the number of a pleading as entered in the Docket.

**"Docket"** means the docket in the Bankruptcy Cases maintained by the Clerk.

**"Effective Date"** means, and shall occur on, the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 10.2 of the Plan have been satisfied or waived as provided therein.

**"Effective Date Notice"** has the meaning ascribed to such term in Article 10.3 of the Plan.

9

"**Entity**" has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

"**Environmental Claim**" means any Claim or demand now existing or hereafter arising (including all thereof in the nature of or sounding in tort, contract, warranty or under any other theory of law or equity) against the Debtors, their predecessors, successors or assigns, or Affiliates, or their present or former officers, directors or employees, arising out of, or related to, any Environmental Laws, including any Claim or demand: (a) to restrict or enjoin, or recover damages, costs or expenses to remedy, any release, environmental pollution, contamination or nuisance or to require the Debtors to remedy or to reimburse, pay or incur costs to remedy any release, environmental pollution, contamination or nuisance, (b) to remedy, reimburse, compensate or pay any damage, penalty, fine or forfeiture for, or to restrict or enjoin, any violation of or alleged violation of any Environmental Laws, (c) to pay any contractual claim with respect to any Environmental Laws, or (d) to pay or reimburse any Person or Entity for personal injury (including worker's compensation, sickness, disease or death), tangible or intangible property damage or natural resource damage arising out of, or relating to, any release, environmental pollution, contamination or nuisance, whether or not contemplated in subparagraphs (a) through (c) above, or whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury or damage giving rise to such Claim or demand was diagnosable, undiagnosable, detectable or undetectable before the Confirmation of the Plan or before the Final Decree Date. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Environmental Claim" shall be broadly construed and shall include (a) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and (b) demands that may or may not presently constitute "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.

"**Environmental Laws**" means all federal, state, local and foreign laws, statutes, ordinances, codes, rules, standards and regulations, now or hereafter in effect, and any judicial or administrative interpretation thereof, including any judicial or administrative order, consent decree, or judgment, imposing liability or standards of conduct for or relating to the regulation and protection of human health, safety, the environment and natural resources (including ambient air, surface water, groundwater, wetlands, land surface or subsurface strata, wildlife, aquatic species and vegetation). As used in the Plan, the term "Environmental Laws" shall  include (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, et seq., (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, et seq., (c) the Clean Air Act, 42 U.S.C. §§ 7401, et seq., (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, et seq., (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, et seq., (f) the Oil Pollution Act of 1990 (OPA 90), (g) the Hazardous Materials Transportation Authorization Act of 1994, 49 U.S.C. §§ 5101, et seq., (h) the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136, et seq., (i) the Solid Waste Disposal Act, 42 U.S.C. §§ 6901, et seq., (j) the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq., (k) the Occupational Safety and Health Act, 29 U.S.C. §§ 651, et seq., (l) the Safe Drinking Water Act, 42 U.S.C. §§ 300(f), et seq., (m) all other statutes or laws issued or promulgated by any

Governmental Unit, as they may be amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control and/or the handling, transportation, discharge, existence, release, disposal or recovery of on-site or off-site hazardous, toxic or dangerous wastes, substances, chemicals or materials (including petroleum), including any transfer of ownership notification or approval statutes, and (n) the ordinances, rules, regulations, orders, notices of violation, requests, demands and requirements issued or promulgated by any Governmental Unit in connection with such statutes or laws.

"**Equity Interests**" means, collectively, the SICL Equity Interests and the SIDG Equity Interests.

"**Estates**" means, collectively, the estates created for the Debtors by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Cases.

"**Estimation Hearing**" means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

"**Exculpated Parties**" has the meaning ascribed to such term in Article 11.2 of the Plan.

"**Exhibit**" means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

"**Final Decree**" means the final decree for the Bankruptcy Cases entered by the Bankruptcy Court after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Decree Date**" means the date on which the Final Decree, obtained after a hearing on notice to the Notice Parties and to such other Persons and Entities as the Bankruptcy Court may direct, is entered on the Docket.

"**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Cases for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of any such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"**FirstBank**" means FirstBank Puerto Rico, a commercial banking institution incorporated under the laws of the Commonwealth of Puerto Rico, and its successors or assigns.

**"FirstBank Additional Interest Reserve Account"** has the meaning ascribed to such term in Article 5.3.2.4 of the Plan.

**"FirstBank Adversary Proceeding"** means the adversary proceeding filed in the Bankruptcy Cases styled as *Scrub Island Development Group Limited and Scrub Island Construction Limited, Plaintiffs, v. FirstBank Puerto Rico, Defendant,* Adv. Pro. No. 8:13-ap-01071-MGW.

**"FirstBank Allowed Class 2 Secured Claim"** has the meaning ascribed to such term in Article 5.3.2.1 of the Plan.

**"FirstBank Construction Escrow Agreement"** has the meaning ascribed to such term in Article 5.3.2.6 of the Plan.

**"FirstBank Deficiency Claim"** has the meaning ascribed to such term in Article 5.3.2.10 of the Plan.

**"FirstBank Down Payment"** has the meaning ascribed to such term in Article 5.3.2.2 of the Plan.

**"FirstBank Guaranty"** means any and all guarantees executed from time to time by the Guarantor in favor of FirstBank with respect to the FirstBank Prepetition Claims.

**"FirstBank Initial Interest Reserve Account"** has the meaning ascribed to such term in Article 5.3.2.4 of the Plan.

**"FirstBank New Loan Documents"** means all of the documents evidencing the FirstBank Reduced Class 2 Secured Claim, including the FirstBank New Term Note, the FirstBank New Security Documents, and all other documents executed in connection therewith, as any such documents may be amended, modified or supplemented thereafter in accordance with their terms.

**"FirstBank New Security Documents"** has the meaning ascribed to such term in Article 5.3.2.5 of the Plan.

**"FirstBank New Term Note"** has the meaning ascribed to such term in Article 5.3.2.3 of the Plan.

**"FirstBank Prepetition Claims"** means any and all Secured Claims and other Claims of FirstBank represented by, relating to, or arising under or in connection with the FirstBank Prepetition Loan Documents.

**"FirstBank Prepetition Loan Documents"** means all of the Prepetition documents evidencing the FirstBank Prepetition Claims and any and all other documents executed by the Debtors, the Guarantor or FirstBank in any way relating to the FirstBank Prepetition Claims, as any

such documents have been amended, modified or supplemented thereafter in accordance with their terms.

"**FirstBank Proofs of Claim**" means, collectively, (a) claim number 10 filed by FirstBank in Case No. 8:13-bk-15285-MGW (Scrub Island Development Group Limited) and (b) claim number 3 filed by FirstBank in Case No. 8:13-bk-15286-MGW (Scrub Island Construction Limited).

"**FirstBank Reduced Class 2 Secured Claim**" has the meaning ascribed to such term in Article 5.3.2.2 of the Plan.

"**Frederick Prepetition Claims**" means any and all Claims of Thomas Frederick represented by, relating to, or arising under or in connection with the Frederick Prepetition Contracts and Site LV2.

"**Frederick Prepetition Contracts**" means, collectively, (i) that certain Site Purchase and Sale Agreement, effective as of March 20, 2007, between Thomas Frederick and SIDG, and (ii) that certain Construction Contract – Long View Residences, effective as of February 2, 2007, between Thomas Frederick and SICL, in each case with respect to Site LV2.

"**Governmental Unit**" has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

"**Governmental Unit Bar Date**" means one hundred eighty (180) days from the Petition Date (i.e., May 19, 2014), the last day for a Governmental Unit to file a Proof of Claim against the Debtors in the Bankruptcy Cases.

"**Guarantor**" means Joe C. Collier III.

"**Holder**" means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors or Reorganized SIDG, as the case may be, have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register that is maintained by the Debtors or their agent in the British Virgin Islands or as otherwise determined by order of the Bankruptcy Court.

"**Impaired**" refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Initial Distribution**" has the meaning ascribed to such term in Article 9.1 of the Plan.

13

"**Intercompany Claim**" means any Claim which one Debtor holds against another Debtor.

"**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtors or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor, successor or assign thereof, any Property of the Debtors, the businesses or operations of the Debtors, the Bankruptcy Cases, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term "Liabilities" shall not include any obligations of the Reorganized Debtors expressly set forth in the Plan.

"**LIBOR Rate**" means the London Interbank Offered Rate as published in The Wall Street Journal.

"**Lien**" means, with respect to any Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

"**Linares/Foster Prepetition Claims**" means any and all Claims of Luis A. Linares and David Foster represented by, relating to, or arising under or in connection with the Linares/Foster Prepetition Contracts and Site LV5.

"**Linares/Foster Prepetition Contracts**" means, collectively, (i) that certain Site Purchase and Sale Agreement, effective as of February 2, 2007, between Luis A. Linares and David Foster and SIDG, and (ii) that certain Construction Contract – Long View Residences, effective as of February 2, 2007, between Luis A. Linares and David Foster and SICL, in each case with respect to Site LV5.

"**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

"**Local Rules Service Lists**" means the "Local Rule 1007(d) Parties in Interest List" for the Bankruptcy Cases, as that term is defined in Local Rule 1007-2(b).

"**Longview Villa Owner**" means any one of the following: (a) Blue Water Traders Ltd., (b) Pablo L. Dardet, (c) Luis A. Linares and David Foster, (d) Thomas Frederick, or (e) Oscar Rivera.

"**Longview Villa Owner Settlement Agreement**" means a settlement agreement executed by the Debtors and any Longview Villa Owner prior to the Confirmation Hearing.

"**Mainsail Claims**" means any and all Claims of the Mainsail Related Entities against the Debtors. A list of the Mainsail Claims is set forth on Exhibit B attached to the Plan.

"**Mainsail Related Entities**" means, collectively, Mainsail B.V.I. Limited, Mainsail BVI Property Management, LLC, Mainsail Central, LLC, Mainsail Development International, Mainsail Management Group, Mainsail Suites Hotel, and Marriott Execustay.

"**Net Real Estate Sale Proceeds**" means the gross proceeds received by Reorganized SIDG from the sale of any Scrub Island Real Estate less any customary and applicable transfer taxes and closing costs (with such closing costs not to exceed ten percent (10%) of the gross sales price).

"**Notice of Commencement**" means the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines (Doc. No. 8).

"**Notice Parties**" means (a) the Reorganized Debtors, (b) Bankruptcy Counsel, (c) counsel to FirstBank, (d) counsel to the Creditors Committee (to the extent the Creditors Committee is then in existence), (e) the United States Trustee, (f) the Plan Investor, (g) the SIDG Shareholders, and (h) all parties then set forth on the Local Rules Service Lists.

"**Permitted Liens**" has the meaning ascribed to such term in the FirstBank New Loan Documents, and shall include any Lien provided to a Longview Villa Owner under a Longview Villa Owner Settlement Agreement.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means November 19, 2013, the date on which the Debtors commenced the Bankruptcy Cases by filing their voluntary petitions under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this Joint Plan of Reorganization of Scrub Island Development Group Limited and Scrub Island Construction Limited Under Chapter 11 of Title 11, United States Code dated as of March 19, 2014, and all Exhibits attached hereto, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**"Plan Documents"** means all documents that aid in effectuating the Plan, including the FirstBank New Loan Documents, the FirstBank Construction Escrow Agreement, and the Longview Villa Owner Settlement Agreements.

**"Plan Investment Amount"** means the amount of Cash to be invested in Reorganized SIDG on the Closing Date by the Plan Investor in exchange for a majority percentage ownership of the Reorganized SIDG Shares. The Plan Investment Amount will be no less than the amount of $9,075,000.00.

**"Plan Investor"** means the Person or Persons providing the Plan Investment Amount.

**"Plan Supplement"** means the pleading containing the Plan Documents (to the extent not already on file with the Bankruptcy Court or delivered to the applicable Creditor), which shall be filed with the Bankruptcy Court in accordance with Article 14.17 of the Plan.

**"Postpetition"** means arising or accruing on or after the Petition Date and before the Effective Date.

**"Prepetition"** means arising or accruing prior to the Petition Date.

**"Priority Claim"** means a Claim that is entitled to a priority in payment pursuant to Sections 507(a)(4) and (5) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**"Priority Tax Claim"** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**"Professional"** means any professional employed in the Bankruptcy Cases pursuant to an order of the Bankruptcy Court, pursuant to Section 327 or Section 1103 of the Bankruptcy Code.

**"Projections"** means the cash flow forecast for Reorganized SIDG for the period from July 2014 through July 2019, a copy of which is attached as Exhibit 1 to the Disclosure Statement.

**"Proof of Claim"** means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtors pursuant to Bankruptcy Rule 3001, 3002 or 3003.

**"Property"** means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

**"Rejected Contracts"** has the meaning ascribed to such term in Article 7.1 of the Plan. A list of specific Rejected Contracts is set forth in Exhibit C attached to the Plan.

**"Released Parties"** has the meaning ascribed to such term in Article 11.3 of the Plan.

**"Reorganized Debtors"** means, collectively, Reorganized SIDG and Reorganized SICL.

**"Reorganized SICL"** means SICL on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

**"Reorganized SIDG"** means SIDG on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

**"Reorganized SIDG Shares"** means the shares of Reorganized SIDG to be issued and distributed on the Closing Date to the Plan Investor and the SIDG Contributing Shareholders pursuant to the provisions of the Plan.

**"Rivera Prepetition Claims"** means any and all Claims of Oscar Rivera and Anabel Rivera represented by, relating to, or arising under or in connection with the Rivera Prepetition Contracts and Site LVII-4.

**"Rivera Prepetition Contracts"** means, collectively, (i) that certain Site Purchase and Sale Agreement, effective as of July 5, 2006, between Oscar Rivera and SIDG, and (ii) that certain Construction Contract – Long View Residences II between Oscar Rivera and SICL, in each case with respect to Site LVII-4.

**"ROFO"** has the meaning ascribed to such term in Article 5.3.2.13 of the Plan.

**"ROFO Exercise Period"** has the meaning ascribed to such term in Article 5.3.2.13 of the Plan.

**"ROFO Interest Notice"** has the meaning ascribed to such term in Article 5.3.2.13 of the Plan.

**"ROFO Material Sale Terms"** has the meaning ascribed to such term in Article 5.3.2.13 of the Plan.

**"ROFO Negotiation Period"** has the meaning ascribed to such term in Article 5.3.2.13 of the Plan.

**"ROFO Notice"** has the meaning ascribed to such term in Article 5.3.2.13 of the Plan.

17

**"ROFO Period"** has the meaning ascribed to such term in Article 5.3.2.13 of the Plan.

**"Schedules"** means, collectively, Schedules D, E, F, G, and H filed by the Debtors in the Bankruptcy Cases pursuant to Bankruptcy Rule 1007, as any of such Schedules has been or may hereafter be amended or supplemented from time to time.

**"Scrub Island"** means a 230-acre island located in the British Virgin Islands consisting of Little Scrub Island and Big Scrub Island.

**"Scrub Island Construction Escrow"** has the meaning ascribed to such term in Article 5.3.2.6 of the Plan.

**"Scrub Island Real Estate"** means, collectively, all unsold real estate parcels located on Scrub Island.

**"Scrub Island Resort"** means the Scrub Island Resort, Spa & Marina.

**"Secured Claim"** means any Claim of a Creditor that is (a) secured in whole or in part, as of the Petition Date, by a Lien (i) on Collateral and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the Estates' interest in such Collateral or the amount subject to setoff, as the case may be.  Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estates' interest in such Collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

**"Secured Creditor"** means any Creditor holding a Secured Claim.

**"Secured Tax Claim"** means a Secured Claim of a Governmental Unit for Prepetition taxes.

**"Security"** has the meaning ascribed to such term in Section 101(49) of the Bankruptcy Code.

**"SICL"** means Scrub Island Construction Limited, a company incorporated under the laws of the British Virgin Islands.

**"SICL Equity Interests"** means the 440 shares of stock of SICL issued and outstanding on the Petition Date and held by the SICL Shareholders.

**"SICL Shareholders"** means CIH Loft LLC and Pamela McManus.

18

"**SIDG**" means Scrub Island Development Group Limited, a company incorporated under the laws of the British Virgin Islands.

"**SIDG Contributing Shareholders**" means those SIDG Shareholders who contribute any portion of the SIDG Shareholders Plan Contribution Amount.

"**SIDG Equity Interests**" means the 250 shares of stock of SIDG issued and outstanding on the Petition Date and held by the SIDG Shareholders.

"**SIDG Shareholder Claims**" means any and all Claims of the SIDG Shareholders and Collier Investment Holdings against the Debtors. A list of the SIDG Shareholder Claims is set forth on Exhibit D attached to the Plan.

"**SIDG Shareholders**" means, collectively, CIH Loft LLC, Gary Eng, James B. Rabold, Pamela McManus and VK Investments Limited.

"**SIDG Shareholders Plan Contribution Amount**" means the cash sum of $6,000,000.00, which will be contributed to Reorganized SIDG on the Closing Date by the SIDG Contributing Shareholders in exchange for a minority percentage ownership of the Reorganized SIDG Shares.

"**Site LV2**" means Site LV2 in the Long View Residence Neighborhood on Scrub Island, British Virgin Islands, including the real estate lot for Site LV2 and the partially constructed villa residence thereon.

"**Site LV4**" means Site LV4 in the Long View Residence Neighborhood on Scrub Island, British Virgin Islands, including the real estate lot for Site LV4 and the partially constructed villa residence thereon.

"**Site LV5**" means Site LV5 in the Long View Residence Neighborhood on Scrub Island, British Virgin Islands, including the real estate lot for Site LV5 and the partially constructed villa residence thereon.

"**Site LV9**" means Site LV9 in the Long View Residence Neighborhood on Scrub Island, British Virgin Islands, including the real estate lot for Site LV9 and the partially constructed villa residence thereon.

"**Site LVII-4**" means Site LVII-4 in the Long View Residence II Neighborhood on Scrub Island, British Virgin Islands, including the real estate lot for Site LVII-4 and the partially constructed villa residence thereon.

"**SIU Entities**" means, collectively, Scrub Island Utility (BVI) Ltd., a limited company formed in the British Virgin Islands, and TSG Water Resources, Inc.

"**SIU Entities New Maintenance Agreement**" has the meaning ascribed to such term in Article 5.6.2.2 of the Plan.

"**SIU Entities Prepetition Claims**" means any and all Claims of the SIU Entities represented by, relating to, or arising under or in connection with the SIU Entities Prepetition Contracts and the SIU Systems Purchase Agreement, including any and all Claims against Joe C. Collier III under any of the foregoing.

"**SIU Entities Prepetition Contracts**" means, collectively, (a) that certain Water Supply and Wastewater Treatment Agreement, dated December 20, 2006, by and between SIDG and TSG Water Resources, Inc., and (b) that certain First Amendment to Water Supply and Wastewater Treatment Agreement, dated July 11, 2007, by and between SIDG, TSG Water Resources, Inc., and Scrub Island Utility (BVI) Ltd.

"**SIU Entities Proof of Claim**" means claim number 8 filed by Scrub Island Utility (BVI) Ltd. in Case No. 8:13-bk-15285-MGW (Scrub Island Development Group Limited).

"**SIU Systems**" means the reverse osmosis seawater system and the wastewater treatment system as more particularly described in Exhibit A attached to the SIU Systems Purchase Agreement.

"**SIU Systems Purchase Agreement**" means that certain Agreement of Purchase and Sale, dated as of December 24, 2012, by and between Scrub Island Utility (BVI) Ltd., FirstBank and SIDG.

"**SIU Systems Purchase Price**" means the cash sum of $1,000,000.00.

"**Superpriority Claim**" means any Claim Allowed by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Section 364(c)(1) of the Bankruptcy Code.

"**Unimpaired**" refers to a Claim that is not Impaired.

"**Unit OV11**" means Ocean Villa 11 located on Scrub Island.

"**United States**" means the United States of America.

"**United States Trustee**" means the Office of the United States Trustee for the Middle District of Florida.

"**Unsecured Claim**" means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Tax Claim, Secured Claim, or Cure Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a

Claim to the extent the value of the Creditor's interest in the Estates' interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtors prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan, including the FirstBank Deficiency Claim.

"**Unsecured Creditor**" means any Creditor holding an Unsecured Claim.

"**Voting Deadline**" means the last day to file, with the Bankruptcy Court, a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

"**Voting Instructions**" means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

2.1.2    Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

2.2    **Rules of Construction.**

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan.  The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 3.

3.1    **Administrative Expense Claims.**

3.1.1    Except as otherwise provided in Article 3.1.2 and Article 3.1.3 below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) on the Distribution Date, an amount, in Cash, by Reorganized SIDG equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be mutually agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtors or Reorganized SIDG, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.1.2    All unpaid fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter (or portion thereof) ending prior to the Effective Date shall be paid to the United States Trustee by Reorganized SIDG by no later than thirty (30) days following the Effective Date. Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Cases shall be paid by Reorganized SIDG, until the earlier of (i) the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code. Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

3.1.3    All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Bankruptcy Cases shall be paid by Reorganized SIDG (a) in the ordinary course of business in accordance with contract terms, or (b) under such other terms as may be mutually agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtors or Reorganized SIDG, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.2    **Priority Tax Claims.**

Each Holder of an Allowed Priority Tax Claim shall receive from Reorganized SIDG, on account of such Allowed Priority Tax Claim, regular installment payments in Cash on the Distribution Date in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at

the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid (i) under such other terms as may be mutually agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtors or Reorganized SIDG, as the case may be, or (b) as otherwise ordered by a Final Order of the Bankruptcy Court.

## ARTICLE 4
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include Claims against each of the Debtors that qualify within the description of that Class. For purposes of the Plan, the Claims and Equity Interests are classified as follows:

4.1     **Class 1:  Priority Claims.**

Class 1 consists of all Priority Claims.

4.2     **Class 2:  Secured Claims and Other Claims of FirstBank.**

Class 2 consists of all of the FirstBank Prepetition Claims.

4.3     **Class 3:  Secured Tax Claims of Governmental Units.**

Class 3 consists of all Secured Tax Claims of Governmental Units.

4.4     **Class 4:  Other Secured Claims.**

Class 4 consists of all Secured Claims not otherwise specifically classified in the Plan. In the event there is more than one Secured Claim in this Class, such Secured Claims shall be separated into subclasses in Class 4.

4.5     **Class 5:  Unsecured Claims of the SIU Entities.**

Class 5 consists of all of the SIU Entities Prepetition Claims.

4.6     **Class 6:  Unsecured Claims of Blue Water Traders Ltd.**

Class 6 consists of all of the Blue Water Traders Prepetition Claims.

23

4.7     **Class 7:  Unsecured Claims of Pablo L. Dardet.**

Class 7 consists of all of the Dardet Prepetition Claims.

4.8     **Class 8:  Unsecured Claims of Thomas Frederick.**

Class 8 consists of all of the Frederick Prepetition Claims.

4.9     **Class 9:  Unsecured Claims of Linares/Foster.**

Class 9 consists of all of the Linares/Foster Prepetition Claims.

4.10    **Class 10:  Unsecured Claims of Oscar Rivera.**

Class 10 consists of all of the Rivera Prepetition Claims.

4.11    **Class 11:  Unsecured Claims (Unsecured Claims Not Otherwise Classified).**

Class 11 consists of all Unsecured Claims not otherwise classified in the Plan.

4.12    **Class 12:  Intercompany Claims.**

Class 12 consists of all Intercompany Claims.

4.13    **Class 13:  SIDG Equity Interests.**

Class 13 consists of all of the SIDG Equity Interests.

4.14    **Class 14:  SICL Equity Interests.**

Class 14 consists of all of the SICL Equity Interests.

## ARTICLE 5
### TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Equity Interests.

5.1     **Unclassified Claims.**

Holders of Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall receive the treatment set forth in Article 3 of the Plan.

5.2     **Class 1:  Priority Claims.**

Class 1 consists of all Priority Claims.  Each Holder of an Allowed Priority Claim shall be paid (a) on the Distribution Date, an amount, in Cash, by Reorganized SIDG equal to the Allowed Amount of its Priority Claim in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, or (b) as otherwise ordered by a Final Order of the Bankruptcy Court.  Class 1 is Unimpaired by the Plan. Each Holder of a Priority Claim in Class 1 conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.3     **Class 2:  Secured Claims and Other Claims of FirstBank.**

5.3.1    Class 2 consists of all of the FirstBank Prepetition Claims.

5.3.2    In the FirstBank Proofs of Claim, FirstBank has asserted that, as of the Petition Date, (a) SIDG was indebted to FirstBank in an aggregate amount, including principal, interest, fees, charges and attorneys fees, of $119,275,858.73 with respect to the FirstBank Prepetition Claims, consisting of a Secured Claim in the amount of $60,640,000.00 and an Unsecured Claim in the amount of $58,635,858.73, (b) SICL was indebted to FirstBank in an aggregate amount, including principal, interest, fees, charges and attorneys fees, of $3,199,861.18 with respect to the FirstBank Prepetition Claims, all of which is a Secured Claim, and (c) the FirstBank Prepetition Claims were secured by properly perfected Liens on certain real property and personal property of the Debtors located in the British Virgin Islands.  Under the Plan, on and subject to the occurrence of the Effective Date, FirstBank has agreed that it shall receive the following treatment in full and final satisfaction, settlement, release, extinguishment and discharge of the FirstBank Prepetition Claims:

5.3.2.1     FirstBank shall have an Allowed Secured Claim against Reorganized SIDG in the amount of $37,500,000.00 (the "FirstBank Allowed Class 2 Secured Claim").

5.3.2.2     On the Closing Date, Reorganized SIDG shall make a cash payment to FirstBank, by wire transfer of immediately available funds, in the amount of $7,500,000.00 (the "FirstBank Down Payment") from the Plan Investment Amount, thereby reducing the FirstBank Allowed Class 2 Secured Claim to the amount of $30,000,000.00 (the "FirstBank Reduced Class 2 Secured Claim").

5.3.2.3     The FirstBank Reduced Class 2 Secured Claim shall be evidenced by a term note (the "FirstBank New Term Note") in the original principal amount of $30,000,000.00, which shall be made payable to FirstBank and be executed and delivered by Reorganized SIDG on the Closing Date.  The FirstBank New Term Note shall contain the following terms: (a) a maturity date of five (5) years from the Closing Date, (b) interest shall (i) accrue and be payable on the outstanding principal at a rate of 350 basis points over the 1-

month LIBOR Rate (but shall never be less than 4.25%), (ii) be calculated based on a 365 day year, and (iii) be payable monthly in arrears, with the first payment being due one (1) month from the Closing Date, (c) for the first twenty-four (24) months following the Closing Date, Reorganized SIDG shall be required to make monthly payments of interest only and, for the next thirty-six (36) months, Reorganized SIDG shall be required to make monthly payments of principal and interest based on an amortization period of twenty-five (25) years, (d) Reorganized SIDG may prepay the FirstBank New Term Note, without penalty or premium, at any time, (e) the outstanding principal together with all accrued and unpaid interest shall be due and payable in full on the maturity date, (f) Reorganized SIDG shall be required to make mandatory prepayments under the FirstBank New Term Note in an amount equal to fifty percent (50%) of any Net Real Estate Sale Proceeds, and (g) from and after an event of defaut under the FirstBank New Term Note and for so long as such event of default is continuing, the FirstBank New Term Note shall bear interest at a rate of ten percent (10%) per annum.

     5.3.2.4    On the Closing Date, Reorganized SIDG shall make a cash payment to FirstBank, by wire transfer of immediately available funds, in the amount of $1,275,000.00 from the Plan Investment Amount, which funds shall be used as an interest reserve for the FirstBank New Term Note (the "FirstBank Initial Interest Reserve Account"). For the first twelve (12) months of the FirstBank New Term Note, FirstBank shall apply funds from the FirstBank Initial Interest Reserve Account to the monthly interest payments due from Reorganized SIDG under the FirstBank New Term Note. On the twelve (12) month anniversary of the FirstBank New Term Note, Reorganized SIDG shall make an additional cash payment to FirstBank, by wire transfer of immediately available funds, in an amount equal to the monthly interest payments due from Reorganized SIDG during the second twelve (12) months of the FirstBank New Term Note (the "FirstBank Additional Interest Reserve Account"), and FirstBank shall apply funds from the FirstBank Additional Interest Reserve Account to the monthly interest payments due from Reorganized SIDG during the second twelve (12) months of the FirstBank New Term Note. No interest reserve shall be required for the remaining thirty-six (36) months of the FirstBank New Term Note.

     5.3.2.5    The FirstBank New Term Note shall be secured by a first Lien on all of the Scrub Island Real Estate (subject to the Permitted Liens), all personal property of Reorganized SIDG located in the British Virgin Islands, and all income generated by the operation of the Scrub Island Resort. Reorganized SIDG shall execute any charges, security agreements and other security documents necessary to secure the obligations under the FirstBank New Term Note (collectively, the "FirstBank New Security Documents").

     5.3.2.6    On the Closing Date, the SIDG Contributing Shareholders shall contribute the SIDG Shareholders Plan Contribution Amount to Reorganized SIDG, and Reorganized SIDG shall deliver such amount into escrow with FirstBank, by wire transfer of immediately available funds (the "Scrub Island Construction Escrow"). The Scrub Island Construction Escrow shall be used for capital expenditure improvements on Scrub Island (including as necessary to consummate any settlements under the Longview Villa Owner Settlement Agreements), and the funds therein shall be advanced to Reorganized SIDG by FirstBank in

accordance with a proposed capital expenditures budget prepared by SIDG and approved by FirstBank prior to the Closing. The Scrub Island Construction Escrow shall be governed by the terms of an escrow agreement to be executed by FirstBank and Reorganized SIDG at the Closing (the "FirstBank Construction Escrow Agreement").

5.3.2.7    At the Closing, Reorganized SIDG shall pay FirstBank a closing fee of $300,000.00 from the Plan Investment Amount, by wire transfer of immediately available funds.

5.3.2.8    The price for the sale of any Scrub Island Real Estate must be approved in advance by FirstBank.

5.3.2.9    Except as to any obligations under the FirstBank New Loan Documents, the FirstBank Construction Escrow Agreement, or the Plan, the Debtors and FirstBank and their respective officers, directors, shareholders, employees, agents and attorneys shall be deemed to have released each other, as of the Closing Date, from any and all claims of any nature whatsoever that they have or may have against each other, known or unknown, contingent or otherwise, asserted or unasserted, at law or in equity, as well as any other kind or character of action held, owned or possessed, directly or indirectly. Specifically, the Guarantor shall be deemed to have been released by FirstBank, as of the Closing Date, from any and all claims and obligations under the FirstBank Guaranty.

5.3.2.10.    FirstBank shall have an Allowed Class 11 Unsecured Claim in the amount of $84,895,719.91 (the "FirstBank Deficiency Claim"). FirstBank shall vote a Ballot accepting the Plan with respect to the FirstBank Deficiency Claim; provided, however, that FirstBank shall not be entitled to any Distribution under the Plan with respect to the FirstBank Deficiency Claim and shall be deemed to have released and waived the FirstBank Deficiency Claim on the Closing Date.

5.3.2.11    All of the FirstBank New Loan Documents and the FirstBank Construction Escrow Agreement shall be governed by the laws of the British Virgin Islands.

5.3.2.12    At the Closing, FirstBank shall assign and transfer to Reorganized SIDG any and all documents evidencing loans made by FirstBank to (a) Blue Water Traders Ltd. (or its Affiliates) with respect to Site LV4, and (b) Luis A. Linares and David Foster (or their Affiliates) with respect to Site LV5. No additional consideration shall be paid to FirstBank by Reorganized SIDG in connection with such assignment and transfer.

5.3.2.13    FirstBank shall grant to Reorganized SIDG the right of first offer with respect to Unit OV11 (the "ROFO") in the event FirstBank desires or intends to sell Unit OV11 within the consecutive twenty-four (24) month period immediately following the Closing Date (the "ROFO Period"). In such event, FirstBank will provide written notice (the "ROFO Notice") to Reorganized SIDG of FirstBank's desire and intention to sell Unit OV11 and will provide a summary of the material terms upon which FirstBank desires to sell Unit OV11 (the "ROFO Material Sale Terms"). Reorganized SIDG will have thirty (30) days

from the date on which the ROFO Notice is delivered to Reorganized SIDG (the "ROFO Exercise Period") to provide written notice to FirstBank of Reorganized SIDG's interest in purchasing Unit OV11 on the terms and conditions described in the ROFO Notice (the "ROFO Interest Notice"). In the event FirstBank does not receive the ROFO Interest Notice prior to the expiration of the ROFO Exercise Period, Reorganized SIDG will be deemed to have waived Reorganized SIDG's right of first offer with respect to the sale of Unit OV11 by FirstBank as provided in this Article 5.3.2.13, even if the ROFO Period has not yet expired; provided, however, that if FirstBank desires to thereafter sell Unit OV11 during the ROFO Period for a purchase price less than that set forth in the last ROFO Material Sale Terms delivered to Reorganized SIDG or on other terms materially different from those sent in the last ROFO Material Sale Terms, then FirstBank shall provide Reorganized SIDG with another ROFO Notice setting forth the new material terms upon which FirstBank desires to sell Unit OV11 and Reorganized SIDG shall have a ROFO Exercise Period in which to provide a ROFO Interest Notice. If FirstBank receives a ROFO Interest Notice prior to the expiration of the ROFO Exercise Period, FirstBank agrees to negotiate with Reorganized SIDG in good faith the sale of Unit OV11 to Reorganized SIDG for a period of thirty (30) days following FirstBank's receipt of the ROFO Interest Notice (the "ROFO Negotiation Period"). Upon the expiration of the ROFO Negotiation Period, assuming no written agreement has been entered into by Reorganized SIDG and FirstBank with respect to the sale of Unit OV11 to Reorganized SIDG, FirstBank may proceed to sell Unit OV11 to any other Person, with no further obligation or duty to Reorganized SIDG with respect to the sale of Unit OV11, even if the ROFO Period has not yet expired; provided, however, that if FirstBank desires to thereafter sell Unit OV11 during the ROFO Period for a purchase price less than that set forth in the last ROFO Material Sale Terms delivered to Reorganized SIDG or on other terms materially different from those sent in the last ROFO Material Sale Terms, then FirstBank shall provide Reorganized SIDG with another ROFO Notice setting forth the new material terms upon which FirstBank desires to sell Unit OV11 and Reorganized SIDG shall have a ROFO Exercise Period in which to provide a ROFO Interest Notice. For the avoidance of doubt, nothing contained in the Plan shall be construed to obligate or require FirstBank to sell Unit OV11. The provisions of this Article 5.3.2.13 will survive Closing until the rights of Reorganized SIDG expire in accordance with the terms of this Article 5.3.2.13.

5.3.2.14    On the Closing Date, FirstBank shall withdraw the FirstBank Proofs of Claim with prejudice.

5.3.2.15    On or prior to the Closing Date, FirstBank shall dismiss the BVI Receivership Proceeding with prejudice, and shall cause the BVI Receiver to turn over to Reorganized SIDG any Property in the BVI Receiver's possession, custody, or control related to the Debtors or Scrub Island.

5.3.2.16    At or prior to the Closing, FirstBank shall exercise its option to purchase, and shall purchase, the SIU Systems from the SIU Entities for the SIU Systems Purchase Price pursuant to the terms of the SIU Systems Purchase Agreement. At the Closing, FirstBank shall sell, assign and transfer all of its rights, title and interests in and to the SIU Systems to Reorganized SIDG. No additional consideration shall be paid to FirstBank by Reorganized SIDG in connection with such sale, assignment and transfer.

5.3.2.17    Effective as of and subject to the occurrence of the Closing Date, any and all of the FirstBank Prepetition Loan Documents shall be deemed cancelled and void and of no further force and effect.

5.3.2.18    On or prior to the Closing Date, the Debtors shall dismiss the FirstBank Adversary Proceeding with prejudice.

5.3.2.19    The Closing Date shall occur by no later than five (5) Business Days following the Effective Date and, in any event, by no later than June 30, 2014.

5.3.3    To the extent of any inconsistencies between this Article 5.3 and the FirstBank New Loan Documents or the FirstBank Construction Escrow Agreement, the FirstBank New Loan Documents or the FirstBank Construction Escrow Agreement, as the case may be, shall control.

Class 2 is Impaired by the Plan. FirstBank, as the Holder of the Class 2 Claims, is entitled to vote to accept or reject the Plan.

5.4    **Class 3:  Secured Tax Claims of Governmental Units.**

Class 3 consists of all Secured Tax Claims of Governmental Units. On the Distribution Date, Reorganized SIDG shall pay to a Governmental Unit, in Cash, the Allowed Amount of its Secured Tax Claim. Class 3 is Unimpaired by the Plan. Each Holder of a Secured Tax Claim in Class 3 conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.5    **Class 4:  Other Secured Claims.**

5.5.1    Class 4 consists of all Secured Claims not otherwise specifically classified in the Plan. In the event there is more than one Secured Claim in this Class, such Secured Claims shall be separated into subclasses in Class 4. Under the Plan, the following shall occur with respect to the Allowed Class 4 Claims:

5.5.1.1    On the Effective Date, in accordance with Section 1124 of the Bankruptcy Code, Reorganized SIDG shall (a) cure any defaults (other than defaults relating to the insolvency or the financial condition of the Debtor or its status as Debtor in Possession in the Bankruptcy Cases) of the Debtor under the loan and/or security documents evidencing an Allowed Class 4 Claim that occurred before or after the commencement of the Bankruptcy Cases, and (b) reinstate the maturity of such Allowed Class 4 Claim as such maturity existed

under the loan and/or security documents evidencing such Allowed Class 4 Claim, thus leaving unaltered the legal, equitable, and contractual rights to which the Holder of such Allowed Class 4 Claim is entitled to with respect to such Allowed Class 4 Claim.

5.5.1.2    Following the Effective Date, Reorganized SIDG shall continue to perform its obligations under the loan and/or security documents evidencing an Allowed Class 4 Claim, including making any payments required under such loan and/or security documents.

5.5.1.3    Following the Effective Date, Reorganized SIDG's obligations under the loan and/or security documents evidencing an Allowed Class 4 Claim shall continue to be secured by any security interest in the Debtor's Property granted Prepetition to the Holder of such Allowed Class 4 Claim.

5.5.1.4    Any deficiency owing to a Secured Creditor with respect to a Class 4 Claim shall be classified and treated as a Class 11 Unsecured Claim to the extent Allowed by a Final Order of the Bankruptcy Court.

Class 4 is Unimpaired by the Plan.  Each Holder of a Secured Claim in Class 4 conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.6    **Class 5:  Unsecured Claims of the SIU Entities.**

5.6.1    Class 5 consists of all of the SIU Entities Prepetition Claims.

5.6.2    In the SIU Entities Proof of Claim, the SIU Entities have asserted that, as of the Petition Date, SIDG was indebted to the SIU Entities in an aggregate amount of $1,553,068.93 with respect to the SIU Entities Prepetition Claims, all of which were asserted as an Unsecured Claim. Under the Plan, on and subject to the occurrence of the Effective Date, the SIU Entities shall receive the following treatment in full and final satisfaction, settlement, release, extinguishment and discharge of the SIU Entities Prepetition Claims:

5.6.2.1    On the Closing Date, the SIU Entities shall receive the SIU Systems Purchase Price from FirstBank, by wire transfer of immediately available funds.

5.6.2.2    On the Closing Date, the SIU Entities and Reorganized SIDG shall enter into a new agreement pursuant to which the SIU Entities shall continue to operate, maintain and repair the SIU Systems until the expiration of the existing maintenance term set forth in the SIU Entities Prepetition Contracts for a monthly fee to be negotiated by the parties (the "SIU Entities New Maintenance Agreement"). The SIU Entities New Maintenance Agreement shall be governed by the laws of the British Virgin Islands.

5.6.2.3    Except as to any obligations under the SIU Entities New Maintenance Agreement or the Plan, the Debtors and the SIU Entities and their respective officers, directors, shareholders, employees, agents and attorneys shall be deemed to have released each other, as of the Closing Date, from any and all claims of any nature whatsoever that they

have or may have against each other, known or unknown, contingent or otherwise, asserted or unasserted, at law or in equity, as well as any other kind or character of action held, owned or possessed, directly or indirectly.  Specifically, Joe C. Collier III shall be deemed to have been released by the SIU Entities, as of the Closing Date, from any and all claims and obligations under the SIU Entities Prepetition Contracts and the SIU Systems Purchase Agreement, including any guaranties for any obligations thereunder.

    5.6.2.4.    The SIU Entities shall have no Allowed Claims (including any rejection damage Claims) against the Debtors in the Bankruptcy Cases.

    5.6.2.5    On the Closing Date, the SIU Entities shall withdraw the SIU Entities Proof of Claim with prejudice.

    5.6.2.6    At the Closing, the SIU Entities shall execute any and all documents as requested by Reorganized SIDG to assure that all rights, title and interests in and to the SIU Systems have been sold, assigned and transferred to Reorganized SIDG as provided in the Plan.

    5.6.2.7    Effective as of and subject to the occurrence of the Closing Date, the SIU Entities Prepetition Contracts and the SIU Systems Purchase Agreement shall be deemed cancelled and void and of no further force and effect.

Class 5 is Unimpaired by the Plan.  The SIU Entities, as the Holders of the Class 5 Claims, conclusively are presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

## 5.7    Class 6:  Unsecured Claims of Blue Water Traders Ltd.

Class 6 consists of all of the Blue Water Traders Prepetition Claims.  Under the Plan, the Blue Water Traders Prepetition Claims shall receive the treatment set forth in the Longview Villa Owner Settlement Agreement executed by Blue Water Traders Ltd. and the Debtors.  Class 6 is Impaired by the Plan.  Blue Water Traders Ltd., as the Holder of the Class 6 Claims, is entitled to vote to accept or reject the Plan.

## 5.8    Class 7:  Unsecured Claims of Pablo L. Dardet.

Class 7 consists of all of the Dardet Prepetition Claims.   Under the Plan, the Dardet Prepetition Claims shall receive the treatment set forth in the Longview Villa Owner Settlement Agreement executed by Pablo L. Dardet and the Debtors.  Class 7 is Impaired by the Plan.  Pablo L. Dardet, as the Holder of the Class 7 Claims, is entitled to vote to accept or reject the Plan.

## 5.9    Class 8:  Unsecured Claims of Thomas Frederick.

Class 8 consists of all of the Frederick Prepetition Claims.  Under the Plan, the Frederick Prepetition Claims shall receive the treatment set forth in the Longview Villa Owner Settlement

Agreement executed by Thomas Frederick and the Debtors. Class 8 is Impaired by the Plan. Thomas Frederick, as the Holder of the Class 8 Claims, is entitled to vote to accept or reject the Plan.

5.10    **Class 9:  Unsecured Claims of Linares/Foster.**

Class 9 consists of all of the Linares/Foster Prepetition Claims. Under the Plan, the Linares/Foster Prepetition Claims shall receive the treatment set forth in the Longview Villa Owner Settlement Agreement executed by Linares/Foster and the Debtors. Class 9 is Impaired by the Plan. Linares/Foster, as the Holders of the Class 9 Claims, are entitled to vote to accept or reject the Plan.

5.11    **Class 10:  Unsecured Claims of Oscar Rivera.**

Class 10 consists of all of the Rivera Prepetition Claims. Under the Plan, the Rivera Prepetition Claims shall receive the treatment set forth in the Longview Villa Owner Settlement Agreement executed by Oscar Rivera and Anabel Rivera and the Debtors. Class 10 is Impaired by the Plan. Oscar Rivera, as the Holder of the Class 10 Claims, is entitled to vote to accept or reject the Plan.

5.12    **Class 11:  Unsecured Claims (Unsecured Claims Not Otherwise Classified).**

5.12.1   Class 11 consists of all Unsecured Claims not otherwise classified in the Plan.

5.12.2   Under the Plan, each Holder of an Allowed Unsecured Claim in Class 11 will receive Distributions, in Cash, over a five (5) year period from Reorganized SIDG in an amount equal to one hundred percent (100%) of such Holder's Allowed Class 11 Unsecured Claim. The payment to each Holder of an Allowed Class 11 Unsecured Claim shall be made on each anniversary of the Effective Date, with each such annual payment to be in an amount equal to twenty percent (20%) of such Holder's Allowed Class 11 Unsecured Claim.

Class 11 is Impaired by the Plan. Each Holder of an Unsecured Claim in Class 11 is entitled to vote to accept or reject the Plan.

5.13    **Class 12:  Intercompany Claims.**

Class 12 consists of all Intercompany Claims. On the Effective Date, all of the Intercompany Claims shall be deemed cancelled, annulled and extinguished without any further action by any party and shall be of no further force and effect. The Holders of the Class 12 Intercompany Claims will not receive or retain any Property under the Plan on account of such Intercompany Claims. Accordingly, the Reorganized Debtors will not make any Distribution or establish any reserve under the Plan for the Intercompany Claims. Class 12 is Impaired by the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 12 is deemed not to have accepted the Plan and, thus, Holders of the Class 12 Intercompany Claims are not entitled to vote to accept or reject the Plan.

5.14    **Class 13:  SIDG Equity Interests.**

Class 13 consists of all of the SIDG Equity Interests. On the Effective Date, all of the Class 13 Equity Interests shall be retained by the SIDG Shareholders. Class 13 is Unimpaired by the Plan. Each SIDG Shareholder conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.15    **Class 14:  SICL Equity Interests.**

Class 14 consists of all of the SICL Equity Interests. On the Effective Date, all of the Class 14 Equity Interests shall be retained by the SICL Shareholders. Class 14 is Unimpaired by the Plan. Each SICL Shareholder conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.


### ARTICLE 6
### ACCEPTANCE OR REJECTION OF THE PLAN

6.1    **Each Impaired Class Entitled to Vote Separately.**

Except as otherwise provided in <u>Article 6.4</u>, the Holders of Claims or Equity Interests in each Impaired Class of Claims or Impaired Class of Equity Interests shall be entitled to vote separately to accept or reject the Plan.

6.2    **Acceptance by Impaired Classes.**

Classes 2, 6, 7, 8, 9, 10 and 11 are Impaired under the Plan, and Holders of Claims in such Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan.

6.3    **Presumed Acceptance of Plan by Unimpaired Classes.**

Classes 1, 3, 4, 5, 13 and 14 are Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, such Classes and the Holders of Claims or Equity Interests in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Claims in Classes 1, 3, 4 and 5 and Equity Interests in Classes 13 and 14 are not being solicited by the Debtors. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtors or the Reorganized Debtors in respect of any Unimpaired Claims, including

all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

### 6.4    **Deemed Non-Acceptance of Plan.**

Holders of Class 12 Intercompany Claims will not receive or retain any Property under the Plan on account of such Class 12 Intercompany Claims and, therefore, Class 12 is deemed not to have accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Accordingly, votes of Holders of Class 12 Intercompany Claims are not being solicited by the Debtors.

### 6.5    **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1    **Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that currently exist between the Debtors and another Person or Entity and listed on Exhibit A attached hereto (collectively, the "Assumed Contracts") shall be deemed assumed by the Debtors as of the Closing Date; provided, however, that the Debtors reserve the right, in their sole discretion, on or prior to the Confirmation Date, to amend Exhibit A to add any executory contract or unexpired lease thereto or to delete any executory contract or unexpired lease therefrom, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be assumed (if added) or rejected (if deleted). The Debtors shall provide notice of any amendments to Exhibit A to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on Exhibit A shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder. Any other executory contract or unexpired lease that exists between the Debtors and another Person or Entity and not listed on Exhibit A and that has not been expressly assumed or rejected by the Debtors with the Bankruptcy Court's approval on or prior to the Confirmation Date shall be deemed rejected by the Debtors as of the Confirmation Date, including any executory contract or unexpired lease (i) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date, or (iii) that is specifically listed on Exhibit C attached hereto (all of the foregoing, collectively, the "Rejected Contracts"). For purposes of the Plan, (i) all non-compete agreements, confidentiality or non-disclosure agreements and indemnification agreements executed for the benefit of the Debtors shall be deemed to be executory

contracts and Assumed Contracts (even if not listed on Exhibit A), and (ii) all non-compete agreements, confidentiality or non-disclosure agreements, indemnification agreements and guaranties executed by the Debtors for the benefit of a third party shall be deemed to be executory contracts and Rejected Contracts (even if not listed on Exhibit C).

7.2     **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 7.1 hereof, (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7.1 hereof, and (iii) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption by the Debtors of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

7.3     **Inclusiveness.**

Unless otherwise specified on Exhibit A, each executory contract and unexpired lease listed or to be listed on Exhibit A shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Exhibit A.

7.4     **Cure of Defaults.**

Any lessor or other party to an Assumed Contract (except those lessors or other parties whose unexpired leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 7.1, as contemplated by Section 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Cure Claim Submission Deadline asserting all alleged amounts accrued or alleged defaults through the Cure Claim Submission Deadline. Any lessor or other party to an Assumed Contract failing to file a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtors or the Reorganized Debtors. Reorganized SIDG shall have ninety (90) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, by no later than one hundred twenty (120) days following the Effective Date, Reorganized SIDG shall cure any and all undisputed Cure Claims. All disputed Cure Claims shall be cured either within one hundred twenty (120) days after the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect

thereto or as may otherwise be agreed to by the parties.

7.5    **Claims under Rejected Executory Contracts and Unexpired Leases.**

7.5.1    Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtors or the Reorganized Debtors.  With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be thirty (30) days after the Confirmation Date.  The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

7.5.2    All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 11.

7.6    **Insurance Policies.**

All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Plan.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or the Reorganized Debtors may hold against any Person or Entity, including the insurers under any of the Debtors' insurance policies.

### ARTICLE 8
### MEANS OF IMPLEMENTATION OF THE PLAN

8.1    **General Overview of the Plan.**

The Plan provides for the reorganization and continued operation of the Debtors as the Reorganized Debtors, the settlement of the FirstBank Prepetition Claims and the payment of the FirstBank Allowed Class 2 Secured Claim, and the payment in full of all of the other Allowed Claims against the Debtors except as otherwise described in the Plan or any Plan Document.  On the Closing Date, (i) $9,075,000.00 will be invested in Reorganized SIDG by the Plan Investor in exchange for a majority percentage ownership of the issued and outstanding shares in Reorganized SIDG, which funds will be paid to FirstBank as described in Article 5.3 of the Plan, and (ii) $6,000,000.00 will be contributed to Reorganized SIDG by the SIDG Contributing Shareholders in exchange for a minority percentage ownership of the issued and outstanding shares in Reorganized SIDG, which funds will be placed into escrow with FirstBank and used to pay certain capital expenditures relating to Scrub Island as described in Article 5.3.2.6 of the Plan.  The Plan provides

for Cash payments to Holders of Allowed Claims, all as more particularly described in Article 3 and Article 5 of the Plan.

The Plan shall be implemented on the Effective Date, and the primary source of the funds necessary to implement the Plan initially will be the Plan Investment Amount and the SIDG Shareholders Plan Contribution Amount.  At the present time, the Debtors believe that Reorganized SIDG will have sufficient funds, as of the Effective Date, to pay in full the expected payments required under the Plan to the Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals), Allowed Priority Claims in Class 1, the amounts required to be paid on the Closing Date to FirstBank under Article 5.3 of the Plan, any amounts required to be paid on the Closing Date under the Longview Villa Owner Settlement Agreements, and Allowed Secured Tax Claims in Class 3.  Cash payments to be made under the Plan after the Effective Date to the Holders of Allowed Priority Tax Claims and Holders of Allowed Claims will be derived from the operations of Reorganized SIDG, any new capital or financing raised by Reorganized SIDG, or the sale of the Scrub Island Real Estate, in each case as shown in the Projections.

8.2    **Effective Date Actions.**

8.2.1    Subject to the approval of the Bankruptcy Court and the satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date contained in Article 10.2 of the Plan, on, as of, or as soon as practicable after the Effective Date, as the case may be, the Plan shall be implemented and the following shall occur:

8.2.1.1    Reorganized SIDG shall issue and distribute the Reorganized SIDG Shares to the Plan Investor and the SIDG Contributing Shareholders in accordance with the provisions of the Plan;

8.2.1.2    the Closing shall occur under the FirstBank New Loan Documents;

8.2.1.3    the Closing shall occur under each of the Longview Villa Owner Settlement Agreements;

8.2.1.4    the Creditors Committee shall cease to exist;

8.2.1.5    Reorganized SIDG shall make the Initial Distribution as provided in Article 9.1 of the Plan;

8.2.1.6    the Mainsail Claims and the SIDG Shareholder Claims shall automatically be deemed cancelled, annulled, waived, and extinguished without any further action by any party and shall be of no further force and effect;

8.2.1.7    the Class 12 Intercompany Claims shall automatically be deemed cancelled, annulled, waived, and extinguished without any further action by any party and shall be of no further force and effect;

8.2.1.8    the Reorganized Debtors shall be automatically substituted for the Debtors as a party to all contested matters, adversary proceedings, administrative proceedings and lawsuits, both within and outside of the Bankruptcy Court, involving the Debtor's Properties, Claims against the Debtors, the Causes of Action, and the resolution of Disputed Claims; and

8.2.1.9    the Reorganized Debtors shall carry out their other Effective Date responsibilities under the Plan, including the execution and delivery of all documentation contemplated by the Plan and the Plan Documents.

## 8.3    **Vesting of Property of the Estates in the Reorganized Debtors.**

On the Effective Date, and except as otherwise expressly provided in the Plan, all Property of the Estates (including the Causes of Action and any net operating losses) shall vest in the Reorganized Debtors free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature except the Permitted Liens, and the Confirmation Order shall so provide. The Reorganized Debtors intend to preserve net operating losses to the maximum extent permitted under applicable law. As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of their Properties, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. All privileges with respect to the Property of the Debtors' Estates, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtors.

## 8.4    **Continued Corporate Existence; Dissolution of Reorganized SICL.**

Each of the Debtors will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under the laws of the British Virgin Islands and pursuant to its applicable corporate governance documents in effect prior to the Effective Date, except to the extent such corporate governance documents are amended or amended and restated as provided in the Plan or the Confirmation Order, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date. By no later than six (6) months after the Effective Date, Reorganized SICL shall take all actions that are necessary or appropriate to effect its dissolution as a corporation under the laws of the British Virgin Islands. The Confirmation Order shall contain language authorizing such dissolution.

## 8.5    **Corporate Action.**

All matters provided for under the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, or any corporate action to be taken by or required of the Debtors or the Reorganized Debtors, including all action taken or required to be taken to approve the FirstBank New Loan Documents and the Longview Villa Owner Settlement Agreements or the issuance of the Reorganized SIDG Shares, shall, as of the Effective Date, be deemed to have occurred and be

effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders or directors of the Debtors or the Reorganized Debtors.

8.6    **Boards of Directors and Executive Officers of the Reorganized Debtors.**

8.6.1    Subject to any requirement of Bankruptcy Court approval pursuant to Section 1129(a)(5) of the Bankruptcy Code, and subject further to any agreement with the Plan Investor, as of the Effective Date, the executive officers and directors of the Debtors immediately prior to the Effective Date shall be deemed to be the executive officers and directors of the Reorganized Debtors without any further action by any party.

8.6.2    On and after the Effective Date, the operations of each of the Reorganized Debtors shall continue to be the responsibility of its Board of Directors. Each director of each of the Reorganized Debtors shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the applicable corporate governance documents of such Reorganized Debtor. Each executive officer of each of the Reorganized Debtors shall serve from and after the Effective Date until his or her successor is duly appointed and qualified or until his or her earlier death, resignation or removal in accordance with the applicable corporate governance documents of such Reorganized Debtor.

8.6.3    From and after the Confirmation Date, the directors and executive officers of each of the Debtors and the Reorganized Debtors, as the case may be, shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

8.7    **Section 1146 Exemption.**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any Security (including the Reorganized SIDG Shares), or the making, delivery or recording (including in the British Virgin Islands) of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtors or their Estates or the Reorganized Debtors pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local or foreign governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

8.8    **Pursuit of Causes of Action.**

8.8.1    On the Effective Date, the Causes of Action shall be vested in the Reorganized Debtors, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. The Reorganized Debtors will have the right, in their sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action without seeking any approval from the Bankruptcy Court except as provided in Article 8.9. The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtors state that any party in interest that engaged in business or other transactions with the Debtors Prepetition or that received payments from the Debtors Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. Reorganized SIDG will fund the costs and expenses (including legal fees) to pursue the Causes of Action.

8.8.2    No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to, or on the belief that it will, obtain any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE REORGANIZED DEBTORS. Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a Final Order of the Bankruptcy Court authorizes the Debtors to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or the Reorganized Debtors do not possess or do not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of the Reorganized Debtors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Reorganized Debtors, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

8.8.3    The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtors will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive

effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

8.8.4    At this time, the Debtors believe the Causes of Action consist primarily of the Avoidance Actions. To the extent the Debtors determine after the date hereof that there are additional Causes of Action, such Causes of Action will be described in an amendment to the Plan or to the Disclosure Statement approved by the Bankruptcy Court.

8.8.5    The Debtors and the Reorganized Debtors reserve all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

8.8.6    The Estates shall remain open, even if the Bankruptcy Cases shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the Causes of Action Recoveries have been received by the Reorganized Debtors; provided, however, that nothing in the Plan or the Disclosure Statement shall prohibit the Reorganized Debtors from pursuing any Causes of Action (excluding the Avoidance Actions) in any courts other than the Bankruptcy Court.

8.9    **Prosecution and Settlement of Claims and Causes of Action.**

The Reorganized Debtors (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Cause of Action which the Debtors had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action. From and after the Effective Date, the Reorganized Debtors shall be authorized, pursuant to Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code, to compromise and settle any Cause of Action or objection to a Claim in accordance with the following procedures, which shall constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements: (i) if the resulting settlement provides for settlement of a Cause of Action or objection to a Claim originally asserted in an amount equal to or less than $100,000.00, then the Reorganized Debtors may settle the Cause of Action or objection to Claim and execute necessary documents, including a stipulation of settlement or release, subject to notifying the United States Trustee and counsel to FirstBank of the terms of the settlement agreement; provided, however, that if the United States Trustee and counsel to FirstBank indicate their approval or do not provide the Reorganized Debtors with an objection to the proposed settlement within ten (10) days after they receive notice of such settlement in writing, then the Reorganized Debtors shall be authorized to accept and consummate the settlement; and provided further, however, that if a timely written objection is made by the United States Trustee or counsel to FirstBank to the proposed settlement, then the settlement may not be consummated without approval of the Bankruptcy Court in accordance with Bankruptcy Rule 9019; and (ii) if the resulting settlement involves a Cause of Action or objection to a Claim originally asserted in an amount exceeding $100,000.00, then the Reorganized Debtors shall be authorized and empowered to settle such Cause of Action or objection to Claim only upon Bankruptcy Court approval in accordance with Bankruptcy Rule 9019 and after notice to the Notice Parties.

8.10    **Effectuating Documents; Further Transactions.**

Prior to the Effective Date, CIH Loft LLC, a director of each of the Debtors (and, on and after the Effective Date, a director of each of the Reorganized Debtors), shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, including the FirstBank New Loan Documents, the FirstBank Construction Escrow Agreement and any Plan Document, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

8.11    **Cancellation of Existing Loan Documents and Agreements.**

On and subject to the occurrence of the Effective Date, except as otherwise expressly provided in the Plan, (a) all notes, bonds, indentures, debentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors with respect to Claims in Classes 1 through 12 shall be deemed cancelled, and (b) the obligations of the Debtors under any such notes, bonds, indentures, debentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors with respect to Claims in Classes 1 through 12 shall be discharged.

8.12    **Exclusivity Period.**

The Debtors will retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

8.13    **Dissolution of the Creditors Committee.**

The Creditors Committee shall continue in existence until the Effective Date. Thereafter, (a) the Creditors Committee shall be deemed dissolved and the members of the Creditors Committee shall be deemed discharged from all rights, duties and liabilities arising from, or related to, the Bankruptcy Cases, and (b) the Professionals for the Creditors Committee shall cease providing any services to the Creditors Committee or otherwise in connection with the Bankruptcy Cases.

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

9.1    **Initial Distribution.**

As soon as reasonably practicable (as determined by Reorganized SIDG) after the Effective Date, and subject to the Closing, Reorganized SIDG shall make the Distributions required under the Plan to Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals) and Allowed Claims in Classes 1 and 3; provided, however, that the Distributions as to Allowed Administrative Expense Claims of Professionals shall be made no more than ten (10) days after the Determination Date (the "Initial Distribution"). Thereafter,

Reorganized SIDG shall make additional Distributions to Holders of Allowed Claims as and when required by the terms of the Plan or any Plan Document.

9.2     **Determination of Claims.**

9.2.1     Under the Plan, the Reorganized Debtors shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than the Claims Objection Deadline, and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve the Notice Parties with any request to the Bankruptcy Court for allowance to file late Unsecured Claims. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 11 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) thirty (30) days following the Effective Date or (b) the date that is thirty (30) days after Reorganized SIDG receives actual notice of the filing of any such Claim.

9.2.2     Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Reorganized Debtors, as the case may be, effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

9.2.3     Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Cases, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtors or the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claims objection, estimation and resolution procedures are

cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

9.3     **Distributions as to Allowed Unsecured Claims in Class 11**.

9.3.1     Each Holder of an Allowed Unsecured Claim in Class 11 shall receive a Cash Distribution, on the Distribution Date, in the amount provided for in Article 5.12.2 of the Plan.

9.3.2     Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 11 unless and until such Disputed Claim becomes an Allowed Claim.   At such time that such Disputed Claim becomes an Allowed Class 11 Claim, the Holder of such Allowed Class 11 Claim shall receive the Distribution to which such Holder is then entitled under the Plan.

9.3.3     Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 11 Claim is subject to a proceeding against it by the Reorganized Debtors under Section 502(d) of the Bankruptcy Code, then Reorganized SIDG (in its sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

9.3.4     Distributions to a Holder of an Allowed Claim in Class 11 shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtors or the Reorganized Debtors at the time of the Distribution, unless Reorganized SIDG has been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules.   Reorganized SIDG shall not be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

9.4     **Unclaimed Distributions**.

9.4.1     If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then Reorganized SIDG shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

9.4.2     If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to Reorganized SIDG due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to Reorganized SIDG as to such check within sixty (60) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and

such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

9.4.3    Any unclaimed Distribution as described above sent by Reorganized SIDG shall become the property of Reorganized SIDG.

## 9.5    **Transfer of Claim.**

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise Reorganized SIDG in writing of such transfer and provide sufficient written evidence of such transfer.  Reorganized SIDG shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until Reorganized SIDG shall have received written notice to the contrary.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, Reorganized SIDG shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

## 9.6    **One Distribution Per Holder.**

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distribution hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

## 9.7    **Effect of Pre-Confirmation Distributions.**

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtors or the Reorganized Debtors to such Holder under the Plan.

## 9.8    **No Interest on Claims.**

Except as otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Disputed Claim becomes an Allowed Claim.

## 9.9    **Compliance with Tax Requirements.**

In connection with the Plan, Reorganized SIDG shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

## ARTICLE 10
## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

**10.1    Conditions Precedent to Confirmation of the Plan.**

The following are conditions precedent to Confirmation of the Plan, each of which may be waived by the Debtors:

10.1.1        Each Plan Document shall be in form and substance acceptable to the Debtors.

10.1.2        The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

**10.2    Conditions Precedent to the Effective Date.**

The Plan shall not be consummated and the Effective Date shall not occur unless each of the following conditions has been satisfied following the Confirmation Date or waived by the Debtors:

10.2.1        The Confirmation Order shall be a Final Order.

10.2.2        All conditions precedent to the Closing under the FirstBank New Loan Documents shall have been satisfied or waived in accordance with the terms thereof.

10.2.3        All conditions precedent to the Closing under the Longview Villa Owner Settlement Agreements shall have been satisfied or waived in accordance with the terms thereof.

10.2.4        The Plan Investment Amount shall have been deposited into escrow with Bankruptcy Counsel.

10.2.5        The SIDG Shareholders Plan Contribution Amount shall have been deposited into escrow with Bankruptcy Counsel.

**10.3    Notice of the Effective Date.**

Promptly following the satisfaction, or the waiver by the Debtors, of all of the conditions set forth in Article 10.2, the Debtors shall file a notice (the "Effective Date Notice") with the Bankruptcy Court designating the Effective Date. The Debtors shall serve the Effective Date Notice on all Creditors of, and Holders of Equity Interests in, the Debtors.

## ARTICLE 11
## DISCHARGE, EXCULPATION FROM LIABILITY, RELEASE, AND GENERAL INJUNCTION

11.1   **Discharge of Claims.**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtors and their Estates and the Reorganized Debtors from any and all Debts of and Claims of any nature whatsoever against the Debtors that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtors and their Estates and the Reorganized Debtors, and their respective successors or assigns, shall be discharged, to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of Claims or Equity Interests, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtors or their Estates or the Reorganized Debtors, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, or Liabilities based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. As of the Effective Date, Holders of Equity Interests shall have no rights arising from or relating to such Equity Interests, except as otherwise expressly provided in the Plan or the Confirmation Order. In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against the Debtors, pursuant to Sections 524 and 1141 of the Bankruptcy Code, to the fullest extent permitted by applicable law, and such discharge shall void any judgment obtained against the Debtors, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, or Debt. Notwithstanding the foregoing, Reorganized SIDG shall remain obligated to make payments to Holders of Allowed Claims and issue the Reorganized SIDG Shares as required pursuant to the Plan.

11.2    **Exculpation from Liability.**

The Debtors and their Postpetition directors, shareholders and officers, the Professionals for the Debtors (acting in such capacity), the Creditors Committee and its members, the Professionals for the Creditors Committee (acting in such capacity), and their respective officers, directors, employees, Affiliates, attorneys, agents and representatives (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Cases, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a Final Order of a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Cases. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 11.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of Securities, including the Reorganized SIDG Shares. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.2 shall not release, or be deemed a release of, any of the Causes of Action.

11.3    **Release.**

On the Effective Date, the Debtors, the Reorganized Debtors, the Creditors Committee, and any and all Holders of Claims and Equity Interests shall release unconditionally and hereby are deemed to release unconditionally the Debtors' Postpetition directors, shareholders and officers, the members of the Creditors Committee, and the Professionals employed by the Debtors and the Creditors Committee (collectively, the "Released Parties") from any and all claims, obligations, suits, judgments, damages, losses, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place between the Petition Date and the Effective Date, which is in any way relating to the Debtors, the Bankruptcy Cases, any Property of the Debtors, the business or operations of the Debtors, any Plan Documents, the Plan, or any of the transactions contemplated thereby; provided, however, that

this release provision shall not be applicable to any liability found by a Final Order of a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing release provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Cases. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The Confirmation Order shall enjoin the prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any such claim, obligation, suit, judgment, damage, loss, right, remedy, cause of action, charge, cost, debt, indebtedness, or liability which arose or accrued during such period or was or could have been asserted against any of the Released Parties, except as otherwise provided in the Plan or in the Confirmation Order. Each of the Released Parties shall have the right to independently seek enforcement of this release provision. This release provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.3 shall not release, or be deemed a release of, any of the Causes of Action.

11.4    **General Injunction.**

Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, or Liability that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtors or the Reorganized Debtors or their respective Properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or the Reorganized Debtors or their respective Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtors or the Reorganized Debtors or their respective Properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtors or the Reorganized Debtors under the Plan and the Plan Documents and the other documents executed in connection therewith. The Debtors and the Reorganized Debtors shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.4 shall not release, or be deemed a release of, any of the Causes of Action.

11.5    **Term of Certain Injunctions and Automatic Stay.**

11.5.1       All injunctions or automatic stays for the benefit of the Debtors pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise provided for in the Bankruptcy Cases, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

11.5.2       With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtors' liability on Prepetition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Debtors affirmatively elect to have the Debtors' liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtors affirmatively elect to have the automatic stay lifted and to have the Debtors' liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtors as provided herein.

11.6    **No Liability for Tax Claims.**

Unless a taxing Governmental Unit has asserted a Claim against the Debtors before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtors, the Reorganized Debtors or their respective directors, officers, employees or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, any of their Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

## ARTICLE 12
## RETENTION OF JURISDICTION

12.1    **General Retention.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Cases that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

12.2    **Specific Purposes.**

In addition to the general retention of jurisdiction set forth in Article 12.1, after Confirmation of the Plan and until the Bankruptcy Cases are closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Cases for the following specific purposes:

12.2.1      to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

12.2.2      to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Cases, the Plan or the Confirmation Order (including regarding the effect of any release, exculpation from liability, discharge, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions precedent to the consummation and/or the Effective Date of the Plan have been satisfied);

12.2.3      to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Cases; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals incurred after the Effective Date unless an objection to such fees and expenses has been made by Reorganized SIDG;

12.2.4      to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption, or assignment of executory contracts or unexpired leases to which either of the Debtors is a party or with respect to which either of the Debtors may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any Cure Claims;

12.2.5      to determine any and all motions, applications, adversary proceedings, contested or litigated matters, Causes of Action, and any other matters involving the Debtors or the Reorganized Debtors commenced in connection with, or arising during, the Bankruptcy Cases and pending on the Effective Date, including approval of proposed settlements thereof;

12.2.6      to enforce, interpret and administer the terms and provisions of the Plan and the Plan Documents;

12.2.7      to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

12.2.8      to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtors or their respective Estates;

12.2.9      to assure the performance by the Reorganized Debtors of their obligations under the Plan;

12.2.10    to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

12.2.11    to resolve any disputes concerning any release or exculpation of, or limitation of liability as to, a non-debtor (including any Professional) hereunder or the injunction against acts, employment of process or actions against such non-debtor (including any Professional) arising hereunder;

12.2.12    to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Cases;

12.2.13    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

12.2.14    to review and approve any sale or transfer of assets or Property by the Debtors or the Reorganized Debtors, including prior to or after the date of the Plan, and to determine all questions and disputes regarding such sales or transfers;

12.2.15    to determine all questions and disputes regarding title to the assets or Property of the Debtors, the Estates, or the Reorganized Debtors;

12.2.16    to determine any and all matters, disputes and proceedings relating to the Causes of Action, whether arising before or after the Effective Date;

12.2.17    to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtors arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

12.2.18    to resolve any determinations which may be requested by the Debtors or the Reorganized Debtors of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

12.2.19    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

12.2.20    to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

12.2.21  to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Documents;

12.2.22  to enter such orders as are necessary to implement and enforce the injunctions described herein;

12.2.23  to enforce the obligations of any purchaser of any Property of the Debtors;

12.2.24  to adjudicate any and all disputes or issues arising from or relating to the issuance and distribution of the Reorganized SIDG Shares;

12.2.25  to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

12.2.26  to enter an order concluding and terminating the Bankruptcy Cases.

### 12.3 **Closing of the Bankruptcy Cases.**

In addition to the retention of jurisdiction set forth in Article 12.1 and Article 12.2, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Cases to enter an order reopening the Bankruptcy Cases after they have been closed.

## ARTICLE 13
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

### 13.1 **Modification of Plan.**

13.1.1  The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

13.1.2  After the entry of the Confirmation Order, the Debtors (prior to the Effective Date) or the Reorganized Debtors (on and after the Effective Date) may modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtors or the Reorganized Debtors (as the case may be) obtain Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims under the Plan.

13.1.3  After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtors (prior to the Effective Date) or the Reorganized Debtors (on

and after the Effective Date) may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtors or the Reorganized Debtors (as the case may be) obtain Bankruptcy Court approval for such modification, after notice to the Notice Parties and the Class of Claims materially adversely affected and a hearing, (c) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims actually voting in each Class of Claims adversely affected by such modification, and (d) the Debtors or the Reorganized Debtors (as the case may be) comply with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

13.1.4    Notwithstanding anything to the contrary contained in this <u>Article 13.1</u> or elsewhere in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtors (prior to the Effective Date) or the Reorganized Debtors (on and after the Effective Date).

13.2    **Confirmation Over Objections.**

In the event any Impaired Class of Claims votes against the Plan, and the Plan is not revoked or withdrawn in accordance with <u>Article 14.2</u>, the Debtors hereby request, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting Distributions to all Classes at or below the level of the objecting Class, or reallocating such Distributions, until such Impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtors may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtors reserve any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1    **No Admissions.**

The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtors. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtors in any manner prior to the Effective Date.

14.2    **Revocation or Withdrawal of the Plan.**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtors or any other Person, or (b) prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

14.3    **Standard for Approval of the Bankruptcy Court.**

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

14.4    **Further Assurances.**

Each of the Debtors and the Reorganized Debtors agree, and are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

14.5    **Headings.**

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

14.6    **Notices.**

All notices, requests or other communications in connection with, or required to be served by, the Plan shall be in writing and shall be sent by United States first class mail, postage prepaid, or by overnight delivery by a recognized courier service, and addressed as follows: (i) if to the Debtors or the Reorganized Debtors, Scrub Island Development Group Limited, Attn: Joe C. Collier III, 4602 Eisenhower Boulevard, Tampa, Florida 33634, with a copy to Charles A. Postler, Esq., Stichter, Riedel, Blain & Prosser, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602, (ii) if to FirstBank, counsel to FirstBank, W. Keith Fendrick, Esq., Holland & Knight LLP, 100 North Tampa Street, Suite 4100, Tampa, Florida 33602, and (iii) if to the Creditors Committee, counsel to the Creditors Committee, Robert B. Glenn, Esq., Glenn Rasmussen, P.A., 100 South Ashley Drive, Suite 1300, Tampa, Florida 33602. Copies of all notices under the Plan to any party shall be given to each of the parties listed above contemporaneously with the giving of such notice. Any of the parties listed above may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court. Notwithstanding anything to the contrary contained in the Plan, no notice shall be required hereunder to the Creditors Committee if it is not (or no longer) in existence.

14.7    **Governing Law.**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof. Notwithstanding anything to the contrary contained in the Plan, all of the FirstBank New Loan Documents and the FirstBank Construction Escrow Agreement shall be governed by the laws of the British Virgin Islands.

14.8    **Limitation on Allowance**.

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as otherwise expressly provided in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

14.9    **Estimated Claims**.

To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

14.10    **Consent to Jurisdiction**.

Upon any default under the Plan, the Debtors and the Reorganized Debtors consent to the jurisdiction of the Bankruptcy Court and agree that the Bankruptcy Court shall be the preferred forum for all proceedings relating to any such default.

By accepting any Distribution under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim or Cure Claim, by voting on the Plan, by reason of being served with notice of the filing of the Bankruptcy Cases or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Cases, Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest (including Creditors and parties in interest located in the British Virgin Islands), have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Debtors, the Plan or the Bankruptcy Cases, including the matters and purposes set forth in Article 12 of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

14.11    **Setoffs**.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Reorganized Debtors may, but shall not be required to, set off against any Claim and any Distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtors or the Reorganized Debtors may have against the Holder of such Claim, but neither the failure to do so nor

the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against the Holder of such Claim.

### 14.12  **Successors and Assigns.**

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

### 14.13  **Modification of Payment Terms.**

The Reorganized Debtors reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.  In addition, Reorganized SIDG reserves the right to modify the timing for the payment of any Allowed Class 11 Unsecured Claim, the Holder of which is located in the British Virgin Islands.

### 14.14  **Entire Agreement.**

The Plan and the Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.  No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter thereof, other than as expressly provided for therein or as may hereafter be agreed to by such Person or Entity in writing.

### 14.15  **Severability of Plan Provisions.**

If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

### 14.16  **Controlling Document.**

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtors or the Reorganized Debtors and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the

Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement. The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

14.17  **Plan Supplement.**

The Plan Supplement shall be filed with the Bankruptcy Court and posted at www.srbp.com at least five (5) days prior to the Voting Deadline; provided, however, that (i) the Debtors may amend the Plan Supplement through and including the Confirmation Date, and (ii) in lieu of filing the Plan Supplement with the Bankruptcy Court, the Debtors may provide copies of the Plan Documents to the applicable Creditor on or prior to the Voting Deadline. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected at the Clerk's Office during normal business hours, may be obtained from the Bankruptcy Court's copying service upon the payment of the appropriate charges, or may be obtained from Bankruptcy Counsel's website at www.srbp.com.

14.18  **Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

14.19  **Substantial Consummation.**

The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by Reorganized SIDG of the Initial Distribution described in Article 9.1 of the Plan.

14.20  **No Liability for Solicitation.**

Pursuant to Section 1125(e) of the Bankruptcy Code, any Person that solicits the acceptance or rejection of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, or that participates, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale or purchase of a Security, offered or sold under the Plan, of the Debtors, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale or purchase of Securities.

Dated as of March 19, 2014          Respectfully submitted,

**Scrub Island Development Group Limited**

By:     CIH Loft LLC,
        Its Director

        By: _____
            Joe C. Collier III
            Managing Member

**Scrub Island Construction Limited**

By:     CIH Loft LLC,
        Its Director

        By: _____
            Joe C. Collier III
            Managing Member

/s/ Charles A. Postler
_____
Harley E. Riedel (Florida Bar No. 183628)
Charles A. Postler (Florida Bar No. 455318)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email: hriedel@srbp.com
       cpostler@srbp.com
Counsel for Debtors and Debtors in Possession

## EXHIBIT A

## Assumed Contracts

| Third Party to Contract | Description of Contract | Effective Date of Contract |
|---|---|---|
| Dive BVI | Dive Shop Retail Space | 1/1/2012 |
| North Sound Dock | Docking Agreement | 2/1/2013 |
| Marriott International | Franchise Agreement[1] | 7/28/2011 |
| Mainsail BVI Limited | Management Agreement | 7/1/2007 |
| Collier Investment Holdings | Professional Services Agreement | 4/16/2005 |
| Hayworth Creative | Public Relations Agreement | 6/29/2012 |
| Emerge | SEO Agreement | 2/14/2014 |
| Marcam | Shared Services Agreement | 1/1/2014 |
| Buzzfish | Social Media Agreement | 3/31/2012 |
| L'Occitane | Spa Services Agreement | 9/4/2013 |
| Digicel | Internet Connection | |
| Cable and Wireless | Internet Connection | 6/13/2010 |
| Triple K Contract | Contract Labor | 12/1/2011 |
| BVI Pest Control | Pest Control Services | |
| STO Enterprises | Pool Service | 8/12/2010 |
| Caribbean Technology | Generator Maintenance | 7/11/2013 |
| DAKM General Maintenance | Landscape Maintenance | undated |
| BVI Courtesy Services | Airport Greeting Services | 4/2/2012 |
| Mainsail Central | Office Lease | 1/1/2013 |
| WMS Limited | Lease | 8/1/2010 |
| Eduardo Artau-Gomez | Rental Agreement | 3/26/2010 |
| NMFM | Rental Agreement | 4/1/2010 |
| Mavana Corporation | Rental Agreement | 3/31/2010 |
| Marinatime LLC | Rental Agreement | 12/20/2010 |
| Scrub Island Associates | Rental Agreement | 3/29/2010 |
| Gustavo Hermida | Rental Agreement | 3/29/2010 |
| Pablo Guzman | Rental Agreement | 3/26/2010 |
| Scrubtime, LLC | Rental Agreement | 12/20/2010 |
| Eugenio Ortega | Rental Agreement | 12/13/2011 |
| Joe & Lorie Orzel | Rental Agreement | 7/3/2010 |
| NDL Marine Corporation Limited | Rental Agreement | 9/1/2012 |
| Fernando Ortega & Magda Rodriguez | Rental Agreement | 10/1/2012 |
| Robert Bonapace | Rental Agreement | 2/7/2011 |
| Felipe Perez | Rental Agreement | 12/12/2011 |
| John McTaggart/Doug Nanni | Rental Agreement | 12/5/2011 |

| Steve and Katherine James | Rental Agreement | 11/20/2011 |
| Jose and Mila Fullana | Rental Agreement | 6/7/2010 |
| Joseph Frett | Settlement Agreement | 9/6/11 |

---

1    Subject to modifications to be mutually agreed upon by the Debtors and Marriott International.

## EXHIBIT B

### Mainsail Claims

| Name of Mainsail Entity | Amount of Mainsail Entity Scheduled Claim |
|---|---|
| Mainsail B.V.I. Limited | $844,703.43 |
| Mainsail BVI Property Management, LLC | $294,421.97 |
| Mainsail Central, LLC | $71,617.29 |
| Mainsail Development International | $275,711.58 |
| Mainsail Management Group | $1,460,935.62 |
| Mainsail Suites Group | $17,114.51 |
| Marriott Execustay | $9,224.78 |

## EXHIBIT C

## Rejected Contracts

| Third Party to Contract | Description of Contract | Effective Date of Contract |
|---|---|---|
| Enjoy Life Limited | Spa Lease Agreement | 4/30/2010 |
| Blue Water Traders Ltd. | Site Purchase and Sale Agreement | August 12, 2006 |
| Blue Water Traders Ltd. | Construction Contract – Longview Residences | |
| Pablo L. Dardet | Site Purchase and Sale Agreement | May 15, 2006 |
| Pablo L. Dardet | Construction Contract – Longview Residences | July 5, 2006 |
| Thomas Frederick | Site Purchase and Sale Agreement | March 20, 2007 |
| Thomas Frederick | Construction Contract – Long View Residences | February 2, 2007 |
| Luis A. Linares and David Foster | Site Purchase and Sale Agreement | February 2, 2007 |
| Luis A. Linares and David Foster | Construction Contract – Long View Residences | February 2, 2007 |
| Oscar Rivera | Site Purchase and Sale Agreement | July 5, 2006 |
| Oscar Rivera | Construction Contract – Long View Residences II | |

## EXHIBIT D

### SIDG Shareholder Claims

| Name of SIDG Shareholder | Amount of SIDG Shareholder Scheduled Claim | Amount of SIDG Shareholder Filed Claim |
|---|---|---|
| | | |
| CIH Loft LLC | $127,921.00 | -- |
| Collier Investment Holdings[1] | $3,035,355.92 | -- |
| Gary Eng | $4,251,618.00 | -- |
| James R. Rabold | $4,381,275.00 | $4,545,044.00 |
| Pamela McManus | $494,422.00 | -- |
| Vance Kershner | $4,254,526.00 | -- |

---

[1] Collier Investment Holdings is not an SIDG Shareholder.