**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SCRUB ISLAND DEVELOPMENT GROUP LIMITED,** | **Case No. 8:13-bk-15285-MGW** |
| | **Jointly Administered with** |
| **SCRUB ISLAND CONSTRUCTION LIMITED,** | **Case No. 8:13-bk-15286-MGW** |
| **Debtors.** _____/ | |

**DEBTORS' MODIFICATION TO FIRST AMENDED JOINT PLAN OF REORGANIZATION TO ADDRESS SECTION 1111(B) ELECTION**

STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
Harley E. Riedel (Florida Bar No. 183628)
Charles A. Postler (Florida Bar No. 455318)
Daniel R. Fogarty (Florida Bar No. 0017532)
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email:        hriedel@srbp.com
              cpostler@srbp.com
              dfogarty@srbp.com
Counsel for Debtors and Debtors in Possession

Tampa, Florida
Dated as of October 31, 2014

**Initial Statement**

Scrub Island Development Group Limited ("SIDG") and Scrub Island Construction Limited ("SICL" and together with SIDG the "Debtors"), as Debtors and Debtors in Possession in the Bankruptcy Cases, file this Modification to the Debtors' First Amended Joint Plan of Reorganization of Scrub Island Development Group Limited and Scrub Island Construction Limited under Chapter 11 of Title 11, United States Code dated as of July 11, 2014 (Doc. No. 256) (as modified by this and other modifications or amendments, the "Plan") in response to the election (the "Election") filed days ago (on October 28, 2014) by FirstBank[1] to have its claims treated under §1111(b) of the Bankruptcy Code (Doc. No. 353). The Debtors have had insufficient time to consider all of issues related to the Election, and they continue to analyze those issues and to consult with their professionals and experts with respect thereto. This Modification is, therefore, subject to further amendment. The Debtors will make such further adjustments and modifications as are necessary to conform the Plan terms to the requirements of § 1111(b) as determined by the Court.

This Modification is also filed without prejudice to the Debtors' existing theories related to confirmation and lender liability. The Debtors contend that the misconduct of FirstBank precludes it from making the § 1111(b) election.

Moreover, in connection with the FirstBank Lender Liability Adversary Proceeding, the Debtors have requested that the Bankruptcy Court subordinate the claims of FirstBank to all other claims and transfer FirstBank's lien to the Bankruptcy Estates as requested by the Debtors. This remedy, if granted, would affect the amount of FirstBank's secured claim and, therefore, the Plan treatment of FirstBank's claims as set forth below. If the Court were to enter a judgment in

---

[1] Unless otherwise indicated, capitalized terms used in this Modification shall have the meaning ascribed to such terms in the Plan.

1

the FirstBank Lender Liability Adversary Proceeding ruling that FirstBank is required to accept Option A under the Plan (i.e., the Shaner terms), then that judgment would render the Election moot. Or, alternatively, if the Court were to disallow any unsecured (deficiency) claim of FirstBank, then such disallowance would also moot the Election, as the amount of FirstBank's Claim would equal the amount of its Secured Claim. Other remedies may have the same effect. Therefore, the existing provisions of Section 5.3.6 of the Plan remain in place, and the provisions of this Modification related to the Election shall govern if those existing provisions are not confirmable.

Without prejudice to the Debtors' other theories, this Modification assumes the validity of the Election and assumes that FirstBank has a Claim treatable as a Secured Claim in excess of the value of its Collateral. In such event, the Debtors modify and amend the Plan, pursuant to the provisions of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as set forth below.

## General Discussion

*Current Treatment of FirstBank.* Option A of the Plan presently proposes to pay in full the Allowed Secured Claim of FirstBank in the approximate principal amount of $37.5 million,[2] plus interest, over a five year period, with the unpaid principal "ballooning" at the end of the five year period. Of this amount, FirstBank will receive $7.5 million on the Effective Date of the Plan. The balance of $30 million is to be paid within five years. To achieve this goal, the Debtors' current business plan anticipates, *inter alia*, the allocation during the five year period of substantial funds derived from the sale of "Little Scrub" lots (50% of net sales proceeds) to pay FirstBank's Allowed Secured Claim. At the end of five years, FirstBank will be owed approximately $12 million, which

---

[2] The Debtors' appraisal places a value of $37.2 million on the Collateral. The FirstBank February 2014 Term Sheet sets forth $37.5 million as the price to be paid to FirstBank.

2

will be paid through a capital event such as refinancing. No sales of "Big Scrub" lots are anticipated during this five year period, and no substantial funds are devoted to the completion of infrastructure on "Big Scrub" until FirstBank has been paid in full.

*Business Issues Related to the Election.* Payment of as much as $119 million to FirstBank as a result of the Election will have various business consequences that the Debtors continue to analyze. Among the potential business issues are the following.

First, the Election will result in much lower amounts of cash needed by the Debtors at confirmation (because the cash down payment, the interest reserve, and the loan fees to be paid to FirstBank are not necessary). Second, the Election will extend the five-year maturity date of the FirstBank loan. Third, it will reduce payments to FirstBank in the short term, which will in turn permit the Debtors accelerate the timing of infrastructure improvements on Big Scrub. Fourth, it may permit the Debtors to offer purchase money financing to qualified purchasers of lots with the resulting mortgages to be subject to liens in favor of FirstBank. Subject to further modification, therefore, the Debtors file this Modification.

## Plan Modification

1. This Modification addresses the election by FirstBank under 11 U.S.C. § 1111(b) if such election is permitted by the Court. It provides, *inter alia*, for the immediate grant of liens to FirstBank on additional collateral and for the improvement and enhancement of FirstBank's present collateral so that such collateral may be sold during the plan term to eventually pay all of FirstBank's Allowed Claim. Thus, FirstBank shall be paid from sources that include the operating revenues of the Scrub Island Resort and funds derived from payments made by third parties in cash or over time in connection with such third parties' acquisition of FirstBank's existing collateral and the additional collateral pledged by it pursuant to this Modification.

2. The following Defined Terms shall be added to Article 2.1 of the Plan:

"**Additional FirstBank Collateral**" shall mean the five properties acquired by Reorganized SIDG from the Creditors identified in Classes 5-9 of the Plan.

"**Purchaser Down Payment**" shall have the meaning ascribed to such term in Article 5.3.6 of the Plan.

"**Purchaser Financing**" shall have the meaning ascribed to such term in Article 5.3.6 of the Plan.

"**Purchaser Mortgage**" shall have the meaning ascribed to such term in Article 5.3.6 of the Plan.

"**Purchaser Note**" shall have the meaning ascribed to such term in Article 5.3.6 of the Plan.

"**Sinking Fund Account**" shall have the meaning ascribed to such term in Article 5.3.6 of the Plan.

3. The entire Allowed Claim of FirstBank shall be treated as a secured claim in accordance with §1111(b) of the Bankruptcy Code. Accordingly, all references to Class 13, comprised solely of the Unsecured Claim (if any) of FirstBank, including all of Section 5.13 of the Plan, shall be deleted. FirstBank shall have no Unsecured Claim.

4. Article 5.3.6 of the Plan shall be deleted in its entirety and the following shall be substituted to address the Election by FirstBank under 11 U.S.C. § 1111(b):

5.3.6  FirstBank shall have a Secured Claim in the entire amount of its Allowed Claim, not to exceed $119,275,858.73, which Claim shall be treated as follows:

>  5.3.6.1   FirstBank shall retain its Lien on its Collateral or upon the proceeds from the sale of its Collateral as set forth below. In addition, FirstBank shall be granted a new lien on the five properties to be acquired by the Debtors from the existing villa owners under the provisions of Classes 5-9 of the Plan. In regard to the properties acquired under the provision of Classes 6, 7, and 9, the new lien will be subject to any liens contemplated under the Plan provisions for those Classes.

5.3.6.2     FirstBank will be paid the Allowed Amount of its Claim, which claim is asserted to be $119,275,858.73, in payments over a period not to exceed thirty (30) years that shall have a present value equal to the value of FirstBank's Collateral, as determined by the Bankruptcy Court, which value is estimated to be $37.2 million. The allowed amount of FirstBank's claim will ultimately be determined by the Court and may be much lower than the asserted amount, in which the amount paid to FirstBank shall be reduced accordingly.

5.3.6.3     From operating revenues of the Scrub Island Resort or from other cash or property that is not the Collateral of FirstBank (including, without limitation, amounts received from the Plan Funder), Reorganized SIDG shall make quarterly payments to FirstBank of $451,497.40 ($1,805,990 per year). These payments shall continue until the total of all payments made to FirstBank under this Plan total 100% of its Allowed Claim.

5.3.6.4     All of Reorganized SIDG's operating revenues derived from the Scrub Island Resort operations, net of all Scrub Island Resort expenses, the quarterly payments to FirstBank, payments to other parties pursuant to the Plan, and a reasonable working capital, maintenance, and capital expense reserves, shall be deposited into an account for the benefit of the Reorganized Debtors, which shall be subject to the lien of FirstBank (the "**Sinking Fund Account**").

5.3.6.5     As currently anticipated in their Plan Projections, Reorganized SIDG will first sell the fifteen (15) completed Marina Village units, the Little Scrub unimproved residential lots, and the Additional FirstBank Collateral. At the closing of each sale, FirstBank shall release its mortgage. The precise terms of the release shall be established by the Bankruptcy Court, and the Debtors are analyzing the release terms. It is presently estimated that approximately 75% of the net cash proceeds from these sales shall be deposited in the Sinking Fund Account to fund improvements to the Collateral of FirstBank and Purchaser Financing.

5.3.6.6     Reorganized SIDG shall first use the accumulated funds in the Sinking Fund Account to pay for and complete (or reimburse the Reorganized Debtors for advances used to pay for or complete) the infrastructure improvements to FirstBank's Collateral on Little Scrub in accordance with the budget set forth in the Debtors' Plan Projections as more specifically set forth in an itemized draw schedule to be approved by the Bankruptcy Court. Funds shall be drawn from the Sinking Fund Account only upon a certificate from an architect or a contactor that the funds will be used for the improvements as scheduled.

5.3.6.7     Following the completion of improvements to Little Scrub, Reorganized SIDG shall use funds in the Sinking Fund Account to pay for and complete infrastructure improvements on Big Scrub until such improvements have been completed consistent with the HVS projections and as more specifically set forth in an itemized draw schedule to be approved by the

5

Bankruptcy Court.  Funds shall be drawn from the Sinking Fund Account only upon a certificate from an architect or a contactor that the funds will be used for the improvements as scheduled.

5.3.6.8    Sinking Fund Account funds may be used to offer qualified prospective purchasers of Scrub Island Real Estate with purchase money financing for a portion of the purchase price (the "**Purchaser Financing**").  The Purchaser Financing shall be commercially reasonable and shall include a down payment of not less than 40% of the purchase price (the "**Purchaser Down Payment**"), and a note of not more than thirty (30) years, amortization of not more than thirty (30) years, and interest rates that correspond to residential real property rates at the time of closing, but in no event shall the interest rate be less than 5% (the "**Purchaser Note**"); (d)  the Purchaser Note shall be secured by a mortgage on the real property purchased (the "**Purchaser Mortgage**").  Any Purchaser Notes and Mortgages funded with Sinking Fund Account funds shall be pledged to FirstBank.  Reorganized SIDG, or a qualified third party servicer selected by Reorganized SIDG, shall collect the monthly payments on each Purchaser Note and deposit the funds into the Sinking Fund Account, and shall remit annually directly to FirstBank all net payments collected by them on any Purchase Notes until the total of all payments made to FirstBank under this Plan total 100% of its Allowed Claim.

5.3.6.9    The treatment of the claim of FirstBank as set forth herein shall be modified to conform with projections for Reorganized SIDG to account for FirstBank's election under 11 U.S.C. § 1111(b) and shall provide for, inter alia, scheduled payments to FirstBank from the Sinking Fund Account as set forth in those projections.

5. Article 5.3.7 shall be added as follows:

5.3.7   Notwithstanding the above, FirstBank may be paid under such other terms as may be mutually agreed upon by FirstBank and the Debtors or the Reorganized Debtors, as the case may be.

6. Except as otherwise provided in this Modification, no other amendments or modifications to the Plan (including the Exhibits thereto) are hereby made or intended, and the Plan shall otherwise remain in full force and effect.

Dated as of October 31, 2014        Respectfully submitted,

**Scrub Island Development Group Limited**

By:    CIH Loft LLC,
        Its Director

By: _____
        Joe C. Collier III
        Managing Member

**Scrub Island Construction Limited**

By:    CIH Loft LLC,
        Its Director

By: _____
        Joe C. Collier III
        Managing Member

/s/ Daniel R. Fogarty
Harley E. Riedel (Florida Bar No. 183628)
Charles A. Postler (Florida Bar No. 455318)
Daniel R. Fogarty (Florida Bar No. 0017532)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email: hriedel@srbp.com
        cpostler@srbp.com
        dfogarty@srbp.com
Counsel for Debtors and Debtors in Possession