IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| SCRUB ISLAND DEVELOPMENT | : | Case No. 8:13-bk-15285-MGW |
| GROUP LIMITED; SCRUB ISLAND | : | Jointly Administered |
| CONSTRUCTION LIMITED | : | Chapter 11 |
|     Debtors | : | |
| | : | |
| - - - - - - - - - - - - - - - x | | |
| SCRUB ISLAND, LLC, et al | : | Adv. No. 8:14-ap-00571-MGW |
|     Plaintiffs | : | |
| v. | : | |
| SCRUB ISLAND DEVELOPMENT | : | |
| GROUP LIMITED, et al | : | |
|     Defendants | : | |
| | : | |
| - - - - - - - - - - - - - - - x | | |

U.S. Courthouse
801 North Florida Avenue
Tampa, Florida 33602
Held June 10, 2015

TRANSCRIPT OF HEARING

[Re: 13-bk-15285]
1-Continued Post-Confirmation Status Conference; 2-Joint Motion of Scrub Island Development Group Limited and FirstBank Puerto Rico to Approve Transfer of Title to Ocean View Villa #11, in Furtherance of Settlement Order and Consummation of Final Modified Plan (Doc. #613).....
*[FULL NATURE OF PROCEEDINGS CONTINUED ON NEXT PAGE]*

BEFORE THE HONORABLE MICHAEL G. WILLIAMSON
UNITED STATES BANKRUPTCY JUDGE

PROCEEDINGS DIGITALLY RECORDED BY COURT PERSONNEL
TRANSCRIPT PRODUCED BY COURT-APPROVED TRANSCRIPTION SERVICE

**JOHNSON TRANSCRIPTION SERVICE**
7702 Lake Cypress Drive
Odessa, Florida 33556
(813) 920-1466

*[FULL NATURE OF PROCEEDINGS CONTINUED FROM PREVIOUS PAGE]*

.....3-Motion for Approval - Reorganized Debtor's Motion for Order Approving Employment of Plan Administrator under Final Modified Plan, filed by Charles A. Postler on behalf of Debtor Scrub Island Development Group Limited (Doc. #614); 4-Motion for Approval - Reorganized Debtor's Motion for Order Approving (A) Minimum Release Prices for the Sale of Certain Little Scrub Island Real Estate Under Final Modified Plan, and (B) Release Price for the Sale of Big Scrub Island Under Final Modified Plan, filed by Charles A. Postler on behalf of Debtor Scrub Island Development Group Limited (Doc. #615)

[Re: 8:14-ap-00571]
Continued Status Conference

APPEARANCES:

| | |
|---|---|
| For the Debtors | CHARLES A. POSTLER, Esquire<br>Stichter, Riedel,<br>Blain & Postler, P.A.<br>110 E. Madison Street<br>Suite 200<br>Tampa, Florida 33602<br>813-229-0144<br>cpostler@srbp.com |
| For FirstBank Puerto Rico | W. KEITH FENDRICK, Esquire<br>Holland & Knight, LLP<br>100 North Tampa Street<br>Suite 4100<br>Tampa, Florida 33602<br>813-227-8500<br>keith.fendrick@hklaw.com |
| For the United States Trustee | DENISE BARNETT, Esquire<br>Office of the U.S. Trustee<br>501 E. Polk Street, Suite 1200<br>Tampa, Florida 33602<br>813-228-2000<br>denise.barnett@usdoj.gov |
| Via CourtCall<br>(listen only) | CARREN SHULMAN |

```
 1                    P R O C E E D I N G S
 2              (Proceedings commenced at 10:44 a.m.)
 3              COURTROOM CLERK:  All rise.  The United States
 4  Bankruptcy Court for the Middle District of Florida is now in
 5  session.  The Honorable Michael G. Williamson presiding.  God
 6  save the United States and this Honorable Court.
 7              THE COURT:  Please be seated.
 8              COURTROOM CLERK:  13-15285, Scrub Island
 9  Development, and Adversary 14-571.  Judge, the person on the
10  line is just a listen-only.
11              THE COURT:  Okay.  The Court notes Carren Shulman
12  is on listen-only on CourtCall.  And in the courtroom?
13              MR. RIEDEL:  Good morning, Your Honor.  Charles
14  Postler from Stichter, Riedel, Blain & Prosser, on behalf of
15  the Debtors, Scrub Island Development Group Limited and Scrub
16  Island Construction Limited.
17              THE COURT:  Okay, thank you.
18              MS. BARNETT:  Denise Barnett for the United States
19  Trustee.
20              THE COURT:  Thank you, Ms. Barnett.
21              MR. FENDRICK:  Good morning, Your Honor.  Keith
22  Fendrick for FirstBank Puerto Rico.
23              THE COURT:  Thank you.  I understand that the
24  matter that Judge Delano was assisting on has been resolved,
25  and you're ready to proceed forward with these motions.
```

1           MR. POSTLER:  Yes, sir.  I think we're done with
2   the loan agreement.  There's a couple of very, very, very
3   minor issues that Mr. Fendrick is going to take back to his
4   client, but I don't think they're -- they're not big business
5   issues, so --
6           THE COURT:  Okay, good.  Well, you can go ahead
7   through the calendar, then.
8           MR. POSTLER:  Thank you, Your Honor.  I will start
9   with Docket No. 613, which is a joint motion filed by Scrub
10  Island Development Group Limited and FirstBank to approve the
11  transfer of title to Ocean View Villa No. 11.
12          Your Honor, OV-11, as we refer to it, is a villa
13  that the Bank has for a long time been using, and --
14          THE COURT:  Right.  It's in the middle of Big Scrub
15  Island?
16          MR. POSTLER:  It's on Little Scrub island.
17          THE COURT:  Or in the middle of Little Scrub
18  Island?
19          MR. POSTLER:  It's on Little Scrub island.
20          THE COURT:  Yeah.
21          MR. POSTLER:  I think it's one of the two-bedroom
22  villas, or maybe a three-bedroom villa.  But prepetition
23  there was an agreement that -- the Debtor had a contract with
24  a gentleman named Robert Villimil (phonetic).  And Mr.
25  Villimil had a separate loan with the Bank.  And to make a

1  long story short, I think they forgave that loan on a boat.
2  And in consideration for that, he transferred all his rights
3  under the -- to buy Ocean View 11 to FirstBank Puerto Rico.
4         Mr. Villimil had paid us some money as a down
5  payment and so forth, but I think just due to some
6  discrepancy that happened prepetition with the BVI counsel,
7  title to OV-11 was never actually transferred to FirstBank.
8  Even though we had signed an acknowledgement and agreement
9  that title was supposed to pass to them, they never followed
10 up to file the appropriate papers in the BVI.
11        As part of the settlement term sheet, we've agreed
12 to transfer title to OV-11 to FirstBank, and so we've agreed
13 on the form of the transfer documents and so forth.  It's
14 going to be free and clear of any liens.  There's no liens
15 on the property.
16        It just turns out that we still have title in Scrub
17 Island Development in that parcel, so the BVI counsel had
18 recommended that we basically file this motion to get a
19 comfort order that we're allowed to transfer title to either
20 FirstBank or a wholly-owned subsidiary of FirstBank, and so
21 this is nothing more than a comfort order that we've agreed
22 to get on behalf of the Bank.
23        But we're fully in agreement that we're going --
24 that they have title and we're going to transfer title to
25 them at closing.  We've agreed on the form of the document

 1  and so forth.
 2          And they're going to pay for the transfer stamp
 3  duty on the transfer -- I think we established a $1,045,000
 4  value on the transfer.
 5          MR. FENDRICK:  Right.
 6          MR. POSTLER:  So FirstBank will pay the stamp duty
 7  on that.  And then they've also agreed -- it's not part of
 8  this motion.  They've agreed to put that into the Scrub
 9  Island rental program so that that'll be part of the program.
10          THE COURT:  Okay.
11          MR. POSTLER:  All those are separate documents, but
12  this motion simply seeks the Court's approval to approve the
13  form of the transfer document and to allow us to execute that
14  and to transfer the title to FirstBank.
15          THE COURT:  Okay, very well.  I think that's
16  consistent with your plan and the overall agreement of the
17  parties.  I'll grant the motion.  If you could furnish me an
18  agreed order.
19          MR. POSTLER:  Thank you, Your Honor.  We have the
20  form of an agreed order attached.  We'll just clean that up
21  and send that in to the Court.
22          THE COURT:  Okay.
23          MR. POSTLER:  Your Honor, the second motion is
24  Docket No. 614, and this deals with -- this is our motion
25  to approve the employment of Mr. Gaudet as the plan

1  administrator.  And this is also part of the settlement
2  term sheet.  We have negotiated the form of the plan
3  administrator agreement with FirstBank's counsel.  It's
4  attached as Exhibit A to the motion.
5          The only open issue on that agreement was --
6  there's a reference to the RCB loan agreement as a footnote,
7  I want to say it's on page 5.  We did provide -- I did
8  provide yesterday a copy of the RCB loan agreement to Mr.
9  Smith and Mr. Fendrick, and they may still be reviewing that.
10 But for all intents and purposes, we've agreed to the plan
11 administrator agreement.
12         The RCB loan agreement has nothing to do with the
13 FirstBank loan or this agreement, but they just wanted to
14 look at that to make sure there was no conflicting
15 provisions.
16         But, Your Honor, pursuant to this motion, we'd like
17 the Court to approve the employment of Mr. Gaudet as the plan
18 administrator which has been agreed to by the Bank and the
19 Debtor.  And also approve the form of the attached agreement.
20         And then thirdly, we had originally filed a motion,
21 I think back in January, which was our sinking fund agent
22 motion, where Mr. Gaudet was going to be the sinking fund
23 agent.  The Court actually granted that motion, but we never
24 submitted an order because we were going to mediation.  So we
25 agreed to hold off on that order.

1           So even though the Court granted that motion,
2  we've agreed with FirstBank to -- as part of this order, to
3  basically say -- to actually have the Court vacate its oral
4  ruling on that motion and to deem that motion moot upon
5  the occurrence of the closing of this transaction, which is
6  probably now going to occur in early July because we got some
7  news on Monday from the BVI lawyers that we can't get a
8  hearing down there until July 7th or July 8th -- which we
9  just informed Judge Delano about also.
10          So upon the closing, that sinking fund agent motion
11 is moot, and so we would put all that in this order.  And I
12 think that's the only relief we're requesting, but basically
13 we've all agreed on that agreement and the terms of his
14 employment and his compensation.
15          I don't know if the Court wants to -- needs to
16 approve his compensation in this order, but it's in the body
17 of the agreement itself, and both the Bank -- the Debtor is
18 paying his compensation, but both the Bank and the Debtor
19 have signed off on the compensation.
20          THE COURT:  Well, as long as the Bank and the
21 Debtor are in agreement, there's no requirement for court
22 approval other than a comfort order, which I'm happy to
23 give you since it is post-confirmation services of a
24 professional.  But I'll grant the motion.  And make sure
25 the motion references the prior motion that was being --

1            MR. POSTLER:  Yes, sir.  We will

2            THE COURT:  -- the order that wasn't entered but --

3    so that that will clean up that for purposes of the docket.

4            MR. POSTLER:  Thank you, Your Honor.  The third

5    motion, Your Honor, which we had filed yesterday afternoon --

6    and Mr. Fendrick, I think, has not had a chance to completely

7    read it yet -- I'm not sure it's on the calendar today, but I

8    thought I would at least preview it with the Court.  It's

9    Docket No. 615.

10           THE COURT:  It's the release prices?

11           MR. POSTLER:  It's the release price.  And the

12   concept on this motion, Your Honor, is that we have -- in the

13   loan agreement and the settlement term sheet, we have three

14   types of real estate on Little Scrub Island and have specific

15   release prices which are set forth on Exhibit A in this

16   motion.  Then we have Big Scrub, which the release price is

17   $17 million minus any prior principal reductions on the note

18   secured by Big Scrub.

19           And we had originally, Your Honor, filed a motion,

20   previously again, on the release prices back in January,

21   which again was -- the Court granted that motion.  We never

22   submitted the order because we went to mediation.  So we had

23   that order -- oral ruling sitting out there also.

24           But we would like to get, again, an order that

25   basically approves simply -- not the procedures for the sale

1  or anything like that, or the net sale proceeds distribution,
2  but simply an order that says that these release prices are
3  the minimum release prices on Little Scrub.
4           And then that the Big Scrub release price -- which
5  we actually had a big dispute over until recently, and we
6  finally gave in to the Bank's position on that.  We've now
7  accepted their position that it's got to be 17 million.
8  We thought it was 17 million minus some interest reserve
9  payments, but we conceded that point to them.
10          So we want a court order basically confirming that
11 these are the actual minimum release prices and the release
12 price on Big Scrub, so down the road we don't get into a
13 dispute on if we sell a parcel for, you know, $410,000 on
14 a marina village unit, the Bank comes back and says, "you
15 should have sold it for $500,000."
16          Your Honor, we probably will never sell for those
17 release prices, because if we do we'll most likely violate
18 the rebalancing covenant that we agreed to in the term sheet
19 on the Little Scrub property, but we would like to get an
20 order on this.
21          And I think -- Mr. Fendrick and I have talked
22 about this, and he's going to look at the motion today.  And
23 to the extent he doesn't file an objection by the end of day
24 today, then we would submit an agreed order, which I'd run
25 by him.

1            THE COURT: Okay. Well, just don't furnish an
2    order until there's an agreement. And when you do furnish
3    it, it'll be with the consent of the Bank. If you need
4    some assistance on that, just notify us that there's a
5    disagreement. And you can either work with Judge Delano
6    or come back here and I can help you out.
7            MR. FENDRICK: And, Judge, our only -- and
8    Mr. Riedel has just had other things that have made it
9    impossible for us, in the last few days, to talk. And I
10   was in a deposition all day yesterday with Mr. Berman's
11   office.
12           But the only thing I asked about -- and I just need
13   to read this, and I understand Mr. Postler said they made
14   some changes -- is it only references one of the four columns
15   of the release price agreement, which has been filed with the
16   Court.
17           I just want to read it to understand -- I really
18   wasn't sure of the purpose of a minimum release price. But
19   I do understand there was a motion out there, and this is,
20   I suppose, to tie up a loose end from a motion that needed to
21   be resolved.
22           And the only concern I told Mr. Riedel I had is
23   why we're only putting one column with four columns as an
24   exhibit. But I'll deal with that and I think I can probably
25   resolve this with Mr. Postler.

```
 1                THE COURT:  Okay.  Well, if you all are in
 2    agreement, then furnish an agreed order.  If you're not,
 3    then either withdraw the motion or come back here and we'll
 4    talk about it.
 5                MR. POSTLER:  Well, again, Your Honor, on this
 6    motion, also we would actually incorporate the language
 7    vacating the oral ruling from the prior motion, and then also
 8    deeming that one moot upon the closing with FirstBank coming
 9    up.  So it's just so that we can clear up the Court's --
10                THE COURT:  Okay.
11                MR. POSTLER:  -- the issue there.
12                MR. FENDRICK:  And I forgot from last week, Judge.
13    You're in India, or you're on the road when?
14                THE COURT:  I'm leaving Friday.  I'll be --
15                MR. FENDRICK:  Okay.
16                THE COURT:  I'm available for -- there's about four
17    hours that, you know, I could be available for a telephonic
18    hearing if I needed to be contacted.
19                MR. FENDRICK:  I think because of what we found
20    out from respective BVI counsel Monday at our call about
21    when we're actually going to get into the BVI courts -- which
22    came as a surprise to both Mr. Postler and I, I think it's
23    fair to say, without speaking for him -- that urgency of
24    Friday is sort of abated a little bit because it's not
25    going to matter.
```

```
 1                MR. POSTLER:  We tried.
 2                THE COURT:  Well, clocks run differently in
 3    different parts of the world so -- I look forward to having
 4    some BVI time.  I think I'll be there in November with Judge
 5    Walrath and her husband and we'll be sailing around.
 6                So I'll get to -- I'll sail by Scrub Island.  I
 7    may even stop in.  I talked to the Receiver at a conference
 8    that we were at and -- the BVI Receiver, a very nice
 9    gentleman.
10                MR. FENDRICK:  Mr. Malone, yeah.
11                THE COURT:  And we may end up getting together for
12    a meal or something, so --
13                MR. POSTLER:  We were actually just talking to
14    Judge Delano about him, about how he has a market on a lot
15    of that business down there, so --
16                MR. FENDRICK:  Yeah.
17                THE COURT:  It's good work if you can get it.
18                MR. POSTLER:  Yeah.
19                MR. FENDRICK:  It's a nice gig.
20                THE COURT:  So, okay.  Well, it sounds -- my
21    compliments to you all.  It sounds like you all have worked
22    through some very difficult issues, and everything is still
23    very much on track.  And hopefully there'll be no further
24    glitches and you'll be able to go to a closing in the second
25    week in July.
```

```
 1            MR. POSTLER:  Thank you, Your Honor.
 2            MR. FENDRICK:  Thank you, Judge.
 3            THE COURT:  Let me know if you need any assistance
 4  in the interim and --
 5            MR. FENDRICK:  All right.
 6            COURTROOM CLERK:  Judge, do you want to come back
 7  for another status conference?
 8            THE COURT:  Yeah, let's come back.  Let's put
 9  something off in August, just --
10            MR. POSTLER:  Your Honor, we already have one.
11            MR. FENDRICK:  August 12th is already set.
12            THE COURT:  That's perfect.
13            MR. POSTLER:  It's August 12th.
14            COURTROOM CLERK:  Okay.
15            THE COURT:  That's perfect.  Okay.
16            COURTROOM CLERK:  And should the adversary just be
17  carried over to that --
18            MR. FENDRICK:  I understood that it had been
19  carried from the last hearing.
20            COURTROOM CLERK:  Oh.  I wasn't here last time.
21            MR. FENDRICK:  Oh, okay.
22            THE COURT:  We'll carry it until we get all the
23  orders.
24            MR. FENDRICK:  That's right.  You weren't here last
25  time.
```

```
 1            THE COURT:  Okay, very well.  Then this hearing is
 2  concluded.  The court will be in recess.  Thank you.
 3            MR. FENDRICK:  Thank you, Your Honor.
 4            MR. POSTLER:  Thank you, Your Honor.
 5            COURTROOM CLERK:  All rise.
 6            (Proceedings concluded at 10:56 a.m.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATE

I certify that the foregoing is the official verbatim transcript prepared on an expedited basis to the best of my ability from the digitally-recorded audio proceedings provided by the court.

*Cheryl Culver*                                July 8, 2015
Cheryl Culver (CER, CCR)                       Date
Transcriber


I certify that the foregoing is a federally certified transcript authenticated by:

*Kimberley S. Johnson*
Kimberley S. Johnson (CVR-M)
Certified Verbatim Reporter Master

JOHNSON TRANSCRIPTION SERVICE
7702 Lake Cypress Drive
Odessa, Florida 33556
813-920-1466
kgjjts@aol.com